IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETE CZOSNYKA, et al., | |
| Plaintiffs, | No. 21 CV 03240 |
| v. | Hon. Sharon Johnson Coleman |
| JAMES GARDINER, et al., | |
| Defendants. | |

**DEFENDANT CITY OF CHICAGO'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS**

Defendant City of Chicago (the "City"),[1] by its counsel, Celia Meza, Corporation Counsel for the City, hereby respectfully submits its Memorandum in Support of its Motion to Dismiss Plaintiffs' Complaint ("Complaint").

## INTRODUCTION

Plaintiffs' Complaint, a purported class action, challenges alleged actions taken by an independently elected City of Chicago alderman in managing his own social media account. Yet this lawsuit seeks not only to hold the individual alderman liable for his actions, but also to hold the City liable even though Plaintiffs claim that the alderman "administers and oversees" the social media account, and that he has the "sole discretion" and "final say" over the alleged unlawful actions.

---

[1] Alderman Gardiner is sued "in his individual and official capacities[,]" Compl. ¶ 10, but the "official capacity" action should be dismissed as "redundant" of Plaintiffs' claims against the City because it "amounts to a suit against the 'government entity of which the official is a part.'" *Myers v. City of Chicago*, 2011 WL 43063, at *5 (N.D. Ill. 2011) (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001)).

Plaintiffs' claim against the City is fatally flawed and should be dismissed. First, this Court lacks subject matter jurisdiction over Plaintiffs' claim against the City because Plaintiffs do not have Article III standing. They have not established that the City either caused or can redress the alleged injuries stemming from the alderman's management of his own social media account. Second, Plaintiffs' claim fails because they have not sufficiently alleged that a City policy or custom was the moving force behind their alleged injuries, as is necessary to state a constitutional claim against the City.

## RELEVANT BACKGROUND

Plaintiffs are six residents of the City's 45th Ward, represented by Defendant Alderman James Gardiner ("Defendant Gardiner"). Plaintiffs claim that Defendant Gardiner "administers and oversees" an account on Facebook to interact with his constituents, www.facebook.com/AldermanGardiner (the "Facebook Page"). Compl. ¶¶ 2, 10. They allege that Defendant Gardiner has "final say" over the administration of the Facebook Page. *Id*. ¶ 10. Plaintiffs claim that since 2019 Defendant Gardiner has, at his "sole discretion," hidden or deleted Plaintiffs' comments on the Facebook Page that "criticize him or his policies," and has blocked certain plaintiffs from interacting with the Facebook Page in any way. *Id*. ¶ 3. Plaintiffs allege that the Facebook Page is a public forum and that Defendant Gardiner's actions are impermissible content-based restrictions on speech under the First Amendment. *Id*. ¶¶ 2, 3.

Plaintiffs allege that they have made complaints about Defendant Gardiner's actions to the City's Office of the Inspector General ("OIG"), Board of Ethics ("BOE"), and Department of Law ("DOL"), but that no actions have been taken in response. *Id*. ¶ 6. They claim that the OIG has "the power to investigate claims of misconduct and refer valid claims to the City's Board of Ethics for disciplinary action," and that the BOE "has the power to adjudicate violations of the

City Governmental Ethics Ordinance." *Id*. ¶¶ 76, 77. They do not claim that either the OIG or BOE have jurisdiction to adjudicate or remedy alleged constitutional violations. Plaintiffs do not allege that the DOL has any oversight or enforcement authority over Defendant Gardiner.

On June 17, 2021, Plaintiffs filed this purported class action against Defendant Gardiner and the City. Plaintiffs' theory of the City's liability invokes *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), and claims that the City was "on notice" of Defendant Gardiner's alleged First Amendment violations but failed to "stop or remedy" them. Compl. ¶ 94.

As argued below, Plaintiffs' claim against the City should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6). First, Plaintiffs lack Article III standing because the City neither caused nor can redress their alleged injuries. Second, Plaintiffs have failed to allege municipal liability because the City was not the moving cause behind Plaintiffs' alleged constitutional injuries.

## LEGAL STANDARDS

Because standing is an essential jurisdictional component of Article III's case-or-controversy requirement, it is "'not a mere pleading requirement but rather an indispensable part of the plaintiff's case[.]'" *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Article III standing requires (1) an injury-in-fact to a legally protected interest, (2) a causal nexus whereby the injury is fairly traceable to defendant's actions, and (3) redressability of the injury by court action. *Lujan*, 504 U.S. at 560-61. The plaintiff bears the burden of establishing these elements. *Id.* at 561.

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must contain more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id*. (quoting *Twombly*, 550 U.S. at 555). The defendant must be given "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Although well-pleaded factual allegations are presumed true for purposes of a motion to dismiss, legal conclusions and conclusory allegations that merely recite the elements of a claim are not entitled to a presumption of truth. *Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## ARGUMENT

**I.     The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claim Against the City Because Plaintiffs Have Not Established Article III Standing.**

To maintain this action against the City, Plaintiffs must plead sufficient facts that they have (1) an injury in fact, (2) that was caused by the City, and (3) that the City can redress. *See Plotkin v. Ryan*, 239 F.3d 882, 884 (7th Cir. 2001). To survive a motion to dismiss based on standing, Plaintiffs have the burden to "clearly" allege facts demonstrating each element. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016). Further, "standing is not dispensed in gross;" a plaintiff must establish standing for "each claim he seeks to press and for each form of relief that is sought." *McDaniel v. Bd. of Educ. of City of Chicago*, 956 F. Supp. 2d 887, 892 (N.D. Ill. 2013) (internal quotation marks and citations omitted). Plaintiffs' claim against the City fails to establish causation or redressability and should therefore be dismissed.

The question of causation under Article III examines "the causal connection between the assertedly unlawful conduct and the alleged injury, whereas [redressability] examines the causal connection between the alleged injury and the judicial relief." *Allen v. Wright*, 468 U.S. 737, 753

4

(1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014). Here, Plaintiffs claim unlawful conduct based on how Defendant Gardiner "regulates speech" on his Facebook Page. Compl. ¶ 1. Plaintiffs claim that their comments have been hidden or deleted from the Facebook Page and that in several instances, some of the plaintiffs have been permanently banned from engaging with the Facebook Page. *Id*. ¶ 3. Plaintiffs claim this activity constitutes content-based regulation of speech and results in First Amendment injuries. *Id*. ¶¶ 2-3

The Complaint, however, fails to establish that *the City* caused these alleged injuries or that it can remedy them. With respect to causation, Plaintiffs have pled themselves out of court with their own allegations. *See, e.g., Thompson v. Washington*, 362 F.3d 969, 970 (7th Cir. 2004) ("It is of course true that if a complaint pleads facts that show the plaintiff does not have a claim, the complaint should be dismissed without further ado."). Plaintiffs allege that Defendant Gardiner – not the City – "administers and oversees" the Facebook Page, and that he – not the City – has "final say" and "sole discretion" over blocking people and deleting comments. Compl. ¶¶ 10, 84. On this basis alone, Plaintiffs' claim against the City should be dismissed – their allegations make clear that it is Defendant Gardiner, and not the City, who makes the decisions about who can interact with his Facebook Page, thus negating any possible causation by the City.

Plaintiffs are not helped by their allegations that the City was "on notice" of Defendant Gardiner's conduct but "failed to take any action" to stop it, and that they have made complaints regarding the conduct to the OIG, BOE, and DOL, but that the City "has not taken any steps" in response. *Id*. ¶ 6. These allegations do not establish that the City had sufficient control of Defendant Gardiner's actions to satisfy the causation element of standing. *See Prakel v. Indiana*, 100 F. Supp. 3d 661, 674 (S.D. Ind. 2015) (holding that plaintiff who was denied a sign language

5

interpreter by a court system did not have standing to sue state defendants who administered court system because state defendants did not have "sufficient oversight . . . to satisfy the causation element of standing"). Regardless of what knowledge the OIG, BOE, or DOL may have regarding Plaintiffs' complaints, Plaintiffs do not allege that the City has the power to stop Defendant Gardiner from hiding or deleting comments or blocking people on his Facebook Page.[2] Plaintiffs therefore lack standing to sue the City because the City did not cause their injuries.

Plaintiffs also lack standing for a second but related reason: success on their claim against the City would not redress their injuries. Plaintiffs' alleged injury is that they are restricted in being able to interact with Defendant Gardiner's Facebook Page. But no form of relief entered against the City could force Defendant Gardiner to allow Plaintiffs to access his Facebook Page, because that is something that simply is beyond the reach of the City. Even if Plaintiffs obtained the relief they seek from the City,[3] their constitutional injuries – being restricted in the way they

---

[2] Nor does the Municipal Code of Chicago purport to grant authority to the OIG, BOE, or DOL to do so or to adjudicate Defendant's Gardiner's alleged constitutional violations. *See* Municipal Code of Chicago §§ 2-56-030 (enumerating the powers of IG), 2-156-380 (enumerating powers of BOE), 2-60-020 (enumerating powers of DOL). Instead, as the Complaint alleges, the OIG has the "power to investigate claims of misconduct and refer valid claims to the City's Board of Ethics for disciplinary action." Compl. ¶ 76. And BOE, in turn, has "power to fine elected officials who violate the City's ethics guidelines." *Id*. ¶ 77. Plaintiffs make no allegation whatsoever that DOL has any authority to regulate the activities of an individual alderman on their social media. But even the powers of the OIG and BOE to investigate Defendant Gardiner for misconduct or fine him for a violation of the City's ethics ordinance would not have prevented Plaintiffs' claimed constitutional injuries – namely, being blocked or otherwise restricted from interacting with his Facebook Page.

[3] Perhaps recognizing the City has no authority or control over Defendant Gardiner's Facebook Page, Plaintiffs do not seek injunctive relief against the City, but instead seek only declaratory judgment that the City's "failure to act was the moving cause behind [Defendant Gardiner's] violation of Plaintiffs' constitutional rights," compensatory damages and attorney's fees and costs. Compl. Count II, Wherefore clause (b). These forms of relief cannot establish redressability as to Defendant Gardiner's moderation of his Facebook Page, because a "plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *See Deckers Outdoor Corp. v. Yao Long He*, No. 1:19-CV-07920, 2020 WL 1983876, at *3 (N.D. Ill. Mar. 11, 2020) (quoting *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018)).

interact with the Facebook Page – would remain. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Perry v. Sheahan*, 222 F.3d 309, 314 (7th Cir. 2000) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998)). Because the relief Plaintiffs seek from the City will not remedy their injuries, they have failed to establish Article III standing and the City should be dismissed.

## II. Plaintiffs Fail to State a *Monell* Claim Against the City.

Even if Plaintiffs have standing, which they do not, their claim against the City fails because they do not meet the requirements for holding a municipality liable for constitutional violations allegedly committed by an individual. Under *Monell*, a municipality is liable for a deprivation of constitutional rights caused by an individual only when the deprivation results from its own official policy. *Werch v. City of Berlin*, 673 F.2d 192, 195 (7th Cir. 1982) (citing *Monell*, 436 U.S. at 658). "A plaintiff may demonstrate an official policy through: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id*. at 515. In addition to alleging that a municipal policy exists, Plaintiffs must establish causation, specifically that the policy "was 'the moving force' behind [the constitutional violation.]" *Estate of Sims ex rel. v. Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). Plaintiffs' Complaint fails to make this showing and their claim against the City should be dismissed.

To establish municipal liability, proximate cause must exist between a municipal policy and alleged injury. *Leahy v. Bd. of Tr. of Cmty. College Dist. No. 508*, 912 F.2d 917, 922 (7th Cir. 1990) ("'Proximate causation between the municipality's policy or custom and the plaintiff's injury must be present.'") (quoting *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th

Cir. 1985)). Plaintiffs' Complaint not only fails to allege that the City was a moving force behind their alleged injuries, but it affirmatively establishes that the City was *not* a cause of their injuries.

First, the Complaint alleges that, in 2019, BOE issued an advisory opinion that, under Plaintiffs' theory, would prohibit – not cause – Defendant Gardiner from doing what he allegedly did.[4] Compl. ¶ 23. Next, the Complaint is rife with allegations about how Defendant Gardiner is in absolute and sole control of his Facebook Page. Plaintiffs allege that Defendant Gardiner "administers and oversees" his Facebook Page, "has final say over" whether to block or otherwise silence others, and does so at his "sole discretion." *Id*. ¶¶ 10, 84. These allegations make clear that the City lacks authority and control over – and therefore is not causally responsible for – Defendant Gardiner's moderation of his Facebook Page. *See, e.g., Bergquist v. Milazzo*, No. 18-CV-3619, 2020 WL 757902, at *5 (N.D. Ill. Feb. 14, 2020) (dismissing *Monell* claim against county when it "simply lacks the authority" to control the alleged unconstitutional conduct by sheriff's office employees); *Davison v. Loudoun Cty. Bd. of Supervisors*, 267 F. Supp. 3d 702, 715 (E.D. Va. 2017), *aff'd sub nom. Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019), *as amended* (Jan. 9, 2019) (dismissing First Amendment claim against county government for actions taken by an elected county official in operating her Facebook page because county had no authority over elected official's Facebook page).

Indeed, Plaintiffs identify no ordinance or other authority under which the City could

---

[4] This advisory opinion directed that "elected officials who maintain social media accounts on which they post about 'public affairs or matters involving City government should not block followers from accessing such pages or delete critical comments unless the user's comments are obscene, profane, libelous or defamatory, or are commercial and posted to sell goods and services.'" *Id*. ¶ 23. Plaintiffs' own allegations thus undermine their claim that the City was a moving force behind their injuries because the BOE advisory opinion directed Defendant Gardiner to do the opposite of what Plaintiffs claim he did.

have forced an alderman – an independently elected official – to moderate their social media page in a particular fashion. *See, e.g., Connelly v. Cook Cty., Illinois*, No. 19-CV-07894, 2021 WL 1088274, at *3 (N.D. Ill. Mar. 22, 2021) (holding that "a county cannot be held liable under *Monell* Section 1983 for the actions of independently elected officials not subject to their control"); *see also supra* at 6, n.2.

Plaintiffs' allegations establish that Defendant Gardiner alone was in control of his Facebook Page and that the City had no authority to control how he moderated it. Thus, the City was not the moving force behind Plaintiffs' alleged injuries. The Court should therefore dismiss Plaintiffs' claim against the City.

## CONCLUSION

For the foregoing reasons, the City of Chicago requests that the Court dismiss Plaintiffs' Complaint against the City pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and grant the City such further relief as the Court deems just and appropriate.

| | |
|---|---|
| Date: August 4, 2021 | Respectfully submitted, |
| MAGGIE SOBOTA<br>Maggie.Sobota@cityofchicago.org<br>JORDAN ROSEN<br>Jordan.Rosen@cityofchicago.org<br>City of Chicago, Department of Law<br>Constitutional and Commercial<br>  Litigation Division<br>2 North LaSalle Street, Suite 520<br>Chicago, Illinois 60602<br>(312) 742-0260 / 744-9018 | CELIA MEZA,<br>Corporation Counsel for the City of Chicago<br><br>By:  /s/ Maggie Sobota<br>        Attorney for Defendant City of Chicago |