IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETE CZOSNYKA, et al., | |
| Plaintiffs, | 21-cv-3240 |
| v. | Hon. Sharon Johnson Coleman |
| JAMES GARDINER, et al., | |
| Defendants. | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT CITY OF CHICAGO'S MOTION TO DISMISS**

Plaintiffs, through counsel, respond in opposition to Defendant City of Chicago's motion to dismiss as follows:

### INTRODUCTION

Plaintiffs, six residents of Chicago's 45th Ward, bring this suit under 42 U.S.C. §1983 to address violations of their First Amendment rights by Defendant Alderman James Gardiner. Their complaint arises from Alderman Gardiner's content-based regulation of constituents' comments on his official Facebook Page (www.facebook.com/AldermanGardiner), including deleting or hiding comments critical of the Alderman or his policies and "blocking" constituents who make unfavorable comments about the Alderman's policy decisions. *See* ECF 1, Complaint, at ¶¶1–5. In Count II of their Complaint, Plaintiffs have named the City of Chicago as a Defendant pursuant to *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978) because the City's repeated failure to discipline Defendant Alderman Gardiner and acquiescence in his violations of Plaintiffs'

constitutional rights was the moving force behind the violations. *Id*. at ¶¶ 6, 75–80. In particular, Plaintiffs' complaint shows that the City was deliberately indifferent to their constitutional rights because the City (1) was on notice of Defendant Gardiner's violations of citizens' First Amendment rights due to more than twenty complaints that were made by Plaintiffs and others to the City's Office of Inspector General and Board of Ethics about Alderman Gardiner's misconduct on his Facebook Page; (2) had an opportunity to address those violations pursuant to its Governmental Ethics Ordinance, which empowers the City's Board of Ethics to fine elected officials who violate the Ordinance; and (3) chose to do nothing in the face of these complaints, allowing Defendant Gardiner to act with impunity by continuing to block Plaintiffs and delete their comments from his Facebook Page. *Id*.

The City has filed a motion to dismiss, putting forth two arguments: (1) Plaintiffs "lack standing" to sue the City because the City "neither caused nor can redress" the violations of their rights; and (2) Plaintiffs' *Monell* claim does not sufficiently allege facts showing that the City's "policy or custom was the moving force" behind their injuries. Def. Mot. at 2. As explained below, the City's arguments are without merit.

## ARGUMENT

### I. Plaintiffs Have Standing to Sue the City for Violations of their Constitutional Rights

The City's first argument is that the *Monell* claim should be dismissed because Plaintiffs have not sufficiently alleged facts demonstrating that they have standing to sue the City. Def. Mot. at 4–7.

2

The Supreme Court has explained that standing consists of three elements: a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992)). A plaintiff must establish standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. At the pleadings stage, allegations of fact on each element of standing are sufficient. *Id*.

In its motion, the City concedes that Plaintiffs have alleged facts sufficient to show an "injury in fact," but contest whether Plaintiff can show that their injuries are fairly traceable to the City and whether their injuries can be redressed by judgment against the City. Def. Mot. at 4-7. As shown below, the City's arguments should be rejected because the allegations in the Complaint demonstrate that Defendant Gardiner's violations of their rights are attributable to the City's deliberate indifference, and Plaintiffs' injuries could be redressed by an award of nominal and/or compensatory damages against the City.

### A. The Complaint Alleges Facts Showing that Plaintiffs' Injuries Are 'Fairly Traceable' to the City

The City claims that Plaintiffs' Complaint does not contain sufficient allegations to show a causal link between the City's failure to take any action in response to the numerous complaints it received about Gardiner's misuse of his social media page and the violations of Plaintiffs' First Amendment rights. Def. Mot. at 5. In particular, it claims that "Defendant Gardiner, [] not the City, [] makes the

3

decisions about who can interact with his Facebook Page, thus negating any possible causation by the City," and that the City didn't have "sufficient control of Defendant Gardiner's actions" for there to be a causal link between the City's inaction and Plaintiffs' injuries. *Id*. This argument fails.

It is axiomatic that at the motion to dismiss stage the Court must accept the facts pleaded in the complaint as true and draw reasonable inferences in the non-movant's favor. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017). Defendant's argument seeks to flip that standard on its head by asking the Court to disregard facts that don't comport with its theory that it had no control over Gardiner's social media misuse. In particular, Plaintiffs have alleged in their complaint the following facts:

- [T]he City's Office of Inspector General has been tasked with investigating claims of "misconduct, inefficiency and waste" by all elected and appointed officers of City government, including Aldermen. *See* Chicago Municipal Code §2-56-030; §2-56-050. The Inspector General has the power to investigate claims of misconduct and refer valid claims to the City's Board of Ethics for disciplinary action;

- The City's Board of Ethics has the power to adjudicate violations of the City Governmental Ethics Ordinance. The Board has issued guidance to elected officials that explicitly states that elected officials "should not block followers from accessing [social media pages on which they communicate about government activities] unless the user's comments are obscene, profane, libelous or defamatory or are commercial and posted to sell goods and services." The Board of Ethics has the power to fine elected officials who violate the City's ethics guidelines;

- [The named] Plaintiffs and others have made more than twenty complaints to the Office of the Inspector General and the Board of Ethics concerning Alderman Gardiner's misconduct on social media, including blocking constituents and deleting or hiding constituents' comments. These complaints document dozens of incidents in which Alderman Gardiner violated constituents' constitutional rights over the course of the past two years;

4

- Despite being on notice of Alderman Gardiner's repeated and ongoing misconduct, the City has failed to take any action to reprimand Alderman Gardiner, although it has the power to do so; and

- Thus, the City is liable because it acquiesced in Alderman Gardiner's constitutional violations and permitted Alderman Gardiner to violate Plaintiffs' rights with impunity.

*See* Complaint at ¶¶75-80.

These allegations establish that the City (1) had notice of an ongoing pattern of constitutional violations by Defendant Gardiner; (2) had the power and ability to punish violations of constituents' First Amendment rights and thereby deter future violations; and (3) failed to do so, thus allowing Defendant Alderman Gardiner to continue to violate the Plaintiffs' constitutional rights with impunity. Under well-established law, these allegations state a claim against the City. *See, e.g., Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir. 1997) (Under *Monell*, a government entity can be held liable when it "fail[s] to act in the face of 'actual or constructive notice' that such a failure is likely to result in constitutional deprivations."); *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) ("If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work."); *Daniels v. City of Chicago*, 920 F. Supp 901, 904 (N.D. Ill. 1996) (The Plaintiffs' allegations that the City didn't discipline officers who used unauthorized tactics to search homes "could support an inference that there is a policy against discipline, and it is inferable that lack of discipline (and its deterrent effect) is a municipal policy that caused, in some sense, the bad acts alleged in the complaint."); *Spearman v.*

*Elizondo*, 230 F. Supp. 3d 888, 895 (N.D. Ill. 2016) ("[T]he thrust of the complaint is that the … City's policy of refusing to discipline officers, positively encouraged or emboldened the officer defendants to carry out searches in the reckless manner alleged by [plaintiff]. This theory is not unique to Spearman. It has been asserted, and withstood motions to dismiss, in many other cases in this District.")

The City's claim that it doesn't have "sufficient control" over Gardiner to be liable for his actions shows, at best, that there is a factual dispute about the extent of the City's authority to impose discipline and thus deter continued constitutional violations. The City is free to develop that defense in discovery (if it wishes), but the mere assertion of the claim does not constitute a valid basis for a motion to dismiss. Whether this defense is meritorious is best determined at summary judgment after the parties have had an opportunity to conduct discovery. *See McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000) (in *Monell* claims, discovery can help weed out unmeritorious claims quickly); *Howard v. Sheriff of Cook County*, No. 15 C 9384, 2016 U.S. Dist. LEXIS 107985, 2016 WL 4366598, at *3 (N.D. Ill. Aug. 16, 2016) (noting that general allegations are sufficient to state a *Monell* claim).

**B. Plaintiffs' Injuries Are Redressable by a Judgment against the City**

Next, the City claims that Count II should be dismissed because "success on their claim against the City would not redress their injuries." Def. Mot. at 6. Defendant's argument is that injunctive relief entered against the City would not give them access to participate in the comments forum on Defendant Gardiner's Facebook Page because Gardiner controls access to the Page. *Id.* But the City's

6

argument simply ignores that, in addition to injunctive relief against Defendant Gardiner, Plaintiffs also seek compensatory damages for the violations of their rights. *See* Complaint at ¶94(c) (seeking "compensatory damages in an amount to be determined at trial.")

The City's argument is directly contrary to Supreme Court case law. It is well established that nominal or compensatory damages are an appropriate remedy for a First Amendment violation, even if the precise amount of damages is not easily quantifiable. *See, e.g.*, *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 315 (1986) (Marshall, J., concurring) ("When a plaintiff is deprived, for example, of the opportunity to engage in a demonstration to express his political views, it is facile to suggest that no damage is done. Loss of such an opportunity constitutes loss of First Amendment rights in their most pristine and classic form. There is no reason why such an injury should not be compensable in damages.") (internal citations omitted); *see also, e.g., City of Watseka v. Illinois Public Action Council*, 796 F.2d 1547, 1559 (7th Cir.1986) (A §1983 plaintiff cannot "recover damages based upon the 'abstract value' or 'importance' of constitutional rights. The Court did not limit compensatory damages, however, even in cases where the monetary value of the particular injury is difficult to ascertain.") (internal citations omitted).

Indeed, the Supreme Court recently reaffirmed the principle that even when a plaintiff's claim for injunctive relief to halt an ongoing First Amendment violation becomes moot, the plaintiff still has standing to pursue nominal damages. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021). In *Uzuegbunam*, the Court held

7

that "Because nominal damages are in fact damages paid to the plaintiff, they affect the behavior of the defendant towards the plaintiff and thus independently provide redress. … [W]e conclude that a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." *Uzuegbunam*, 141 S. Ct. at 801–02 (internal quotations and citations omitted).

Thus, Plaintiffs' constitutional injury (*i.e.*, interference with their First Amendment rights) is redressable by a judgment for nominal and/or compensatory damages against the City, and the City's argument to the contrary is without merit.

## II. Plaintiffs Have Alleged Sufficient Facts to State a *Monell* Claim

Finally, the City asserts that Plaintiffs' complaint fails to state a *Monell* claim because Plaintiffs' allegations do not establish that "the City was the moving force behind their alleged injuries." Def. Mot. at 8. The City's claim is that Alderman Gardiner, not the City, controls his Facebook Page, and thus the City cannot be held liable for constitutional violations Alderman Gardiner committed in that forum. *Id*. The City's argument concerning whether Plaintiffs have sufficiently alleged an official policy largely mirrors the argument made with regard to whether Plaintiffs' have alleged facts sufficient to establish the causation element of standing, and it fails for the same reasons. That is, Plaintiffs have alleged specific facts showing that the City's failure to discipline Alderman Gardiner was the moving force behind Plaintiffs' constitutional injuries.

8

**A. Standards for Pleading *Monell* Liability**

In *Monell v. New York City Dep't of Social Serv.*, 436 U.S. 658 (1978), the Supreme Court held that Congress intended municipalities and other local governmental entities to be included among those persons to whom §1983 applies. 436 U.S. at 690. At the same time, the Court made it clear that municipalities may not be held liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id*. at 691. The Court emphasized that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable … on a *respondeat superior* theory." *Id*. Municipal liability under §1983 attaches "where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986).

Courts have recognized four ways a plaintiff can establish a municipal policy under *Monell*: (1) the defendant had an express policy that, when enforced, causes constitutional deprivations; (2) the defendant had widespread practice that, although not authorized by written law or express policy, is so permanent and well settled as to constitute a custom or usage within the force of law; (3) the plaintiff's constitutional injury was caused by a person with final policymaking authority; or (4) the defendant acted with "deliberate indifference" to the rights of the plaintiff or others by failing to train, discipline and/or supervise its employees. *McCormick v.*

9

*Chicago*, 230 F. 3d 319, 324 (7th Cir. 2000); *City of Canton v. Harris*, 489 U.S. 378 (1989).

A deliberate indifference *Monell* claim can be established with evidence of either "a failure to provide adequate training in light of foreseeable consequences" or a "failure to act in response to repeated complaints of constitutional violations by its officers." *Jackson v. City of Chi.*, No. 20 C 5886, 2021 U.S. Dist. LEXIS 164675, at *14 (N.D. Ill. Aug. 21, 2021) (*citing Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029-30 (7th Cir. 2006)).

There is no heightened pleading standard for §1983 claims generally (*Erickson v. Pardus*, 551 U.S. 89, 90 (2007)), or for municipal policy claims under *Monell* in particular (*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993)). Rather, a Plaintiff is simply required to plead "some specific facts" that "plausibly suggest an entitlement to relief." *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009)).

### B. Plaintiffs Have Pled Facts that, If Proven, Establish the City's Liability for Failure to Discipline

Plaintiffs' claim against the City arises under the "deliberate indifference" method of proving *Monell* liability. Plaintiffs have set forth specific allegations showing that the City has oversight powers over its elected officials' use of social media pages on which they communicate about City business. *See* Complaint at ¶¶75–80. In particular, by the terms of the City's ethics ordinance and the City's own interpretation of that ordinance, the City is empowered to receive, investigate and resolve complaints regarding elected officials' social media use, including by

10

imposing fines for misconduct. *Id.* at ¶¶76, 77. Despite receiving more than twenty complaints concerning Defendant Alderman Gardiner's violations of citizens' First Amendment rights on his Facebook Page, the City failed to take any action, thereby permitting Alderman Gardiner to continue violating the Plaintiffs' rights, including the continued blocking of Plaintiffs and deletion of their comments. *Id.* at ¶¶78–80.

As set forth in §II(A) above, courts in this district have repeatedly recognized the validity of such a theory where the plaintiff alleges facts demonstrating that the City was on notice of a pattern of constitutional violations and failed to act. *See, e.g., J.K.J. v. Polk Cty.,* 960 F.3d 367, 381 (7th Cir. 2020) ("*Monell* liability based on a failure to act, at its core, follows from a showing of constitutional violations caused by a municipality's deliberate indifference to the risk of such violations. Sometimes the notice will come from a pattern of past similar violations; other times it will come from evidence of a risk so obvious that it compels municipal action."); *see also* case law cited at p. 5-6 *supra*.

The City emphasizes allegations in the complaint setting forth that Alderman Gardiner "administers and oversees" his own Facebook Page and decides who to block and what comments to hide or delete and claims that these allegations "negat[e] any possible causation by the City." Def. Mot at 5. This argument is misguided. If these facts established a valid defense to a *Monell* claim, a municipality could never be held liable for a failure to train or discipline. For example, a municipality that refused to take action in response to complaints that a police officer is wantonly shooting civilians could never be held liable under *Monell*

11

for the officer's continued use of excessive force since it's the officer and not the city who pulls the trigger. The law is to the contrary. *See., e.g., Obrycka v. City of Chi.*, No. 07 C 2372, 2012 U.S. Dist. LEXIS 22818, at *29 (N.D. Ill. Feb. 23, 2012) (plaintiff could proceed to trial on her *Monell* claim that the city's "*de facto* policy of impeding and interfering with police misconduct investigations" was the cause of her being beaten by an off-duty police officer.); *Arrington v. City of Chi.*, No. 17 C 5345, 2018 U.S. Dist. LEXIS 14168 (N.D. Ill. Jan. 30, 2018) (plaintiff injured by a police officer in a high-speed car chase stated a *Monell* claim that the City "enables or condones" excessive force by failing to adequately investigate complaints and discipline officers who use excessive force.)

Moreover, the case law the City relies on is inapposite. For example, the City cites *Davidson v. Louden Cty Bd. of Supervisors*, 267 F. Supp 3d 702 (E.D. Va., 2017), in support of its claim that the City lacks sufficient control over Defendant Gardiner's conduct on his official Facebook Page. But in *Davidson*, unlike in the present case, it was clear that the county had no opportunity to stop or remedy the elected official's decision to temporarily block a constituent from her Facebook Page. *Davidson* involved a single incident in which the elected official blocked a critic "in the heat of the moment" and then reconsidered and reversed course the next morning—"at most 12-hours" later. There were no allegations showing that the blocking was ever brought to the attention of county officials or that there was an ongoing pattern of First Amendment violations. *Id.* at 711, 715 ("Defendant banned Plaintiff from her Facebook page because she was offended by his criticism of her

colleagues in the County government…. Plaintiff is the only person Defendant has ever banned from her Facebook page. The following morning, Defendant reconsidered her decision to ban Plaintiff … and unbanned him. The period during which Plaintiff was banned was relatively brief and spanned at most 12 hours.") (internal record citations omitted).[1]

Here, in contrast, the City was on notice of a pattern of constitutional violations by Defendant Alderman Gardiner and repeatedly failed to act. Thus, Plaintiffs have stated a claim under *Monell* and the City's motion to dismiss should be denied.

---

[1] Similarly, the City's reliance on *Bergquist v. Milazzo*, No. 18-CV-3619, 2020 WL 757902 (N.D. Ill. Feb. 14, 2020), and *Connelly v. Cook Cty.*, No. 19-CV-07894, 2021 WL 1088274 (N.D. Ill. Mar. 22, 2021), is misplaced. The City cites these cases as if they hold that *Monell* liability cannot attach to a municipal entity for the actions of an elected official. *See* Def. Mot. at 8, 9. But neither of these cases support the City's argument.

In *Bergquist*, one *Monell* claim asserted by the plaintiff failed because she named the wrong entity as a defendant—*i.e.*, she sued the County, which did not employ the deputy whom she alleged violated her rights. But her *Monell* claim against the Cook County Sheriff's Office (the entity that actually employed the deputy) was allowed to proceed. *Bergquist*, 2020 U.S. Dist. LEXIS 25821, at *13-15 ("Plaintiff sufficiently pleads her *Monell* claim against the Cook County Sheriff's Office based upon a widespread policy theory. … Plaintiff alternatively alleges that Cook County 'failed to properly train its police officers …' At this stage, this Court finds sufficient factual content to infer that Plaintiff's alleged constitutional deprivations stemmed from the Sheriff's Office's failure to train and supervise its deputies.")

Similarly, the *Monell* claim in *Connelly* failed because the plaintiff named the wrong entity in her complaint—*i.e.*, she directed her complaint against Cook County when it should have been directed against the Assessor's Office, a legally distinct entity. *Connelly*, 2021 U.S. Dist. LEXIS 52726, at *8 ("[Cook County Assessor] Kaegi is plausibly the final policymaker for the Cook County Assessor's Office. However, this complaint is brought against Cook County the municipality, not the Cook County Assessor's Office.")

## CONCLUSION

For all of the reasons set forth above, Plaintiffs respectfully request that this Court deny Defendant City of Chicago's motion to dismiss Count II of the Complaint.

Respectfully submitted,

/s/ Adele D. Nicholas
/s/ Mark G. Weinberg
*Counsel for Plaintiffs*

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869
adele@civilrightschicago.com

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913
mweinberg@sbcglobal.net