**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Pete Czosnyka, Peter Barash, Adam Vavrick, Dominick Maino, Steve Held and James Suh, individually and on behalf of all others similarly situated,** | ) ) ) ) ) | **Case No.      21-cv-03240** |
| **Plaintiffs,** | ) ) ) | |
| | ) | **Hon. Judge Johnson Coleman** |
| **v.** | ) ) | |
| **James Gardiner and the City of Chicago,** | ) ) | |
| **Defendants.** | ) | |

**DEFENDANT JAMES GARDINER'S**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant James Gardiner, Alderman of the 45th Ward of the City of Chicago ("Gardiner" "the Alderman," or "Defendant"), by and through his attorney, Thomas D. Carroll of Thomas R. Raines Attorney at Law, LLC, hereby moves to dismiss Plaintiffs' Complaint (the "Complaint" or "Cmplt." (Dkt. 1)), with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of the motion, Defendant states as follows:

**INTRODUCTION**

Plaintiffs Pete Czosnyka, Peter Barash, Adam Vavrick, Dominick Maino, Steve Held and James Suh (collectively, the "Plaintiffs") allege that the Defendant has violated their First Amendment right to free speech by way of a novel and, in this circuit, unprecedented theory by which a political figure who establishes a Facebook page for purposes of informing the public about matters germane to his office has a duty, the extent and limitations of which the Plaintiffs do not allege, to allow posted commentary from other Facebook users to appear on the page, such that "blocking" commenters or deleting posts violates those Facebook users' rights. The Complaint lacks specificity regarding the particulars of what posts were blocked or why, making it very

difficult to discern the nature of alleged violations or whether a constitutional violation might have occurred even in theory. More importantly, the Complaint references and relies on the framework of "public forum" analysis under the First Amendment without specifying what sort of public forum the Alderman supposedly created when creating his Facebook page, or paying any heed to the defining characteristics of various public fora under the First Amendment, or the conflicts between those defined characteristics and the circumstances alleged in this case. The Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARDS

### FRCP 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. See, e.g., *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016). In ruling on a Rule 12(b)(6) motion, the court accepts all well-pleaded facts in a plaintiff's complaint as true and views them in the light most favorable to the plaintiff. See *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). To survive a motion to dismiss, the complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also, e.g.*, *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### 42 U.S.C. Sec. 1983

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

2

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979). In order to state a claim under Section 1983, a plaintiff must allege that the defendant(s) deprived him of a right secured by the Constitution or laws of the United States, and that the defendant(s) acted under color of state law. *Starnes v. Capital Cities Media, Inc.,* 39 F.3d 1394, 1396 (7th Cir. 1994).

## ALLEGATIONS OF FACT

Defendant Gardiner is the alderman of the City of Chicago's 45th Ward. Cmplt., ¶ 1. Around the time of his election, Gardiner created a social media page on Facebook (the "Facebook Page") [www.facebook.com/AldermanGardiner] to "communicate with his constituents about a variety of government functions." Cmplt., ¶ 2. The Plaintiffs are all residents of the 45th Ward who claim to have been blocked from posting comments visible on the Facebook Page (Czosnyka, Vavrick, Maino, Suh) and/or to have had their comments deleted from the Facebook Page by Gardiner (Barash, Held). Cmplt., ¶¶ 3,5.

Plaintiffs allege that the Facebook Page is a "public forum under the First Amendment," and that Gardiner has either blocked them from posting, or deleted their posts to the Facebook Page, because of their respective identities as Gardiner critics, and/or the content of their posts. Cmplt., ¶¶ 3, 5, 91-92. Thus, Plaintiffs allege that Gardiner has violated their First Amendment rights to freely express themselves on the Facebook Page, and that the existence of other, similarly-situated individuals warrants eventual class certification. See Generally, Cmplt.

Defendant Gardiner does not seek to address the allegations concerning co-defendant the City of Chicago (the "City") in this motion.

## ARGUMENT

### The Facebook Page is not a Government-Created or -Controlled Public Forum Under the First Amendment, so no First Amendment Violation is Properly Alleged.

The Plaintiffs breezily assert that the Facebook Page is a "public forum" within the meaning of the First Amendment, without specifying what sort of public forum – general or limited/government-designated – it is supposed to be, and without alleging sufficient facts for the Court to infer that such a forum can or does exist on privately-owned social media platforms such as Facebook. The Complaint should be dismissed for failure to plead sufficient facts, grounded in the law and precedents of this jurisdiction or any other binding precedent, to determine that the Facebook Page is a forum in which viewers and commenters enjoy the First Amendment protections traditionally accorded to speakers in government-owned or -controlled physical spaces.

The Facebook Page differs from traditional government-controlled or -created fora in significant ways. First, there is no allegation or sufficient basis to infer that Gardiner established the Facebook Page as a means to promote communications among his constituents or between himself and his constituents, such that it could be deemed a "forum" for multiple avenues of expression from multiple parties, rather than a means for him to communicate information *to* his constituents regardless of any feedback. The fact that Facebook pages generally allow comments does not mean that Gardiner's intention was to create a government forum for comments. Second, the Facebook Page lacks a traditional and significant element of a public forum, namely, government ownership of and control over the designated forum. It is undisputed that Facebook is the ultimate arbiter of what may be posted or remain up on any Facebook page, and that public officials' accounts are no exception.

4

a. **The Plaintiffs do not Allege Facts to Show that the Facebook Page is a Traditional Public Forum**.

The Supreme Court has identified three types of fora implicating the First Amendment which are defined by their general nature or because government has created them for a particular purpose: (1) the traditional public forum, (2) the public forum created by government designation (i.e. the "limited" public forum), and (3) the nonpublic forum. *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.,* 473 U.S. 788, 802 (1985). Government restrictions on public expression in the different types of fora draw different levels of scrutiny. Since Plaintiffs allege that the Facebook Page is a "public forum" we need only consider the first two categories of government-created or -controlled fora: the "traditional public forum" and the "limited [or government-designated] public forum." The Facebook Page lacks virtually all of the basic characteristics of a traditional public forum.

"Traditional public fora are defined by the objective characteristics of the property, such as whether, 'by long tradition or by government fiat,' the property has been 'devoted to assembly and debate.'" *Arkansas Educ. Television Com'n v. Forbes*, 523 U.S. 666, 677 (1998) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). "Public streets and parks fall into this category." *Id.* (citing *Hague v. CIO,* 307 U.S. 496, 515 (1939)). "In addition to traditional public fora, a public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects. The government can exclude a speaker from a traditional public forum 'only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest.'" *Id.* (quoting *Cornelius,* 473 U.S. at 800). "Traditional public fora are open for expressive activity regardless of the government's intent. The objective characteristics of these properties require the government to

accommodate private speakers." *Forbes*, 523 U.S. at 678.

In other words, traditional public fora are like the proverbial town square, government-owned or controlled physical places where members of the public have historically gathered to debate or discuss matters of public concern, where the traditional concerns manifested in the First Amendment would be most acute. There is nothing traditional about the forum analysis here, or the nature of the purported forum itself, such that one could label the Facebook Page a "traditional" forum. A virtual "page" on an internet-based social media platform like Facebook is not a traditional public forum in any sense. The novelty of the questions presented here betray that fact.

b. **The Plaintiffs do not Allege Facts to Show that the Facebook Page is a Government-Designated Public Forum**.

"Designated public fora… are created by purposeful governmental action." *Forbes*, 523 U.S. at 677. "The government does not create a [designated] public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional public forum for public discourse." *Id.* (citing *Cornelius*, 473 U.S., at 802; accord, *International Soc. for Krishna Consciousness, Inc. v. Lee,* 505 U.S. 672, 678 (1992)) "Hence, 'the Court has looked to the policy and practice of the government to ascertain whether it intended to designate a place not traditionally open to assembly and debate as a public forum.'" *Id.* (citing *Cornelius,* 473 U.S., at 802).

The Complaint contains almost no allegations about the policy and practice of the government official or government entity's policies and practices, or their respective intentions in permitting the creation of, or creating, the Facebook Page. Plaintiffs allege that Gardiner uses the Facebook Page "to communicate with his constituents about a variety of government functions." Cmplt., ¶ 2. The Plaintiffs list a number of types of posts that the Alderman has made on his page

while referencing the specific contents of a few, but virtually all those listed, excepting one vaguely-alleged solicitation of citizen input about how TIF funds should be used, describe posts that are obviously intended to inform constituents of relevant information, without any obvious component of a request for interaction or commentary. *See* Cmplt., ¶¶ 2, 17, 18, 26, 28, 29, 54. The Complaint alleges that the Facebook Page includes a comments section, on which readers with access may post, but it does not remotely describe a forum which the government actor, Gardiner, or the City of Chicago, intend to create a public forum to which it then limits access based on the content of posts. "Designated public fora… are created by purposeful governmental action." *Forbes*, U.S. 523 at 677.

In fact, the Complaint contains several indications that neither Gardiner nor the City had any intention of creating a public forum via the Facebook Page. Plaintiffs do not allege that City aldermen are expected or required to have such pages. Unlike Facebook "profiles," pages have built-in features, designed by Facebook itself, which allow outside profile holders to comment on the "community" tab. It appears that anybody who creates a page, regardless of their reasons for doing so, does so subject to Facebook's design features which include a community tab on which anybody with a Facebook profile may comment. Cmplt., ¶ 13-14. Thus, as Plaintiffs assert, pages are "inherently public" which means that they are not "place[s] not traditionally open to assembly and debate" nonetheless designated as a public forum by government actions. See *Forbes*, 523 U.S. at 677 [add'l citations omitted]. All that the page administrator can do is decide which Facebook users' comments will not appear on the "community" tab by using the delete or hide features, and whether some commenters may be blocked from making posts entirely. Of course, Facebook retains absolute discretion to delete any users' pages, posts or profile, in keeping with their own, discretionary standards.

The Complaint alleges that Gardiner himself did not post any rules or standards for users

7

who interact with the Facebook Page, which implies that he did not intend to serve as the host for community conversations, or consider the Facebook Page a public forum for debate, as opposed to a conduit for him to relay important information to the community. Yet, as the case law on public fora repeatedly indicates, the creation of a limited or designated public forum must be intentional, not merely "by permitting limited discourse, but only by intentionally opening a nontraditional public forum for public discourse." *Forbes*, 523 U.S. at 677. "[N]ot every instrumentality used for communication ... is a traditional public forum or a public forum by designation." *Cornelius*, 473 U.S. at 803. Since a Facebook page is not a "traditional" public forum by anybody's estimation, Plaintiffs must sufficiently allege that Gardiner and/or the City of Chicago intended to make Gardiner's Facebook Page a public forum by some overt action. They have failed to do so, and the Complaint should be dismissed.

Plaintiffs repeatedly reference the City's alleged guidance on elected officials' social media accounts, which says that officials should not block followers or delete critical comments unless the comments are "obscene, profane, libelous or defamatory, or [ ] commercial and posted to sell goods and services." Cmplt., ¶ 23. Plaintiffs insist that none of their blocked or deleted comments ran afoul of that criteria, as if Gardiner's alleged failure to heed that advice proves his liability, which begs the question: what do the City's alleged standards have to do with the First Amendment proscription against censorship of speech in a public forum?[1] The Complaint is silent on the issue, and application of the standard by City officials would seemingly ask or at least allow them to play judge and jury, deciding on a comment-by-comment basis what amounts

---

[1] At least two of the comments referenced in the Complaint potentially run afoul of this exception to the City guidelines. Vavrick's comment in paragraph 42 refers to anybody who disagrees with his premises as "smooth-brained," which is an unmistakable pejorative referencing people with a rare genetic disorder that causes profound developmental disabilities - lissencephaly. Suh's comment in paragraph 57 attributes (presumably un-adjudicated) "criminal" behavior to an unnamed Gardiner supporter, and asserts that Gardiner lacks "even the most basic of human values."

to profanity, obscenity (famously hard to define), defamation (even harder, in some respects and generally a civil cause of action among private parties having limited First Amendment implications), and commercial speech (which is subject to an entirely different sort of First Amendment analysis than other kinds of speech). If Plaintiffs mean to assert that the Facebook Page is akin to a public forum, a state actor would have very limited power to censor or proscribe the forms of speech referenced in the City's guidance, regardless of whether it first took the time to describe or elaborate its standards. The much more obvious explanation is that the City and Gardiner had no intention of carving out a designated or limited public forum for speech on Facebook, or any other social media platforms, and that the City's guidance was merely a reflection of the desire to promote civility on social media profiles or pages that elected officials did choose to employ, in keeping with Facebook and community standards.

There is only a single precedent of which Defendant is aware that addresses the issues at play in this case and decides in favor of the party alleging a First Amendment violation: *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019). *Davison* involved a Loudon County, Virginia, Board of Supervisors Chair who was sued in her official and personal capacities for banning the plaintiff from commenting on the "Chair Phyllis Randall" Facebook page, after he implied in a post that the Board was engaged in acts of corruption. *Davison* is not binding on this Court, but more importantly, it is distinguishable for a very simple reason: the defendant supervisor *intentionally* created a public forum for communication with residents of Loudon County to discuss matters of public concern when she stated on the page, "I really want to hear from ANY Loudon citizen on ANY issues, request, criticism, complement [sic], or just your thoughts." See *Davison v. Randall*, 912 F.3d at 673.

The *Davison* Court acknowledged that no other circuit nor the Supreme Court had addressed whether a government social media page may be deemed a public forum, but

concluded that Randall had "intentionally opened the public comment section of the Chair's
Facebook page for public discourse" by "inviting 'ANY Loudon citizen' to make posts… on
ANY issues, request, criticism, complement [sic] or just your thoughts."

Davison relies heavily on Halleck v. Manhattan Community Access Corp., 882 F.3d 300
(2nd Cir., 2018) in rejecting defendant's argument that the Facebook page was a private website
on a private social media platform and therefore not subject to First Amendment scrutiny.
Halleck, which dealt with the potential liability of a privately-operated cable access channel's
liability under the First Amendment, was overturned by the Supreme Court in the subsequent
session. See Manhattan Community Access Corp. v. Halleck, 139 S.Ct. 1921 (2019) ("Providing
some kind of forum for speech is not an activity that only governmental entities have
traditionally performed. Therefore, a private entity who provides a forum for speech is not
transformed by that fact alone into a state actor.") Another case on which the Davison Court
relied – Knight First Amendment Institute v. Trump, 928 F.3d 226 (2nd Cir. 2019) – which
concluded that President Trump's practice of blocking Twitter followers from commenting on
his official thread violated the First Amendment – was vacated and deemed moot by the Supreme
Court this year. See Biden v. Knight First Amendment Institute, 593 U.S. ___, (2021).

In his Knight concurrence, Justice Thomas expressed concerns about the overall state of
First Amendment jurisprudence in the area of public forum law and social media, observing that
the Second Circuit's vacated holding "is in tension with… our frequent depiction of public
forums as 'government-controlled spaces.'" He suggested that "because unbridled control of
[Trump's Twitter] account resided in the hands of a private party [Twitter], First Amendment
doctrine may not have applied to respondents' complaint of stifled speech." Id. at ¶¶ 7, 8. The
analysis is germane to the instant circumstances, where Gardiner exercised no control over the
public-facing, comment-permitting aspects of Facebook's "pages" and "community" tabs,

despite choosing to create such a page on the existing technology, and was also subject to Facebook's own standards and ability to censor content without any liability under the First Amendment or any other applicable laws.

At the very least, Justice Thomas's analysis begs the question of how important or even feasible it would be to protect citizens from government interference with their right to speak (as required by the First Amendment) in a "forum" where they essentially have no right to speak by virtue of the platform's private ownership and removal capabilities. Can government infringe an illusory right? The obvious answer is that government cannot deprive citizens of a right in a context where they do not enjoy the right in the first place. Despite Plaintiffs' comparisons of Facebook and social media to a public space, and traditional forum, it is anything but: government actors are all obliged to play by the same (decidedly undemocratic) set of rules as individual citizens.

Regardless of what one thinks about the rise of Facebook and social media, it would be a mistake to start assigning liability to government actors for impositions on freedom of speech which are entirely illusory in nature because the government enjoys no special or unique power to control speech on such platforms that is not enjoyed in exactly the same way by private users. That is especially so where, as here, there was no alleged manifestation of an intention by the Defendant to create a designated or government-controlled public forum for expression.

## CONCLUSION

There is no precedent in this circuit for what the Plaintiffs seek. The Court should decline to carve-out a new area of First Amendment law which is so incongruous with prior understanding of public forum doctrine. The Complaint should be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6).

WHEREFORE, the Defendant, James Gardiner, moves this honorable Court to grant his

Motion to Dismiss Plaintiff's Complaint, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), and

for any additional relief that the Court deems just.

Respectfully Submitted,

THOMAS R. RAINES ATTORNEY AT
LAW, LLC

/s/ Thomas D. Carroll
Thomas D. Carroll
Thomas R. Raines Attorney at Law, LLC
20 N. Wacker Dr., Suite 556
Chicago, IL 60606
T: (312) 750-1166
F: (312) 750-1164
tcarroll@traalaw.com

Dated: September 8, 2021

## CERTIFICATE OF SERVICE

The undersigned, an attorney of record for the Defendant, hereby certifies that on August 8, 2021
he served a copy of the Defendant James Gardiner's Motion to Dismiss Plaintiff's Complaint on all
counsel of record by electronic means via the Northern District of Illinois's Electronic Case Filing
(ECF) system, which notifies all counsels and parties of record.

/s/ Thomas D. Carroll
Thomas D. Carroll