IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETE CZOSNYKA, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>JAMES GARDINER, et al.,<br><br>    Defendants. | No. 21 CV 03240<br><br>Hon. Sharon Johnson Coleman |

**DEFENDANT CITY OF CHICAGO'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant City of Chicago (the "City"), by its counsel, Celia Meza, Corporation Counsel for the City, hereby respectfully submits its Reply in Support of its Motion to Dismiss Plaintiffs' Complaint ("Complaint").

**INTRODUCTION**

Plaintiffs claim that Defendant Gardiner's moderation of his Facebook Page violates the First Amendment because he, at his sole discretion, blocks, deletes or otherwise hinders Plaintiffs' ability to interact with the Facebook Page. As the City argued in its Memorandum in Support of its Motion to Dismiss ("Memorandum" or "Memo."), Plaintiffs own allegations wholly undermine any claim that the City can be liable for these alleged constitutional violations.

Plaintiffs have not carried their burden to establish Article III standing for a claim to proceed against the City because according to their own allegations, the City did not cause Plaintiffs' alleged constitutional injuries. Likewise, an award of compensatory damages from the City to Plaintiffs would do nothing to redress their constitutional injury because such an award is untethered to Defendant Gardiner's moderation of his Facebook Page. The Court thus lacks subject matter jurisdiction over the City. But even if this Court did have jurisdiction over the

City, Plaintiffs' claim fails because they have not identified any authority the City has to cause Defendant Gardiner to stop his allegedly unconstitutional conduct, which fatally dooms their *Monell* claim. For these reasons, Count II against the City should be dismissed, with prejudice.

## ARGUMENT

### I. The City Should Be Dismissed for Lack of Subject Matter Jurisdiction Under Article III.

Plaintiffs seemingly misunderstand the City's standing arguments and cite to a string of cases deciding Rule 12(b)(6) motions which explain general pleading standards. But as the City argued, the Complaint should be dismissed at the outset under Rule 12(b)(1) for Plaintiffs' lack of standing. The Seventh Circuit has long held that standing is "not a mere pleading requirement but rather an indispensable part of the plaintiff's case[.]" *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (citation omitted). Thus, contrary to Plaintiffs' claim that the City is flipping the pleading burden on its head, Opp. at 4, establishing Article III standing is a critical element of any plaintiff's case and the plaintiff carries the burden to establish it meets each element of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Plaintiffs have not carried their burden of showing that they have standing to sue the City here.

The facts alleged in Plaintiffs' Complaint state that the City was not the cause of Defendant Gardiner's regulation of his own Facebook Page. But to avoid the implications of their own allegations, Plaintiffs first argue that it is simply the City's theory that it does not have control over Defendant Gardiner's alleged conduct, and thus there is a factual dispute suited for discovery. Opp. at 6. But even a cursory reading of the Complaint makes it apparent this is no theory, and Plaintiffs themselves forcefully allege that the City lacked such control. Plaintiffs allege that Defendant Gardiner "administers and oversees" the Facebook Page "and has final say over whether individuals are blocked from interacting with the page and whether comments are

2

hidden or deleted." Compl. ¶ 10. Plaintiffs also claim that Defendant Gardiner "blocks people and deletes comments at his sole discretion." *Id*. ¶ 84; *see also id.* ¶ 15 (the administrator of a Facebook page "can control who can interact with his or her Facebook Page"). Indeed, each individual Plaintiff's allegation about being blocked or otherwise restricted in interacting with the Facebook Page alleges that Defendant Gardiner was responsible, not the City. Compl. ¶¶ 21, 22, 27, 35, 39, 43-45, 47, 53-55, 58, 61-64, 68, 69, 71, 73. As Plaintiffs themselves admit, the Court must accept these allegations as true for purposes of this motion to dismiss. *See* Opp. at 4 ("[i]t is axiomatic that at the motion to dismiss stage the Court must accept the facts pleaded in the complaint as true. . ."). These facts permit no inference that the City caused Defendant Gardiner's regulation of the Facebook Page, which Plaintiffs allege was done at the alderman's "sole discretion." Plaintiffs offer no response to this. And where "a complaint pleads facts that show the plaintiff does not have a claim, the complaint should be dismissed without further ado." *Thompson v. Washington*, 362 F.3d 969, 970 (7th Cir. 2004).

Plaintiffs protest that despite their multiple complaints to the City regarding Defendant Gardiner's use of his Facebook Page, the City took no action. They assert that the Office of the Inspector General ("OIG") can investigate misconduct by elected officials and refer claims to the Board of Ethics ("BOE"), and that BOE "has the power to adjudicate violations of the City Governmental Ethics Ordinance." Opp. at 4. Critically, though, nowhere in the Complaint or Opposition do Plaintiffs cite to a single authority under which the City could have disciplined Defendant Gardiner based on his alleged conduct on social media. The Opposition boldly states that the City "had the power and ability to punish violations of constituents' First Amendment rights," but this assertion is entirely unsupported. The mechanisms available to the City to "punish" an elected official are limited and do not include the power to take action against an

3

official for alleged constitutional violations. OIG has the power to investigate misconduct and BOE has authority to adjudicate alleged violations of the City's ethics ordinance, but as the City argued in its Memorandum, the Municipal Code of Chicago does not purport to give either entity the authority to adjudicate or "punish" for alleged constitutional violations. Memo. at n.2. Again, Plaintiffs offer no response to this. Thus, simply put, Plaintiffs have not identified any process or authority by which the City could "punish" Defendant Gardiner for his alleged actions, and accordingly they fail to carry their burden of showing that the City caused their constitutional injuries such that they might have standing.

Plaintiffs' string citation to *Monell* cases where a failure to discipline was held to state a claim are inapposite to the City's standing arguments. Opp. at 5-6. First, none of those cases addressed Article III standing, which as explained above, a plaintiff has the burden of establishing with allegations in its complaint. Second, each of those cases involved a municipality being held liable for supervisor's failure to discipline their employees based on alleged misconduct, not a municipality being held liable for subordinate employees' failures to discipline a superior elected official for conduct allegedly taken at the official's sole discretion. *See infra* at 7-8. Unlike in the case of unelected subordinate employees, a municipality has no power to hire an alderman and certainly no power to fire an alderman. And Plaintiffs simply have not identified any authority the City has to "punish" an alderman for their alleged constitutional violations. Accordingly, Plaintiffs have not carried their burden to show the City caused their alleged injuries sufficient to satisfy Article III standing requirements, and their claim against the City should be dismissed.

Plaintiffs' claim against the City should also be dismissed because the City cannot redress Plaintiffs' alleged constitutional injury. While acknowledging they do not seek injunctive

4

relief from the City, Plaintiffs claim their demand for compensatory damages is sufficient to establish redressability.[1] Yet they fail to acknowledge that the relief they seek must be tethered in some way to remedying their constitutional injury. Here, Plaintiffs claim their injury consists of being unable to interact with Defendant Gardiner's Facebook Page. Compl. ¶ 3. But an award of compensatory damages against the City would in no way change their ability to interact with Defendant Gardiner's Facebook Page or otherwise impact their First Amendment rights. As the City argued in its Memorandum, "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Perry v. Sheahan*, 222 F.3d 309, 314 (7th Cir. 2000) (citation omitted). In simple terms, A plaintiff's remedy must be tailored to redress the plaintiff's particular injury. *See, e.g.*, *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 286–87 (2008) (citations omitted). Plaintiffs demand for compensatory damages from the City is not tailored to redress their alleged constitutional injuries, and accordingly the City should be dismissed.

**II.     Plaintiffs Fail to State a *Monell* Claim Against the City.**

Even if Plaintiffs' claim against the City were justiciable, the claim should still be dismissed for its failure to satisfy the elements of a *Monell* claim. Plaintiffs argue that they have alleged "specific facts" that "the City's failure to discipline Alderman Gardiner was the moving force behind Plaintiffs' constitutional injuries." Opp. at 8. But Plaintiffs claim is based on a completely unsupported premise: that the City has any authority to "discipline" Defendant Gardiner for actions he takes in regulating his Facebook Page. Nowhere in the Complaint or Opposition do Plaintiffs cite a single law, regulation, policy, or other authority that would allow

---

[1] Plaintiffs also make several arguments regarding nominal damages, but Plaintiffs do not seek nominal damages from the City, Compl. Count II, Wherefore Clause, so those arguments are entirely irrelevant and will not be addressed.

5

the City to cause Defendant Gardiner to stop his allegedly unconstitutional conduct. Instead, Plaintiffs cite only to the authority of the OIG to refer viable claims involving misconduct, inefficiency, or waste by aldermen to the BOE, and to the BOE's authority, in turn, to adjudicate violations of the City's Governmental Ethics Ordinance ("Ethics Ordinance"), which, at most, could result in a fine.[2] Compl. ¶¶ 76-77; Opp. at 2. But even under this theory Plaintiffs' *Monell* claim fails because they have identified no authority under which the BOE could or should have fined Defendant Gardiner. Thus, the City's supposed failure to discipline Defendant Gardiner could not have been a "moving force" behind Plaintiffs' alleged injuries.

At the outset, Plaintiffs' *Monell* claim should be dismissed because Plaintiffs have failed to identify any authority the City could have used to fine Defendant Gardiner for his alleged conduct, even after being pressed to do so. *See* Memo. at 8-9. Plaintiffs do not dispute that the City lacks the authority to adjudicate alleged First Amendment violations. And although Plaintiffs allege that the BOE may fine aldermen under the Ethics Ordinance generally, Opp. at 2, they point to no specific provision the City failed to invoke against Defendant Gardiner here. Instead, the Complaint cites to an advisory opinion issued by BOE based on still-evolving First Amendment case law, *advising* that elected officials not block constituents on social media absent narrow circumstances. *See* Compl. ¶¶ 75-80. Plaintiffs then claim, with no authority, that the BOE has the power to fine elected officials who violate this advice. But the Municipal Code of Chicago does not purport to grant BOE any such authority. *See generally* MCC § 2-56-030. And there can be no question that the First Amendment violations allegedly committed by

---

[2] But again, a fine would not remedy or end Plaintiffs' alleged constitutional injuries of being prohibited from interacting with the Facebook Page. Plaintiffs make no allegation that BOE or any other entity associated with the City could issue injunctive-type relief that would prohibit Defendant Gardiner from moderating his Facebook Page in a particular manner.

Defendant Gardiner that are the subject of the Complaint are not the same as ethics ordinance violations that BOE could punish by issuing a fine.

Plaintiffs do not explain what violation of the Ethics Ordinance, as opposed to the United States Constitution, is at stake based on the facts alleged. Rather, Plaintiffs' *Monell* claim boils down to the notion that the City exhibited deliberate indifference by failing to fine Defendant Gardiner for not following the BOE's advice. *See* Compl. ¶¶ 75-80. But this again is completely untethered to the BOE's (or the City's) actual authority over an independently elected official's moderation of their social media, particularly in light of Plaintiffs' repeated allegations that Defendant Gardiner alone controls his Facebook Page. Simply put, Plaintiffs have not identified any way BOE, or the City could have fined Defendant Gardiner for how he moderated his Facebook Page or stopped Defendant Gardiner's allegedly unconstitutional conduct.

Plaintiffs also fail to plausibly allege that the City's alleged failure to fine Defendant Gardiner was the "moving force" behind their alleged injuries. *See Leahy v. Bd. of Tr. Of Cmty. College Dist. No. 508*, 912 F.2d 917, 922 (7th Cir. 1990). For starters, Plaintiffs do not dispute that the BOE's guidance would tend to stop, not be a moving force behind, Defendant Gardiner's alleged conduct. Instead, they fault the City for not doing more, particularly by issuing fines. But again, Plaintiffs fail to allege any viable avenue through which the City should have issued the fines. And the City could not have regulated the Facebook Page because, as Plaintiffs themselves repeatedly allege, Defendant Gardiner alone "administers and oversees" and has "final say" and "sole discretion" over the Page. Compl. ¶¶ 10, 84. Plaintiffs cite no authority showing how the City could be held liable for failing to discipline an alderman—an independently elected official—for regulating his own Facebook Page. To support their claim that the City's failure to discipline Defendant Gardiner was a "moving force" behind their alleged injuries, Plaintiffs cite

7

only to inapposite cases involving the failure to train or discipline *Monell* framework.[3] This framework, though, is fundamentally ill-suited for Plaintiffs' case. Courts have only recognized *Monell* claims predicated upon a locality's repeated failures to train or discipline in cases involving *subordinate* employees—overwhelmingly in the cases of police and correctional officers. *See*, *e.g.*, Opp. at 12 (citing cases involving correctional and police officers); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Under this case law, for a locality's failures to discipline to be a "moving force" behind an injury, the failures must relate to a *superior's* deliberate decisions to not discipline *subordinate* employees.[4] Plaintiffs cite no case, and offer no argument, supporting the direct inversion of this *Monell* framework to encompass the alleged failure of subordinate officials to discipline superior elected officials. Accordingly, the case law

---

[3] Plaintiffs' attempt to distinguish cases cited by the City further demonstrates why Plaintiffs' have no *Monell* claim here. Plaintiffs argue that the City's reliance on *Bergquist v. Milazzo*, No. 18-CV-3619, 2020 WL 757902, at *5 (N.D. Ill. Feb. 14, 2020) and *Connelly v. Cook Cty., Illinois*, No. 19-CV-07894, 2021 WL 1088274, at *3 (N.D. Ill. Mar. 22, 2021) is misplaced because the plaintiffs there simply sued the wrong defendants and claims that were brought against the alleged tortfeasors' correct employer were allowed to proceed. Opp. at n.1. This only bolsters the City's argument – no *Monell* liability should attach here where Defendant Gardiner is an independently elected official, not a subordinate employee, and the Complaint is rife with allegations that he alone controlled his alleged unconstitutional activities.

[4] *See also Turpin v. Mailet*, 619 F.2d 196, 201 (2d Dist. 1980) ("where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference . . ."); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) (the "persistent failure to discipline subordinates who violate civil rights" can "give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct"); *Glisson v. Indiana Dep't of Corrs.*, 849 F.3d 372, 381 (7th Cir. 2017) ("The critical question under *Monell* remains this: is the action about which the plaintiff is complaining one of the institution itself, or is it merely one undertaken by a subordinate actor?"); *Decker v. City of Greenfield*, 2016 WL 70851, at *5 (S.D. In. 2016) ("failure to supervise and/or discipline subordinates" may result in *Monell* liability); *Carr v. Harry*, 2001 WL 1654714, at *7 (N.D. Ill. 2001); *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008); *Abyetia v. Fresno Police Dep't*, 2009 WL 1674568, at *9 (E.D. Cal. June 12, 2009) ("municipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy . . . within the meaning of *Monell*"); *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) ("where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a 'deliberate choice,' that acquiescence may 'be properly thought of as a city 'policy or custom' that is actionable under § 1983'") (collecting cases).

Plaintiffs cite does not support their view that the BOE's alleged failure to fine Defendant Gardiner—an independently-elected alderman ultimately answerable to the electorate—was a "moving force" behind his interactions with them on his Facebook Page.

The Court should therefore dismiss Count II for failure to satisfy *Monell*.

## CONCLUSION

For the foregoing reasons, the City of Chicago requests that the Court dismiss Plaintiffs' Complaint against the City pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and grant the City such further relief as the Court deems just and appropriate.

Date: September 16, 2021

MAGGIE SOBOTA
Maggie.Sobota@cityofchicago.org
JORDAN ROSEN
Jordan.Rosen@cityofchicago.org
City of Chicago, Department of Law
Constitutional and Commercial
 Litigation Division
2 North LaSalle Street, Suite 520
Chicago, Illinois 60602
(312) 742-0260 / 744-9018

Respectfully submitted,

CELIA MEZA,
Corporation Counsel for the City of Chicago

By: /s/ Maggie Sobota
 Attorney for Defendant City of Chicago