IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETE CZOSNYKA, et al., | |
| Plaintiffs, | 21-cv-3240 |
| v. | Hon. Sharon Johnson Coleman |
| JAMES GARDINER, et al., | |
| Defendants. | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANT ALDERMAN GARDINER'S MOTION TO DISMISS**

Plaintiffs, through counsel, respond in opposition to Defendant Alderman James Gardiner's motion to dismiss as follows:

**INTRODUCTION**

Plaintiffs, six residents of Chicago's 45th Ward, bring this suit under 42 U.S.C. §1983 to address violations of their First Amendment rights by Defendant Alderman James Gardiner. Their complaint arises from Alderman Gardiner's content-based regulation of constituents' comments on his official Facebook Page (www.facebook.com/AldermanGardiner), including deleting or hiding comments critical of the Alderman or his policies and "blocking" constituents who make unfavorable comments about the Alderman's policy decisions, while allowing hundreds of others to participate in the forum by expressing opinions, asking questions, and engaging in debate. *See* ECF 1, Complaint, at ¶¶1–5.

In his motion to dismiss, Defendant Alderman Gardiner argues that the Complaint should be dismissed because his Facebook Page is not a public forum to

which First Amendment protections apply. There are three reasons the argument fails. First, the Supreme Court has recognized that government regulation of speech on social media implicates the First Amendment. Second, the complaint alleges facts showing that Alderman Gardiner's Facebook Page is a public forum even though Facebook is a privately owned entity. And third, even if the Facebook Page is not found to be a public forum, Alderman Gardiner's blocking constituents from commenting on the Page violates the First Amendment's petition clause. For all of these reasons, the motion should be denied.

## ARGUMENT

### I. The Supreme Court Has Recognized that Government Regulation of Speech on Social Media Implicates the First Amendment

Before turning to the question of whether Alderman Gardiner's Facebook Page is a public forum, it should be noted that the Supreme Court has explicitly held that social media websites are the "most important places" where First Amendment activities take place today. In *Packingham v. North Carolina*, 137 U.S. 1730 (2017), the U.S. Supreme Court considered the constitutionality of a North Carolina law that made it illegal for a person on the sex offender registry to access social media websites. The Court found the statute unconstitutional, writing as follows:

> While in the past there may have been difficulty in identifying the most important places … for the exchange of views, today the answer is clear. It is cyberspace—the vast democratic forums of the Internet in general, and social media in particular.
>
> On [social media], users can debate religion and politics with their friends and neighbors … look for work, advertise for employees, or review tips on entrepreneurship … and petition their elected representatives and otherwise engage with them in a direct manner. … In short, social media

users employ these websites to engage in a wide array of protected First Amendment activity on topics "as diverse as human thought."

*Id.* at 1735-36 (*citing Reno v. American Civil Liberties Union*, 521 U.S. 844, 870 (1997)).

Thus, citizens have a legally recognized First Amendment interest in participating on social media without interference by the government, and there are significant First Amendment implications when an elected public official such as Defendant Alderman Gardiner suppresses speech in these forums.

## II. Alderman Gardiner's Facebook Page Is a Public Forum to Which the First Amendment Applies

"[A] public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech." *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985); *see also Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). In determining whether government officials have created a designated public forum, courts consider the forum's compatibility with expressive activity and whether the government's overall "policy and past practice" shows that the forum is intended to be used for speech by the public. *Cornelius*, 473 U.S. at 802.

In his motion to dismiss, Alderman Gardiner argues that his Facebook Page is not a "public forum" to which First Amendment protections apply. In particular, he contends that "there is no allegation or sufficient basis to infer that Gardiner established the Facebook Page as a means to promote communications among his constituents or between himself and his constituents, such that it could be deemed a

3

'forum' for multiple avenues of expression from multiple parties, rather than a means for him to communicate information *to* his constituents regardless of any feedback." Def. Mot. at 4; *see also id*. at 8 ("[Gardiner] did not intend to serve as the host for community conversations or consider the Facebook Page a public forum for debate, as opposed to a conduit for him to relay important information to the community.") This argument fails for the reasons set forth below.

### 1. The Complaint Alleges Facts Which Establish that Alderman Gardiner's Facebook Page Is a Public Forum

The complaint alleges facts that establish that Alderman Gardiner intentionally created a forum for speech to which First Amendment protections apply. This is so in at least three respects.

First, Alderman Gardiner's intent to create a public forum is evident from his choice to use a Facebook Page to communicate with his constituents regarding government business. Facebook Pages are inherently interactive and are designed to solicit feedback in the form of comments, posts and messages. *See* Complaint at ¶13 ("Pages are inherently public. Anyone on or off Facebook can view the posts and comments on Pages. Anyone with a Facebook account can interact with a Page (*e.g*., comment on posts; ask questions; or send a message)"). Gardiner is not required to maintain a Facebook Page. Nor is he required to allow comments on his Facebook Page. If he wanted to create a one-way channel of communication, he could turn comments off on his Facebook posts. In the alternative, he could use a traditional website (*i.e.,* not a social media page) to publish press releases without inviting feedback and comments. His choice to establish a Facebook Page and leave its

4

interactive elements enabled demonstrates that Alderman Gardiner has intentionally created a public forum.

Second, Gardiner's intent to create a public forum is evident from the fact that he allows and invites comments on his Facebook Page. Indeed hundreds of people participate actively in the comments sections on his posts. *See, e.g.*, Complaint at ¶2 ("Hundreds of Chicagoans participate in the comments sections on Alderman Gardiner's posts, expressing opinions, asking questions, and engaging in debate."); *id.* at ¶17 ("Alderman Gardiner posts on his Facebook Page nearly every day, oftentimes several times a day, to share photos of himself appearing at events in his official capacity as the 45th Ward Alderman, information about local events, goings on in City government, and other matters of interest to residents of the 45th Ward. Each post receives dozens of reactions from users who follow the Page, and most posts are followed by an active comments section in which constituents ask follow-up questions, react to the post, and debate viewpoints."). Moreover, Gardiner has actively invited and solicited public feedback on his Facebook posts. *Id.* at ¶2 ("In [a] recent post [Gardiner] has solicited citizen input about how Tax Increment Financing ("TIF") funds will be used for improvements in the 45th Ward.")[1]

---

[1] In addition to the example of Alderman Gardiner's solicitation of public comments highlighted in the Complaint, Plaintiffs are aware of numerous other examples of Facebook posts where Alderman Gardiner actively requested comments and encouraged discussion. *See, e.g.*, https://www.facebook.com/AldermanGardiner/posts/520252068858871 (April 27, 2020 post that reads as follows: "Did anyone notice a difference with the bike lanes on Milwaukee Avenue today? Leave a comment below to let us know how we can further address safety issues for both bicyclists and motorists."); *see also* https://www.facebook.com/AldermanGardiner/posts/527577434793001 (May 8, 2020 post that reads in part: "Leave a comment below if you know of an area in our community that could use some love.")

Third, Alderman Gardiner's intent to create a public forum is evidenced by his engagement with the interactive elements of the Facebook platform. In particular, he reviews comments that are posted and decides which comments to delete and which ones remain visible. *Id.* at ¶40, 43 ("Alderman Gardiner deleted Plaintiff [Vavrick's] comment. Gardiner's Holocaust Remembrance Day post is still visible to anyone who visits his Facebook Page, as are more than a dozen other comments on the post, but Vavrick's comment and responses that appeared below it are not."); *id.* at ¶72, 73 ("[S]everal constituents commented on Alderman Gardiner's Facebook Page asking him about his position on the Civilian Police Accountability Council (CPAC), a proposed civilian oversight board for claims of police misconduct. In the comments, Plaintiff Barash responded to another commenter who was opposed to CPAC because he believed it would lead to an increase in violent crime in the City… Alderman Gardiner hid Barash's comment."). Moreover, Alderman Gardiner has directly referred to constituents in several of his Facebook posts and allowed other constituents to react to those posts. *See, e.g.*, *Id.* at ¶29 ("On October 16, 2020, Alderman Gardiner posted a video of himself standing in front of Czosnyka's house and referred to Czosnyka as "one of [my] biggest fans," ending the post with the hashtag #besties. Several other constituents spoke in Czosnyka's defense, but Czosnyka was unable to respond because he is banned from interacting with Alderman Gardiner's Facebook page.")

In short, Defendant Gardiner elected to use an interactive platform to discuss government business and decided to make extensive use of the platform's

interactive features. These facts show that Defendant Alderman Gardiner purposefully created a forum for speech by constituents and members of the general public. As the Supreme Court emphasized in *Packingham*, social media platforms offer "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard," in part because these platforms permit citizens to "engage with [their elected representatives] in a direct manner." *Packingham*, 137 S. Ct. at 1737. Defendant Gardiner's decision to use Facebook to communicate with his constituents is powerful evidence of an intent to create a forum open to speech.

At the motion to dismiss stage, the court must accept the facts pleaded in the complaint as true and draw reasonable inferences in the non-movant's favor. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017). Alderman Gardiner is free to dispute the factual allegations in the complaint regarding the nature of the forum he has created on his Facebook Page, how he uses the Page, and/or whether the Plaintiffs' particular posts were protected by the First Amendment in discovery. But at this point in the proceedings, the factual allegations in the complaint are sufficient to overcome Defendant's claims to the contrary.

### 2. In Similar Contexts, at Least Two Courts Have Determined that Public Officials' Social Media Pages Were Public Forums

While Defendant is correct that the extent to which the First Amendment applies to public officials' use of social media is a new and evolving area of First Amendment jurisprudence, Plaintiffs' claim is not without precedent. At least two federal courts have determined under similar circumstances that public officials'

7

social media accounts constituted public forums to which the First Amendment applied.

In *Davison v. Loudoun Cty. Bd. of Supervisors*, 267 F. Supp. 3d 702 (E.D. Va. 2017), a *pro se* plaintiff sued the chairperson of his local county Board of Supervisors alleging that she violated his First Amendment rights when she temporarily blocked him from her Facebook Page after he posted a comment that "raised ethical questions about the conduct of School Board officials." *Id*. at 706, 716. The district court concluded that the chair violated the First Amendment by engaging in viewpoint discrimination and issued "a declaratory judgment clarifying that Defendant's 'Chair Phyllis J. Randall' Facebook page operates as a forum for speech under the First Amendment to the U.S. Constitution." *Id*. at 706. In reaching the conclusion that the Facebook Page was a public forum, the court cited *Packingham* and wrote as follows:

> When one creates a Facebook page, one generally opens a digital space for the exchange of ideas and information. Defendant did so here, deliberately permitting public comment on her "Chair Phyllis J. Randall" Facebook page. In practice, Defendant has allowed virtually unfettered discussion on that page. … This sort of governmental designation of a place or channel of communication for use by the public is more than sufficient to create a forum for speech.

*Id*. at 716 (internal citations omitted).

Similarly, in *Knight First Amendment Institute v. Trump*, 928 F.3d 226 (2nd Cir. 2019) (vacated and remanded *sub nom Biden v. Knight First Amendment Inst.*, 141 S.Ct. 1220 (2021)), the Second Circuit affirmed a district court decision concluding that comment threads on former President Donald Trump's personal Twitter

account, @realDonaldTrump, constituted a public forum and that content-based regulation of who could respond to the tweets posted by the account violated the First Amendment. *Id*. at 235. In reaching this conclusion, the Court cited *Packingham* and noted that "social media is entitled to the same First Amendment protections as other forms of media" (*id*. at 237) and wrote that the president created a public forum when he "made [the Twitter account's] interactive features accessible to the public without limitation." *Id*.[2]

Here, as in *Louden County* and *Knight*, Alderman Gardiner has established a social media account through which he communicates with members of the public about governmental activities. *See* Complaint at ¶2, 17 (examples of posts on Gardiner's Page). Here, as in *Knight* and *Louden County*, Alderman Gardiner has made the "interactive features" of the social media account open to the general public. *See* Complaint at ¶¶2, 17, 18, 40 (examples of debate, questions, and interactions that occur on the Page on a daily basis). And here, as in *Knight* and *Louden County*, Alderman Gardiner has engaged in content-based regulation of the speech that takes place on the Page by hiding or deleting comments that criticize him or his policies and blocking certain members of the public from interacting with the Page after they questioned or criticized the alderman. *Id*. at ¶3, 33-35, 42-47, 52-58, 61-64, 67-73 (examples of comments that were hidden or deleted and/or led to the Plaintiffs' being blocked).

---

[2] As Defendant notes, the Supreme Court remanded the case to Second Circuit with instructions to dismiss the case as "moot" after Trump lost his reelection bid. *Biden v. Knight First Amendment Inst. at Columbia Univ.*, 141 S. Ct. 1220 (2021).

Thus, for all of the same reasons that the courts in *Louden County* and *Knight* recognized, Plaintiffs have stated a valid First Amendment claim here.

### 3. The Fact that Facebook Is a Private Entity Does Not Make It Permissible for Government Officials to Engage in Content-Based Regulation of Speech on Facebook

Defendant Alderman Gardiner also argues that the Page should not be seen as a public forum because Facebook is privately owned and can delete Pages or user profiles at will. *See* Def. Mot. at 10-11.

This same argument was raised in *Knight*. The Second Circuit rejected the argument, writing as follows:

> [T]he fact that government control over property is temporary, or that the government does not 'own' the property in the sense that it holds title to the property, is not determinative of whether the property is, in fact, sufficiently controlled by the government to make it a forum for First Amendment purposes. … Temporary control by the government can still be control for First Amendment purposes.

*Knight*, 928 F.3d at 235 (citations omitted).

Notwithstanding the fact that a private entity ultimately owns the Facebook Page, Alderman Gardiner currently controls it. *See* Complaint at ¶10 ("Alderman Gardiner administers and oversees the Alderman Gardiner Facebook page and has final say over whether individuals are blocked from interacting with the Page and whether comments are hidden or deleted."); *id.* at ¶84 ("Alderman Gardiner blocks people and deletes comments at his sole discretion, untethered to any written guidelines or principles.") That is sufficient to establish that the Page is operating as a public forum. *See Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 547-52 (1975) (holding privately-owned theater leased to and operated by city was a

public forum); *U.S. Postal Serv. v. Council of Greenburgh Civic Associations*, 453 U.S. 114, 132 (1981) (public forum analysis could apply to "a particular piece of personal or real property owned *or controlled* by the government") (emphasis added)).

If in the future, Facebook decides to delete Alderman Gardiner's Page and/or ban him from the platform, then, as in *Knight*, the Plaintiffs' claim for injunctive relief would be moot. But, at the present, Alderman Gardiner is the only person who controls what speech is permissible on his Page; and thus his content-based regulation of speech in that forum is subject to First Amendment scrutiny.

### III. Even If Defendant Gardiner's Facebook Page Is Not a 'Public Forum,' His Blocking of Constituents Violates the First Amendment's Petition Clause

Defendant Alderman Gardiner's motion to dismiss should be denied for an additional reason. Independent of whether the Facebook Page is a public forum, Alderman Gardiner's blocking of Plaintiffs Czosnyka, Maino, Suh, and Vavrick also violates the First Amendment because it imposes a viewpoint-based burden on their right "to petition the Government for a redress of grievances." U.S. Const. Amdt. I. Though the right to speak and the right to petition are related, they are not duplicative: "The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives, whereas the right to speak fosters the public exchange of ideas that is integral to deliberative democracy as well as to the whole realm of ideas and human affairs." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 388 (2011). Accordingly, the Supreme Court has cautioned

11

courts not to "presume ... that Speech Clause precedents necessarily and in every case resolve Petition Clause claims." *Id*.

Even if Defendant Gardiner is right that his Facebook Page does not constitute a "public forum," his blocking of the Plaintiffs and deleting their comments and questions would violate the Petition Clause. This is because the Facebook Page is, in addition to being a forum for discussion, a channel through which constituents can petition their elected official directly. Indeed, the Supreme Court has observed that the interactive features of social media make these platforms especially suited to this purpose. *Packingham*, 137 S. Ct. at 1735 ("users can petition their elected representatives and otherwise engage with them in a direct manner.").

The allegations in the Complaint show that the Plaintiffs were blocked after they used the Facebook Page for the purpose of petitioning Alderman Gardiner about his actions and positions as a government official. *See, e.g.,* Complaint at ¶20, 27 (Plaintiff Czosnyka blocked after disagreeing with Alderman Gardiner's stance on affordable housing in the community); ¶33 (Plaintiff Maino blocked after urging the Alderman to move forward with developments in the Six Corners neighborhood); *id*. at ¶45 (Plaintiff Vavrick blocked after asking for support for a proposed local development); *id*. at ¶57, 58 (Plaintiff Suh blocked after asking Gardiner to publicly denounce his supporter's attack on another constituent).[3]

---

[3]  Defendant argues that some of the Plaintiffs' posts should not receive First Amendment protection because of the language used. *See* Def. Mot. at 8, n.1. But the law is clear that the First Amendment protects the right to petition even when the right is exercised in a manner that officials deem to be offensive. *See, e.g., U.S. Postal Serv. v. Hustler Magazine, Inc.*, 630 F. Supp. 867, 871 (D.D.C. 1986) ("As elected representatives of the people,"

12

Plaintiffs do not contend that Alderman Gardiner is required to make his Facebook Page available as a channel through which members of the public may exercise their Petition Clause rights. Nor do Plaintiffs contend that the First Amendment requires Alderman Gardiner to respond to the public's petitions, or even to read them. Having made the channel available, however, Alderman Gardiner cannot close the channel solely to those who disagree with him or his policies. *See Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 680 (1996) (noting that "the government has no legitimate interest in repressing" "ordinary citizens['] … viewpoints on matters of public concern"); *Lamb's Chapel v. Ctr. Moriches Union Free School Dist.*, 508 U.S. 384, 394 (1993) ("[T]he First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others."); *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) ("a municipal government … has no power to restrict expression because of its message, its ideas, its subject matter, or its content.") (citation omitted); *see also Mirabella v. Villard*, 853 F.3d 641, 649-50 (3d Cir. 2017) (holding retaliation for petition activity unconstitutional).

## CONCLUSION

For all of the reasons set forth above, Plaintiffs respectfully request that this Court deny Defendant Alderman Gardiner's motion to dismiss.

---

members of Congress "cannot simply shield themselves from undesirable mail in the same manner as an ordinary addressee.")

        Respectfully submitted,

        <u>/s/ Adele D. Nicholas</u>
        <u>/s/ Mark G. Weinberg</u>
        *Counsel for Plaintiffs*

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869
adele@civilrightschicago.com

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913
mweinberg@sbcglobal.net