UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETE CZOSNYKA, et al., individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) Case No. 21-cv-3240 ) ) Judge Sharon Johnson Coleman ) |
| v. | ) ) |
| JAMES GARDINER, Alderman of the 45th Ward of the City of Chicago, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, who are six residents of Chicago's 45th Ward, bring this First Amendment lawsuit against their Alderman James Gardiner for blocking certain comments made on his official Facebook page. Before the Court is Alderman Gardiner's motion to dismiss plaintiffs' class action complaint under Federal Rules of Civil Procedure 12(b)(6). For the following reasons, the Court denies Alderman Gardiner's motion to dismiss.

**Background**

In their class action complaint, plaintiffs challenge the constitutionality of the manner in which Alderman Gardiner regulates "speech" on his Facebook page, which he created for his role as a government official. They allege that in an effort to suppress dissent, Alderman Gardiner routinely hides or deletes comments that criticize him or his policies. In addition, plaintiffs assert that Alderman Gardiner has permanently banned certain constituents from being able to engage on his Facebook page. To this, plaintiffs Pete Czosnyka, Dominick Maino, Adam Vavrick, and James Suh assert that they are completely banned from commenting on Alderman Gardiner's Facebook Page, sending messages to Alderman Gardiner's Facebook Page, and responding to comments posted by others on the Page. Plaintiffs Peter Barash and Steve Held further allege that they can comment on

Alderman Gardiner's Facebook Page, but have had their comments hidden or deleted so that they are not visible to others. Plaintiffs contend that Alderman Gardiner actively solicits feedback and engagement by the interactive elements of the Facebook platform.

Furthermore, plaintiffs assert that Alderman Gardiner's Facebook Page constitutes a vehicle by which constituents may petition him. Plaintiffs claim they were blocked after they used the Facebook Page for the purpose of petitioning Alderman Gardiner as it related to his capacity as a government official. As such, plaintiffs contend that a restriction from accessing this avenue to petition is a violation of the First Amendment's Petition Clause.

Plaintiffs seek injunctive relief prohibiting Alderman Gardiner from continuing to engage in content-based regulation of speech and compensatory damages for his violations of their First Amendment rights.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S.Ct. 1289, 179 L.E.d.2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-placed factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). To survive a motion to dismiss, the plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint is facially plausible when the plaintiff alleges enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**Discussion**

In their complaint, plaintiffs allege that Alderman Gardiner's unilateral ban of constituents

and the content-based regulation of speech on his Facebook Page violate the First Amendment. They explain that his Facebook Page constitutes a public forum and avenue to petition, under the First Amendment of the Constitution of the United States of America. U.S. Const. amend. I.

In his motion, Alderman Gardiner argues that plaintiffs have insufficiently alleged that his Facebook Page is a public forum, especially because Facebook is a private entity. The Seventh Circuit has held that public forums are "locations or channels of communication that the government opens for use by the public for expressive activity." *Surita v. Hyde*, 665 F.3d 860, 869 (7th Cir. 2011). Indeed, federal courts have "extended public speech protection to less traditional, designated public forums." *One Wisconsin Now v. Kremer*, 354 F. Supp. 3d 940, 953 (W.D. Wis. 2019). The Supreme Court discussed similar conceptions of less traditional public forums in *Packingham*, which addressed the issue of a lack of access to public forums in our "cyber age," specifically social media. *See Packingham v. North Carolina*, — U.S. —, 137 S. Ct. 1730, 1736, 198 L. Ed. 2d 273 (2017). The Supreme Court provides guidance in determining whether a designated forum has been intentionally created by the government, including (1) the "policy and practice of the government" and (2) "the nature of the property and its compatibility with expressive activity." *Cornelius v. NAACP Legal Defense & Educ. Fund. Inc.*, 473 U.S. 788, 802, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985).

Although the Seventh Circuit has yet to address this issue, other Circuit Courts have relied on *Cornelius'* expressive activity factor when examining whether social media platforms can constitute a public forum. For example, the Fourth Circuit has held that expressive activity can be when one "intentionally open[s] the public comment section" and invites commentary, noticeably marked by an interactive component of (say) a Facebook Page, "on [any] issue, request, criticism, complement or just …thoughts." *Davison v. Randall*, 912 F.3d 666, 682 (4th Cir. 2019), as amended (Jan. 9, 2019). Similarly, the Second Circuit has ruled in the context of Twitter (an analogous social media platform), that blocking an account from certain users prevents expressive

3

conduct. *See Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 237 (2d Cir. 2019) ("The Account was intentionally opened for public discussion when the President, upon assuming office, repeatedly used the Account as an official vehicle for governance and made its interactive features accessible to the public without limitation.").[1]

Thus, based on *Packingham* and the *Cornelius* factors, federal courts have concluded that when the government or a government official uses a social media account for official business, the interactive portions of the social media platforms are public forums for First Amendment purposes. *See Davison,* 912 F.3d at 682; *Knight First Amendment Inst.*, 928 F.3d at 237; *Felts v. Reed*, 504 F.Supp.3d 978, 985 (E.D. Mo. 2020); *One Wisconsin*, 354 F.Supp. 3d at 953. The Court agrees with this persuasive authority.

Correspondingly, the fact that the government only has temporary control over the Facebook Page and that the government does not *own* the social media platform is not determinative of whether the property is, in fact, sufficiently controlled by the government to make it a forum in relation to the First Amendment. *See Knight First Amendment Inst.*, 928 F.3d at 235. Specifically, control is not determined based on private or public ownership, but instead on the government's exercise of control over the relevant aspects of the social media platform. *Id.*

Here, plaintiffs have plausibly alleged that Alderman Gardiner restricted their access to a public forum in violation of the First Amendment by barring them or deleting their comments from the interactive portions of his Facebook Page that designates Alderman Gardiner as a government official. These facts raise a reasonable inference that plaintiffs are not alone in suffering constitutional injuries resulting from Alderman Gardiner's practices. Moreover, plaintiffs have set

---

[1] It was only upon President Trump leaving office that *Knight First Amendment Inst. at Columbia Univ. v. Trump* became moot, as the Supreme Court vacated the judgment, remanding the case to be dismissed. *Knight First Amendment Inst. v. Trump*, 928 F.3d 226 (2nd Cir. 2019), vacated and remanded *sub nom Biden v. Knight First Amendment Inst.*, 141 S.Ct. 1220 (2021).

forth sufficiently detailed allegations that Alderman Gardiner knowingly banned constituents and engaged in content-based regulation of speech on his Facebook Page. Further, he did so unilaterally while seeking out engagement from users. Subsequently, the Court denies Alderman Gardiner's motion to dismiss.

In the alternative, plaintiffs argue that if Alderman Gardiner's Facebook Page is not a "public forum," his blocking of constituents violates the First Amendment's Petition Clause. Because the Court concludes plaintiffs have sufficiently alleged that Alderman Gardiner's Facebook Page is a public forum, the Court need not address plaintiffs' bare-boned Petition Clause argument.

**Conclusion**

For these reasons, the Court denies defendant's motion to dismiss [26].

IT IS SO ORDERED.

Date: 2/10/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge