IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PETE CZOSNYKA, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Case No: 21-cv-3240 |
| ) | |
| JAMES GARDINER, ) | |
| ) | |
| Defendant. ) | |

### CITY OF CHICAGO OFFICE OF INSPECTOR GENERAL'S MOTION TO QUASH SUBPOENA OF NON-PARTY RECORDS

Non-party the City of Chicago Office of Inspector General ("OIG"), by and through one of its attorneys, Celia Meza, Corporation Counsel for the City of Chicago, respectfully moves this Court to enter an order under Rule 45 quashing the "Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action," issued to it by Plaintiffs.

### PROCEDURAL AND FACTUAL BACKGROUND

On June 17, 2021, Plaintiffs filed their Complaint against Defendant James Gardiner and the City of Chicago. That Complaint "challenge[d] the constitutionality of the manner in which 45th Ward Alderman James Gardiner regulates speech on the Facebook Page he has created for his role as a government." Complaint (Dkt. 1) ¶ 1. The Complaint also alleged that the City, including OIG, "ha[d] not taken any steps to reprimand Alderman Gardiner or to ensure he that he uses his official government Facebook Page in a manner consistent with the First Amendment." *Id.* ¶ 6. Plaintiffs' suit consisted, therefore, of two claims: a claim against Gardiner for "violat[ing] the First Amendment" by his "content-based regulation of speech," *id.*¶ 92, and a *Monell* claim

against the City of Chicago (of which OIG is a subordinate part) for being "on notice of Gardiner's violations of Plaintiffs' and others' First Amendment rights, but fail[ing] to take any action to stop or remedy those violations," *id.* ¶ 94.

On October 25, 2021, the Court dismissed the City of Chicago as a party from this matter following a successful motion to dismiss under Rules 12(b)(1) and 12(b)(6). City MTD Order (Dkt. 33) at 3-4. The Court concluded that "the City's failure to discipline Alderman Gardiner cannot be the moving force behind plaintiffs' constitutional injuries" and held that "[t]he City of Chicago is no longer a defendant to this lawsuit." *Id.*

On February 10, 2022, the Court denied Alderman Gardiner's motion to dismiss the Complaint, writing that Plaintiffs had plausibly alleged that "Alderman Gardiner restricted their access to a public forum in violation of the First Amendment" and "engaged in content-based regulation of speech on his Facebook Page." Gardiner MTD Order (Dkt. 39) at 4-5. Thus, only Alderman Gardiner thus remains a defendant to this lawsuit.

On May 25, 2022, Plaintiffs sent a subpoena to OIG via First Class U.S. Mail. *See* Ex. 1. That subpoena, which OIG actually received on June 2, 2022, demanded that OIG produce, by June 21, 2022:

> For the time period of May 7, 2019 to the present, all documents (including, but not limited to, complaints, audits, reviews, investigations, interviews, correspondence, reports, and findings) that reference or pertain to the following:
> - 45th Ward Alderman James Gardiner's Facebook Page;
> - 45th Ward Alderman James Gardiner's use of social media;
> - Pete Czosnyka
> - Peter Barash
> - Dominick Maino
> - Steven Held
> - Adam Vavrick; or
> - James Suh

On June 14, 2022, Plaintiffs' counsel agreed to extending the response date on the

2

subpoena to July 14, 2022, to focus the scope of the subpoena to documents responsive to the complaint, including the discussion of search terms and technological capabilities, and that a protective order may be necessary.

On June 16, 2022, a telephonic meeting was held with Plaintiffs' counsel, OIG's counsel, and members of OIG. Plaintiffs' counsel stated that Plaintiffs would be amenable to narrowing the subpoena to encompass only complaints made by the named Plaintiffs to OIG about Gardiner. However, later that day, Plaintiffs' counsel sent an email to OIG's counsel which proposed a far more expansive scope than had been discussed during the meet and confer and which was functionally identical to the original subpoena:

> "all documents (including, but not limited to, complaints, audits, reviews, investigations, interviews, correspondence, reports, and findings) that reference or pertain to the following:
> 
> - 45th Ward Alderman James Gardiner's Facebook Page;
> 
> - 45th Ward Alderman James Gardiner and any of the named Plaintiffs in our case (Pete Czosnyka, Peter Barash, Dominick Maino, Steve Held, Adam Vavrick, or James Suh).

On July 8, 2022, OIG sent Plaintiffs' counsel an email thanking counsel for being agreeable to narrowing the subpoena and stating that it would endeavor to respond to the narrowed subpoena by the following week as OIG's counsel would be on vacation from July 15, 2022, to August 1, 2022.

On July 14, 2022, OIG's counsel attempted to call Plaintiffs' counsel but got voicemail and was unable to leave a voicemail as the message box was full. OIG's counsel followed with an email pointing out that the subpoena was broadened as it now has no timeframe from which to work and includes any complaints about any subject that the Plaintiffs made about Gardiner, *as well as* complaints from any source, including people

other than the Plaintiffs, about Gardiner's use of social media. The email stated that OIG was willing to turn over complaints Plaintiffs made to OIG regarding Gardiner's use of social media within a specified timeline so long as a protective order was in place. Plaintiffs' counsel replied that they would discuss internally and respond as soon as possible.

On July 15, 2022, OIG's counsel called Plaintiffs' counsel. During this call, it was generally agreed that Plaintiffs accepted receiving just the complaints they had made to OIG and that those disclosures would be protected by an agreed protective order. OIG accordingly sent an email memorializing what it understood to be the agreement, which stated.

> After an agreed protective order is put in place, but no sooner than August 5, 2022, OIG will produce complaints it received between May 7, 2019, and May 25, 2022, from the named plaintiffs (Pete Czosnyka, Peter Barash, Adam Vavrick, Dominick Maino, Steve Held, and James Suh) about Alderman Gardiner's use of social media. We agree that a standard protective order used by Magistrate Judge Finnegan and the U.S. District Court for the Northern District of Illinois (Form LR 26.2 Model Confidentiality Order), filed with and approved by the court is appropriate to our needs.

However, instead of responding to that email and confirming the agreement, Plaintiffs backtracked and responded that they were in fact not agreeing to limit the subpoena to solely the complaints submitted by the named Plaintiffs and stated a need for further discussion. The email did state that they would work with Alderman Gardiner's counsel to enter a protective order that would cover the use and disclosure of any documents OIG produced in response to their subpoena. OIG's counsel again called Plaintiffs' counsel. The discussion revealed that Plaintiffs believe they are entitled to the documents that they sought in the original subpoena, were fine with the dates of May 7,

2019, to May 25, 2022, as the dates that the subpoena should cover, and that if OIG disagrees, were fine with having the court decide.

## ARGUMENT

OIG asks that this Court quash Plaintiffs' subpoena in full. The subpoena presents an undue burden on this non-party. In the alternative, if the Court orders the documents to be presented to Plaintiffs, the OIG asks that the scope be limited and that documents be produced subject to an appropriate protective order.

### I. The Subpoena Should Be Quashed Because It Imposes an Undue Burden on OIG, a Non-Party

OIG is not a party to the complaint in this matter and must therefore be protected from the undue burden of having to produce documents in response to a subpoena seeking a significant amount of irrelevant information that relates only to previously dismissed claims and that would harm OIG in carrying out its core mission of investigating misconduct in City government.

As courts in this district have observed, "[w]hen making the determination of whether" a non-party like OIG "will be subjected to undue burden, courts consider a number of factors, including the person's status as a non-party, the relevance of the discovery sought, the subpoenaing party's need for the discovery, and the breadth of the request." *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 813 (N.D. Ill. 2015) (Cole, M.J.) (quashing Rule 45 subpoena); *accord Little v. J.B. Pritzker for Governor*, 2020 WL 1939358, at *2 (N.D. Ill. Apr. 22, 2020) (Cummings, M.J.) (similar; quashing Rule 45 subpoena).

Each of these factors weighs in favor of quashing this subpoena to OIG in full.

### a. OIG is Entitled to "Special Consideration" in Discovery as a Non-Party and a

**Previously Dismissed Party.**

Rule 45 of the Federal Rules of Civil Procedure states "on timely motion, the court for the district where compliance is required *must* quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A) (emphasis added). This mandatory language is in recognition of the "special consideration" afforded to non-parties in discovery. *Rossman v. EN Eng'g, LLC*, 467 F. Supp. 3d 586, 590 (N.D. Ill. 2020) (Cole, M.J.) (refusing to enforce Rule 45 subpoena). Courts have described non-party status as a "significant factor to be considered in determining whether the burden imposed by a subpoena is undue" and reflected that "the court should be particularly sensitive when weighing the probative value of the information sought against the burden of production on the non-party." *Little*, 2020 WL 1939358, at *2 (collecting cases). "Under the Federal Rules of Civil Procedure, the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs. Relevance alone is not outcome determinative." *Rossman*, 467 F. Supp. 3d at 590 (citing Fed. R. Civ. P. 45(d)(1) (citations omitted)).

As a non-party, OIG is entitled to the "special consideration" envisioned by the Rule's framers and repeatedly recognized by courts in this district. Indeed, these factors weigh evenly more heavily in OIG's favor here because the City—of which OIG is a subordinate part—was previously named as a party, but was dismissed following a successful motion under Rules 12(b)(1) and 12(b)(6). As such, the City has already been put through significant expense and burden in defending and achieving dismissal from this lawsuit—a factor that should be given weight in the Court's consideration of whether the City should be required to bear additional expense and burden. Plaintiffs' subpoena seeks

6

what amounts to party discovery from a non-party on dismissed claims. The "special weight" given to the interests of non-party OIG should apply even more strongly in this context.

### b. The Subpoena Seeks Documents That Are Irrelevant to the First Amendment Claim That Remains in This Lawsuit.

The subpoena seeks documents that are irrelevant to the claims that remain in this lawsuit. Many of the documents are relevant only to claims that have been dismissed by the Court (if they were ever relevant at all). This request seems little more than a vehicle to seek evidence to replead the City back into the case after it secured dismissal. Such documents are not proper subjects for any discovery under the Federal Rules of Civil Procedure, where discovery must be "confine[d] . . . to the claims and defenses asserted in the pleadings" and "parties . . . have no entitlement to discovery to develop new claims or defenses that are not identified in the pleadings." *Uppal*, 124 F. Supp. 3d at 814; *accord Sroga v. Preckwinkle*, 2016 WL 1043427, at *3 n.7 (N.D. Ill. Mar. 16, 2017) (Chang, J.) ("Discovery is limited to the claims that remain at issue after the motion to dismiss stage."). This principle applies even more strongly in Rule 45 discovery where courts are to be "particularly sensitive" when considering the "probative value of the information sought." *Little*, 2020 WL 1939358, at *2.

As described above, what remains in this lawsuit is a narrow issue: whether Alderman Gardiner's "unilateral ban of constituents and the content-based regulation of speech on his Facebook Page violate[s] the First Amendment." Gardiner MTD Order (Dkt. 39) at 2-3. And as described above, this Court previously held that Plaintiffs' complaints that the City (including OIG) failed to investigate and discipline Gardiner have been dismissed from this lawsuit. *See* City MTD Order (Dkt. 33) at 1-4.

However, Plaintiffs' subpoena, even as proposed to be "narrowed," seeks a large swath of documents that are, at best, relevant to only those dismissed claims. For instance, Plaintiffs' demand in their original subpoena for "all documents" related to Alderman Gardiner's "social media" goes far beyond what is relevant under the Complaint, which contains no allegations related to any social media besides Facebook. *See* Complaint ¶ 1 (Dkt. 1) ("In this case . . . Plaintiffs . . . challenge the constitutionality of the manner in which 45th Ward Alderman James Gardiner regulates speech on [his] *Facebook Page*.") (emphasis added). "All documents" about Alderman Gardiner's Facebook page, meanwhile, would sweep up documents OIG may have about Alderman Gardiner's Facebook activities that are wholly unrelated to whether he banned constituents from that page.[1] It would also cover documents that are relevant only to whether OIG investigated or recommended discipline against Alderman Gardiner for his Facebook activities—a claim dismissed from this lawsuit.

The subpoena's demand for "all documents" pertaining to the named plaintiffs is similarly relevant only to those dismissed claims: documents regarding OIG's handling of complaints about Gardiner (for Facebook blocking, as well as other things) are irrelevant to whether Alderman Gardiner's act of blocking the plaintiffs on Facebook violates the First Amendment.

Finally, Plaintiffs are explicitly seeking complaints from a non-party regarding Alderman Gardiner's social media use. Disclosure of confidential complaints to OIG would be profoundly injurious to its core mission of rooting out governmental misconduct,

---

[1] Moreover, as argued in greater detail below, the fact that OIG may possess documents reflecting that Gardiner blocked constituents from his Facebook would be duplicative of documents in possession of the Plaintiffs, Alderman Gardiner, and more appropriate non-parties, such as Facebook itself.

as described in more detail below. Despite the putative class action complaint they have filed, Plaintiffs are not entitled to such discovery, especially from a non-party because it is irrelevant. *See In re Williams Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (granting mandamus and vacating order compelling discovery on class member identities; "[T]he Supreme Court has determined that seeking discovery of the name of a class member (here an unknown person . . . ) is not relevant within the meaning of [Fed. R. Civ. P. 26]."). Even if what Plaintiffs seek was relevant, this information should be sought from the named parties after a specific demonstration of need. *See* Manual on Complex Litigation § 21.14 (4th ed. 2004) ("Discovery relevant to certification should generally be directed to the named parties. Discovery of unnamed members of a proposed class requires a demonstration of need."), *available at* https://www.uscourts.gov/sites/default/files/mcl4.pdf.

Because the documents Plaintiffs seek in their subpoena are irrelevant or relevant only to claims already dismissed by this Court, this factor weighs in favor of quashing Plaintiffs' subpoena in its entirety.

### c. Plaintiff's Need for this Irrelevant Discovery from OIG is Minimal

Plaintiffs have little need to seek this irrelevant discovery from OIG for another foundational reason: it is within the possession or control of the parties. "A non-party subpoena seeking information that is readily available from a party through discovery may be quashed as duplicative or cumulative." *Rossman*, 467 F. Supp. 3d at 590-91 (collecting cases quashing subpoenas on this ground). The application of this rule to the First Amendment claim that remains before the Court is straight-forward: Plaintiffs already have access to evidence of when they discovered they were blocked by Alderman Gardiner on

Facebook and the events that preceded it. Indeed, their 29-page Complaint contains extensive details—including exact dates—about plaintiffs being blocked from Alderman Gardiner's Facebook account and specific Facebook comments (including the text of those comments) that were deleted or hidden by Alderman Gardiner. *See, e.g.*, Complaint ¶¶ 22-29, 40-47, 53-58, 62-64, 69-73. Additionally, as the Complaint notes, Plaintiffs complained "over 20 times" to OIG about the Alderman's conduct and so, at least some of the documents OIG has in its possession, are simply what the Plaintiffs have already sent to OIG. *See* Complaint ¶¶ 36, 44, 48, 65, 74, 78.

Alderman Gardiner, meanwhile, has access to evidence—both documentary and testamentary—about when he blocked Plaintiffs on Facebook and what led to those decisions. Plaintiffs must seek that evidence from him through ordinary party discovery.

Finally, any technical or objective evidence regarding Alderman Gardiner's Facebook activities is more appropriately obtained from another third-party, such as Facebook or the Alderman's internet service provider. *See Sourgoutsis v. U.S. Capitol Police*, 323 F.R.D. 100, 107 (D.D.C. 2017) ("[T]he court must limit the extent of discovery that is . . . obtainable from another source that is more convenient, less burdensome, or less expensive."). Those other non-parties will also be in a position to provide that information with a business records affidavit, which would allow for its use in any eventual summary judgment or trial without a testifying custodian or other qualified witness—a significant efficiency for both the parties and the Court. *See* Fed. R. Evid. 803(6)(D).

In sum, because the discovery that Plaintiffs seek from OIG is obtainable through the normal party discovery process or from other non-parties much better situated to respond, this undue burden factor weighs in favor of quashing the subpoena in its entirety.

### d. The Subpoena's Demand for "all documents" with an Expansive Date Scope is Overbroad and Not Proportional to the Needs of This Litigation.

Yet another factor weighing in OIG's favor is the overbreadth of the subpoena. "It is fundamental that discovery requests that 'encompass an unlimited range of information' as plaintiffs' subpoena does in this case are overly broad" and courts regularly quash such subpoenas demanding "all documents" on topics. *Little*, 2020 WL 1939358, at *6 (collecting cases). The subpoena in this case, even as "narrowed" by Plaintiffs' June 16 email, does exactly what is prohibited.

The original subpoena sought "all documents" relating to Alderman Gardiner's use of social media and Facebook and "all documents" relating to the named Plaintiffs from May 7, 2019. Plaintiffs' proposal to narrow the subpoena continued to seek "all documents" on a broad range of topics relating to Alderman Gardiner's use of social media and the plaintiffs, but removed the date limitation. Either request is sweepingly overbroad and lacks "proportion[] to the needs of a case" about a limited First Amendment issue. Fed. R. Civ. P. 26(b)(1). As described above in OIG's argument concerning relevance, this broad language sweeps up large amounts of data regarding topics with no connection to the live claims in the Complaint.

At bottom, the overbreadth of this subpoena is another factor weighing for a finding that this subpoena subjects OIG to an undue burden and must therefore be quashed.

### e. This Subpoena Seeks Documents That Would Burden OIG's Core Mission to Detect and Prevent Government Misconduct and Chill the Submission of Complaints About Misconduct to OIG.

The core of OIG's mission is investigating governmental misconduct and holding responsible those who commit it. *See* MCC § 2-56-030(b) (describing the Inspector General's power and duty to "investigate the performance of governmental officers [and]

11

employees . . . in order to detect and prevent misconduct"). Critical to that mission are the provisions of OIG's enabling ordinance which require not only its final investigative reports, but also its "investigatory files and reports," remain confidential with a few limited exceptions that do not apply to Plaintiffs in this action. *See* MCC §§ 2-56-060, -070, -110. The confidentiality provisions in OIG's enabling ordinance permit those impacted by government misconduct—even and especially those who fear retaliation and reprisals for making complaints about those who occupy positions of power—to safely provide the information OIG needs to meet its mandate. Additionally, the confidentiality ordinance is important to foster true working partnerships between people and entities, such as federal, state, and local law enforcement, who may be able to assist the OIG in its mission. Individual informants and law enforcement agencies will be more likely to work with the OIG – and improve the effectiveness of the OIG – if they can be guaranteed confidentiality.

OIG's ability to protect the confidentiality of complainants and witnesses who do come forward to report or describe misconduct is thus a significant tool in OIG's toolbox, especially as Government employees are often reticent to report misconduct by their fellow employees for fear of retaliation. If the OIG could no longer offer this protection, and if not only its investigatory techniques but also the very names of the individuals who seek its help were revealed, there would be significant harm to its ability to carry out its mission. To paraphrase the Supreme Court in a related context: making a promise of confidentiality that is contingent on a judge's later balance of the confidentiality interest versus the evidentiary need for disclosure would eviscerate the confidentiality promise. See *Jaffee v. Redmond*, 518 U.S. 1, 18 (1996).

The Seventh Circuit has recognized the significant burden that confidentiality

breaches as a result of Rule 45 subpoenas can place on non-parties. In *Northwestern Memorial Hospital. v. Ashcroft*, the court quashed a subpoena after balancing the burden of compliance with the benefit of production of the material sought. 362 F.3d 923, 927-29 (7th Cir. 2004). The Seventh Circuit held that a subpoena asking for the medical records of Northwestern Memorial Hospital's abortion patients imposed an undue burden on the hospital and should be quashed. *Id.* at 927. The records provided limited probative value, and when weighed against patients' fear of identification, which would harm the hospital, was insufficient to sustain the subpoena. *Id.* "If Northwestern Memorial Hospital cannot shield the medical records of its abortion patients from disclosure in judicial proceedings, moreover, the hospital will lose the confidence of its patients, and persons with sensitive medical conditions may be inclined to turn elsewhere for medical treatment." *Id.* at 929.

The concerns here are very similar. If the court requires that the names of complainants and investigative files be turned over, people may lose confidence in OIG; if people do not complain to the OIG about actions of the government because they are afraid they may be outed for doing so, then the OIG's role in protecting the public is lessened. If all that were required to find out the names of complainants was to file a civil suit, it could open the floodgates to the public outing of those who seek OIG's help and protection in furtherance of its mission.

 **f. This Subpoena Would Result in a Burdensome Review for the Application of at Least Three Different Privileges.**

In the event OIG agreed to or was ordered to produce any documents in response to this subpoena, OIG would then need to review each responsive document for at least three privileges potentially applicable its work: deliberative process, investigatory, and attorney-client privilege. This Court must consider whether OIG should be required to

13

undertake these reviews for documents that have no probative value to the live claims in this case and are more properly sought from parties or non-parties who will not have the same privilege claims. *See Rossman*, 467 F. Supp. 3d at 590 (Rule 45 subpoenas must "avoid imposing undue burden or expense").

OIG's investigative work typically implicates at least three separate privileges. The federal common law deliberative process privilege protects communications that are part of a government agency's decision-making process in order to encourage the frank discussion of legal and policy matters within an agency. *Rodriguez v. City of Chi.*, 329 F.R.D. 182, 186 (N.D. Ill. 2019). The communications should be both pre-decisional and deliberative. *Id*. The privilege extends to individualized decision-making, such as summary reports and discussions that are part of the process of formulating recommendations to sustain discipline with respect to in OIG's internal investigations. *Id*.

Other OIG documents sought may be shielded by the investigatory privilege. OIG conducts investigations into both administrative violations, where the ultimate sanction is typically termination from city employment, as well as criminal violations. *See* MCC §§ 2-56-030(b) (administrative investigations), -030(j) (criminal investigations). The investigatory privilege protects both types of investigatory files from civil discovery. *Rodriguez*, 329 F.R.D. at 189. The purpose of the privilege is to protect sources, witnesses, and investigators and to prevent interference with on-going investigations. *Id*.

Finally, since a great deal of OIG's work is informed by legal requirements and interpretations of relevant laws, a number of OIG documents sought by Plaintiffs may be covered by attorney-client privilege or attorney work product concerns.

To date, OIG has not undertaken the careful document-by-document privilege

14

review to assess whether and how many privileges apply to each document the Plaintiffs seek. *See RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013) (describing the requirements of a privilege review). However, because of the potentially applicability of these three privileges to the documents implicated by the subpoena, OIG would need to conduct such a burdensome review prior to producing any documents. This is another factor that should weigh in OIG's favor in quashing the subpoena in its entirety.

## CONCLUSION

In summary, the subpoena should be quashed in its entirety because the City, a non-party, should not suffer the undue burden of answering a subpoena that seeks documents that are irrelevant to the narrow First Amendment claim in this lawsuit, that can best be obtained from the parties or more appropriate non-parties, and puts the OIG's core mission of holding City government accountable at risk by revealing the names of confidential informants, as well as OIG's investigative methods and progress. In the alternative, should the court require that the documents sought be turned over, they should be turned over subject to a protective order and OIG's ability to remove any personal identifying information of any informants or complainants.

          Respectfully submitted,

          CELIA MEZA
          Corporation Counsel for the City of Chicago

Dated: July 15, 2022      By:   */s/ Rey A. Phillips Santos*
                                           Rey A. Phillips Santos
                                           Assistant Corporation Counsel

Rey A. Phillips Santos (he / él)
Assistant Corporation Counsel Senior
City of Chicago Department of Law
121 N. LaSalle St., Suite 600
Chicago, IL 60602

312-744-7636
rey.phillips_santos@cityofchicago.org