IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETE CZOSNYKA, et al., | |
| Plaintiffs, | 21-cv-3240 |
| v. | Hon. Sharon Johnson Coleman |
| JAMES GARDINER, et al., | |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO THE CITY OF CHICAGO OFFICE
OF INSPECTOR GENERAL'S MOTION TO QUASH**

Plaintiffs, through counsel, respond in opposition to the City of Chicago Office of Inspector General's Motion to Quash as follows:

**RELEVANT BACKGROUND**

**I. Nature of the Case**

In this case, Plaintiffs claim that Defendant James Gardiner, who is the alderman of Chicago's 45th Ward, violated and continues to violate their rights under the First Amendment by engaging in content-based regulation of speech on the Facebook Page that he uses to communicate with constituents about government business. The Facebook Page (the "Page") can be found at https://www.facebook.com/AldermanGardiner. In particular, Plaintiffs claim that Alderman Gardiner has violated the First Amendment by blocking particular constituents from being able to interact with the Page, deleting comments from the Page that are critical of him or his policies, and hiding critical comments made by Plaintiffs from the view of others who visit the Page.

**II. Plaintiffs' Subpoenas and the Information Sought**

On May 26, 2022, Plaintiffs served subpoenas via U.S. Mail on two City of Chicago agencies that have responsibility for receiving and/or investigating complaints against public officials such as Alderman Gardiner—(1) the Board of Ethics ("BOE") and (2) the Office of the Inspector General ("OIG").

The named Plaintiffs in this case made numerous complaints to both of these entities regarding Alderman Gardiner's misuse of his Facebook Page prior to bringing this lawsuit. *See, e.g.*, Complaint, ECF 1, at ¶¶2, 6, 30, 36, 48, 65, 74, 78. In particular, Plaintiffs requested that OIG and/or BOE investigate Alderman Gardiner's use of his Facebook Page and that Alderman Gardiner be admonished to respect constituents' First Amendment rights. Based on Plaintiffs' communications with these City agencies, Plaintiffs believe that these entities are likely in possession of information and documents that are discoverable and relevant to this litigation, including but not limited to the following:

- Statements of parties, including Defendant Ald. Gardiner, regarding his regulation of speech on his Facebook Page, his reasoning and rationales for deletion of particular content on the Page and/or his blocking particular users, and his policies regarding what content is permitted on the Page;

- Particular examples of content that Defendant Ald. Gardiner deleted or hid from the Facebook Page and confirmation that Defendant Ald. Gardiner was the relevant decisionmaker regarding regulation of posts to the Facebook Page;

- The identities of and/or statements of relevant witnesses, including members of Defendant Ald. Gardiner's staff who were aware of and/or participated in regulation of content on the Facebook Page, and other constituents who have had similar experiences with Alderman Gardiner's regulation of content on his Facebook Page; and

- Documents reflecting Alderman Gardiner's interactions with the named Plaintiffs regarding other political and community development issues which reflect on Alderman Gardiner's motive and intent to engage in content-based and speaker-based regulation of the named Plaintiffs' speech.

The subpoenas to the BOE and OIG were essentially identical. Both sought the following information:

> For the time period of May 7, 2019, to the present, all documents (including, but not limited to, complaints, audits, reviews, investigations, interviews, correspondence, reports, and findings) that reference or pertain to the following:
>
> - 45th Ward Alderman James Gardiner's Facebook Page;
> - 45th Ward Alderman James Gardiner's use of social media;
> - Peter Czosnyka;
> - Peter Barash;
> - Dominick Maino;
> - Steven Held;
> - Adam Vavrick; or
> - James Suh.

*See* ECF 54-1 at 3 (Plaintiffs' subpoena and rider).

The subpoenas requested compliance by June 21, 2022. Both OIG and BOE requested an extension of time to comply, which Plaintiffs agreed to, and both deadlines were extended to July 14, 2022. *See* ECF 54 at 2-3.

After making a request for a short additional extension of time, the BOE complied in full with Plaintiffs' subpoena on July 18, 2022, serving 333 pages of responsive documents and a privilege log identifying 32 additional responsive documents that were withheld on the basis of claims of attorney-client, work product, and deliberative-process privileges.

The documents produced by BOE confirm Plaintiffs' belief that OIG in particular is very likely in possession of relevant and discoverable documents. Namely, in

3

correspondence with the named Plaintiffs regarding their complaints about Ald. Gardiner's use and regulation of the Facebook Page, the Board of Ethics stated that OIG has responsibility for conducting "factual investigations" into alleged ethics violations. *See*, Ex. 3, BOE Correspondence with Plaintiff Czosnyka. In another email, the BOE confirmed that the OIG would be tasked with investigating "why someone has been blocked" from a government official's Facebook Page and whether there were "valid reasons" for blocking someone. Ex. 4, Correspondence with Czosnyka.

### III. Plaintiffs' Good Faith Effort to Confer with OIG and OIG's Failure to Raise Any Valid Objection in a Timely Manner

Plaintiffs' subpoena had a response date of June 21, 2022. On June 14, 2022, counsel for OIG asked counsel for Plaintiffs for an extension of time to respond to July 14, 2022, and for a meeting to confer regarding whether the subpoena could be narrowed.

Plaintiffs' counsel agreed to the extension of time, and on June 16, 2022, counsel for Plaintiffs met via a video conference with counsel for the OIG. On this call, OIG's attorneys indicated that the OIG believed the subpoena was overly broad in two respects: (1) it would encompass documents that reference the named Plaintiffs but are unrelated to their interactions with Alderman Gardiner and/or his Facebook Page; and (2) it would encompass all "social media" use by Defendant Gardiner rather than simply the Facebook Page at issue in the Complaint.

Immediately following that call, on June 16, 2022, counsel for Plaintiffs sent counsel for OIG an email agreeing to narrow the scope of the subpoena. In

particular, counsel agreed to eliminate from their subpoena any documents that pertain to the named Plaintiffs that didn't have to do with Alderman Gardiner and/or the Facebook Page. *See*, Ex. 1, June 16, 2022, email. Counsel wrote as follows:

> Dear Rey,
>
> Thank you for meeting with me earlier today. As discussed, we are agreeable to narrowing our subpoena as follows:
>
> all documents (including, but not limited to, complaints, audits, reviews, investigations, interviews, correspondence, reports, and findings) that reference or pertain to the following:
>
> - 45th Ward Alderman James Gardiner's Facebook Page;
> - 45th Ward Alderman James Gardiner and any of the named Plaintiffs in our case (Pete Czosnyka, Peter Barash, Dominick Maino, Steve Held, Adam Vavrick, or James Suh).
>
> I hope that this is agreeable in that it will eliminate from the request any documents that pertain to our clients but are unrelated to their interactions with Alderman Gardiner and/or his Facebook page.

Ex. 1 at 1.

Counsel for OIG acknowledged receipt of the email and stated that that OIG attorneys would discuss the matter internally and respond. *Id.* Counsel for OIG next wrote to Plaintiffs' counsel on July 8, 2022. In this email, counsel for OIG indicated that the narrowed scope was agreeable and that OIG would comply by the agreed-upon deadline of July 15, 2022. Counsel wrote as follows:

> Thank you for being agreeable to narrowing the subpoena. I will endeavor to respond to the narrowed subpoena next week (and please understand, that I am very motivated to do this as I will be on vacation from July 15 to August 1).

Ex. 1 at 2-3.

5

Based on this correspondence, Plaintiffs' counsel had every reason to believe that OIG intended to comply with the subpoena with the narrowed terms set forth in Plaintiffs' counsel's June 16th email by the agreed-upon deadline of July 14, 2022.

Counsel next heard from counsel for OIG on July 14, 2022, which was the deadline for OIG's response to the narrowed subpoena. But instead of compliance with the subpoena as promised, counsel raised a host of heretofore unstated objections about the breadth of the subpoena for the first time. *Id*. at 4. Plaintiffs' counsel responded that the OIG's new objection "comes as a surprise to me after our phone call and the follow up email I sent regarding our conversation several weeks ago. We anticipated your response to the subpoena today." *Id*. at 5.

The parties had another phone call on July 15, 2022, regarding the OIG's failure to timely comply with the subpoena. During that call, counsel for Plaintiffs did not object to OIG's request for a protective order to govern the use and disclosure of the subpoenaed documents. Ex. 2 at 2. Counsel for Plaintiffs did not agree to further limit the scope of their subpoena and indicated that they would be filing a motion to compel if OIG failed to comply with the subpoena as discussed. After that call, counsel for OIG sent an email claiming that Plaintiffs had agreed to an extension of time to August 5 and to limit their subpoena solely to the "complaints" filed by the named Plaintiffs. Neither an extension of time nor further limitations on the scope of Plaintiffs' subpoena were discussed or agreed to. Ex. 2 at 1. Plaintiffs' counsel pushed back on this misrepresentation, and OIG filed this motion to quash the next

6

day on July 15, 2022—*i.e.*, the day after OIG had promised to produce responsive documents in compliance with the subpoena. *See* Ex. 2 at 2.

## ARGUMENT

The Office of Inspector General's motion to quash should be denied for three main reasons. First, OIG failed to timely assert objections to Plaintiffs' subpoena and failed to file a timely motion to quash, which constitutes a waiver of these objections. Second, the objections based on burden and relevance are invalid. Third, any concern the OIG has regarding the use or disclosure of responsive documents is not a valid basis for it to completely withhold a response to the subpoena when such concerns can be properly addressed by entry of a protective order.

### I. OIG Waived Its Current Objections by Failing to Assert Them in a Timely Manner and/or File a Timely Motion to Quash

OIG filed this motion to quash the day after its response deadline. *See* ECF 54. Because the motion was not filed until after the deadline for compliance had already lapsed, this motion should be denied as untimely.

Under Fed. R. Civ. P. 45, "[a] subpoena may command: (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A); *see also* Fed. R. Civ. P. 45(a)(1)(C) ("A command to produce documents, electronically stored information, or tangible things or to permit the inspection of premises ... may be set out in a separate subpoena."). Rule 45(d)(2)(B) requires that "[a] person commanded to produce documents … may serve on the party or attorney designated in the subpoena a

7

written objection" and that "[t]he objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B).

Rule 45 permits the court to quash a subpoena on a "timely" motion but does not define "timely." Courts within the Seventh Circuit have required that in order to be "timely" a motion to quash must be filed either within 14 days of service of the subpoena or before the deadline for compliance with the subpoena. *Flagstar Bank, FSB v. Freestar Bank, N.A.*, No. 09 C 1941, 2009 U.S. Dist. LEXIS 76842, at *10 (N.D. Ill. Aug. 25, 2009) ("a motion to quash must be made at or before the time of compliance."); *Woodard v. Victory Records, Inc.*, 2014 U.S. Dist. LEXIS 69512, 2014 WL 2118799 at *4 (N.D. Ill. May 21, 2014) ("a motion to quash is timely when made at or before the time of compliance."); *Sun Enters. v. May*, No. 13-32459 HCD, 2014 Bankr. LEXIS 3534, at *9 (Bankr. N.D. Ind. July 9, 2014) (same); *Cf. Ansur Am. Ins. Co. v. Borland*, No. 3:21-CV-00059-SMY-MAB, 2022 U.S. Dist. LEXIS 91557, at *9 (S.D. Ill. May 20, 2022) (noting that "some courts have determined a court has discretion to decide whether a motion to quash should be considered if the parties' conduct indicates the time for compliance has not yet lapsed.")

This motion to quash was not filed until after the time for compliance had passed. Specifically, Plaintiffs' counsel agreed to grant OIG an extension of time until July 14, 2022, to respond to the subpoena. *See* OIG Mot., ECF 54, at 2-3 (agreeing that the response deadline was extended to July 14, 2022). On the day that it had agreed to comply with the subpoena, OIG failed to do so, asserting a raft

8

of new, previously unstated objections. Instead, a day after its response deadline, OIG filed this motion to quash the *See* ECF 54. Because the motion was not filed until after the deadline for compliance had already lapsed, this motion should be denied as untimely.

## II. OIG's Claims of Undue Burden and Irrelevance Lack Merit

Even if this Court decides to entertain OIG's untimely motion to quash, the motion should be denied because the objections OIG asserts lack merit. OIG's principal objections to Plaintiffs' subpoena are that it is unduly burdensome and seeks irrelevant documents. *See* OIG Mot. at 5-10. Plaintiff addresses each objection in turn and shows that neither is meritorious.

### A. The Subpoena Seeks Discoverable and Relevant Documents

OIG asserts that Plaintiffs' subpoena "seeks documents that are irrelevant to the claims that remain in this lawsuit." *Id.* at 7. OIG seeks to characterize Plaintiffs' subpoena as a fishing expedition for information that bears upon the dismissed *Monell* claim against the City rather than the First Amendment claim against Defendant Ald. Gardiner. *Id.* ("Plaintiffs' subpoena, even as proposed to be 'narrowed,' seeks a large swath of documents that are, at best, relevant to only those dismissed claims.")

This charge is meritless. As explained in the background above, the records subpoenaed from OIG are highly relevant to Plaintiffs' First Amendment claims. The documents produced by the BOE strongly suggest that Plaintiffs have a well-founded reason to believe that OIG may have obtained statements from Defendant

9

Ald. Gardiner and members of his staff regarding the Facebook Page; their regulation of content on the Page; their reasoning and rationales for deletion of content on the Page and/or blocking particular users; and their policies regarding what content is permitted on the Page. OIG files may also contain the statements of other witnesses who have brought forth similar complaints. In addition, OIG's investigations into other complaints made by the named Plaintiffs against Defendant Gardiner will reflect on Defendant Gardiner's motive and intent when regulating their interactions with the Facebook Page.

In the analogous context of plaintiffs' seeking production of files reflecting complaints of misconduct against police officers, courts in this district have overruled relevance objections and held that such documents are discoverable. For example, in *Lepianka v. Vill. of Franklin Park,* No. 03 C 2991, 2004 U.S. Dist. LEXIS 5013, at *2-3 (N.D. Ill. Mar. 25, 2004), the court granted a motion to compel investigatory files reflecting complaints against defendant police officers, writing as follows:

> Defendant Village first argues that in the absence of a *Monell* claim against the Village, prior complaints against the individual officers are not relevant …. Plaintiffs correctly argue that disciplinary records containing any similar factual allegations may be relevant and admissible under Rule 404(b) to prove motive, intent, and/or modus operandi. *See Okai v. Verfuth*, 275 F.3d 606 (7th Cir. 2001); *Treece v. Hochstetler*, 213 F.3d 360, 363 (7th Cir. 2000); *Wilson v. City of Chicago*, 6 F.3d 1233 (7th Cir. 1993); *see also Edwards v. Thomas*, 31 F. Supp.2d 1069 (N.D. Ill. Jan.7, 1999). Plaintiffs additionally argue that any prior allegation which would impeach the credibility of any of the defendant officers is relevant to show bias, interest or motiv[e] to initiate false charges, falsely testify in this case, and to have falsely testified in the underlying criminal case. Defendant Village's objection to the production of the defendant officers' disciplinary records on the basis of Rule 404(b) is overruled.

*See also Grayson v. The City of Aurora, et al.*, No. 13 C 1705 (N.D.Ill. Dec. 19, 2013) (ordering production of complaint files against defendant officers); *Doe v. City of Chi.*, No. 18-cv-03054, 2019 U.S. Dist. LEXIS 84268, at *1-2 (N.D. Ill. May 20, 2019) (granting motion to compel production of documents concerning a non-party's complaint of misconduct, including the "complaint, the OIG Report, witness statements, documents detailing the allegations, and documents that reflect the outcome of the investigation into the student's allegation.")

Here, Plaintiffs' subpoena is much narrower than the production compelled in the cases cited above. This is so in two respects. First, the subpoena is limited in scope. That is, Plaintiffs seek only the files pertaining to (1) the Facebook Page that is the subject of this lawsuit; and (2) complaints involving Defendant Ald. Gardiner and the named Plaintiffs. In *Lepianka* and *Grayson*, in contrast, the plaintiffs compelled government entities to produce not just the investigative files regarding their own complaints of misconduct, but also all other complaints filed by other citizens against the same defendant-officers, even if they did not arise from the same subject matter. Second, the subpoena is limited in time to only the time period of May 7, 2019, to the present. In *Lepianka*, the court rejected the city's efforts to limit the time period for which documents were to be produced. *Lepianka*, 2004 U.S. Dist. LEXIS 5013, at *4 ("the Court declines to limit discovery of prior complaints and disciplinary action to only claims of excessive force and false arrest within the last five years. Plaintiffs are entitled to discover defendant officers' disciplinary records, and the trial judge will determine before or at the trial whether 'other acts'

11

are similar enough and close enough in time to be relevant to the matter in issue and thus, admissible.").

Thus, Plaintiffs' request is appropriately tailored and OIG's "relevance" objections should be overruled.

## B. The OIG's Claims of Undue Burden Lack Merit

The OIG also claims that the subpoena should be quashed because it would impose "undue burden" on OIG. OIG Mot. at 5-6, 13. This objection also should be overruled.

It is well established that a subpoenaed party "has the burden of demonstrating an undue burden." *In re Subpoena*, No. 16-cv-4619, 2016 U.S. Dist. LEXIS 72483, at *11 (N.D. Ill. June 3, 2016) (overruling "burden" objections to subpoena containing "24 separately numbered requests … for documents related to 70 or more entities"); *see also*, *Pacific Century Int'l, Ltd. v. Does 1-37*, 282 F.R.D. 189 (N.D. Ill. 2012) ("The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant.") (citation omitted). A court can "modify or exclude portions of a subpoena only if the [respondent] carries the difficult burden of showing that the demands are unduly burdensome or unreasonably broad." *EEOC v. Konica Minolta Business Solutions U.S.A., Inc.*, 639 F.3d 366, 371 (7th Cir. 2011) (citations omitted). Of course, "any subpoena places a burden on the person to whom it is directed. Time must be taken from normal activities and resources must be committed to gathering the information necessary to comply." *FTC v. Shaffner*, 626 F.2d 32, 38 (7th Cir. 1980). "When determining if a burden is undue," however,

12

Case: 1:21-cv-03240 Document #: 55 Filed: 08/01/22 Page 13 of 16 PageID #:267

"the court must ask whether the burden of compliance with [the subpoena] would exceed the benefit of production of the material sought by it." *Northwestern Mem'l Hosp. v. Ashcroft,* 362 F.3d 923, 927 (7th Cir. 2004). "While non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue, non-parties are not exempt from the basic obligation of all citizens to provide evidence of which they are capable upon appropriate request." *PsyBio Therapeutics, Inc. v. Corbin*, No. 20 C 3340, 2021 U.S. Dist. LEXIS 186820, at *6-7 (N.D. Ill. Sep. 29, 2021) (internal citation and alteration omitted).

Here, OIG has failed to articulate how production of the subpoenaed materials would impose an undue burden on its resources or staff. As described above, the subpoena is narrowly focused to a three-year time span and seeks only materials that are directly relevant to Plaintiffs and the claims they have asserted in this case. OIG's vague claims of "undue burden" without any further explanation or elaboration cannot carry its burden to quash Plaintiffs' subpoena in its entirety.

In addition, OIG also claims that the subpoena is unduly burdensome because requested documents can be obtained through party discovery issued to Defendant Ald. Gardiner. Mot. at 10. But this simply isn't true. Defendant Ald. Gardiner would not be privy to whom OIG interviewed, what statements the OIG obtained from witnesses, what information OIG gathered, and what other complaints it has received regarding Ald. Gardiner's misuse of his Facebook Page. OIG is the sole entity from whom these documents can be obtained.

13

Finally, OIG's claims of undue burden are further brought into doubt by the fact that its sister agency, the BOE, had no problem responding to an almost identical subpoena in a timely manner, including review of the documents produced for matters that are subject to privileges such as attorney work product, attorney-client communications, or deliberative process.

For all of these reasons, OIG has an obligation to comply with the subpoena and provide the discoverable information in its possession and its vague claims of "undue burden" should be rejected.

### III. A Protective Order Is the Proper Way to Address Concerns that Responsive Documents May Reveal Confidential Information or Compromise OIG's Investigative Functions

Finally, OIG argues that compliance with the subpoena would compromise OIG's investigative functions by revealing the identities of witnesses, thereby potentially "chilling" others from coming forward with complaints of government misconduct. OIG Mot. at 12. There are two reasons this argument fails.

First, with regard to documents in the OIG's possession that contain the statements of the parties to this case, the objection lacks any legitimate basis. Plaintiffs, the proponents of the subpoena, are not trying to keep their identities secret from disclosure. Likewise, Defendant Ald. Gardiner did not object to issuance of this subpoena. *See* ECF 48, June 1, 2022, Minute Entry ("Defendant reports that it did not object to Plaintiffs' subpoenas."). Therefore, any objection based on witnesses' desire for confidentiality should be overruled to the extent that OIG is in possession of statements by the parties to this case.

14

Second, with regard to non-parties, courts in this circuit have regularly rejected broad claims that discoverable materials can be withheld based on a government entity's wish to keep the identities of witnesses who have made complaints of government misconduct private. Rather, courts have held that a more appropriate balance is struck by entry of a protective order that would limit the use and disclosure of investigatory information. *See, e.g., Lepianka v. Vill. of Franklin Park*, No. 03 C 2991, 2004 U.S. Dist. LEXIS 5013, at *5 (N.D. Ill. Mar. 25, 2004) (ordering production of complaint files and finding that "good cause exists to enter a protective order limiting the public disclosure of the identity of complainants and witnesses."); *Santiago v. City of Chi.*, No. 09 C 3137, 2010 U.S. Dist. LEXIS 29198, at *11-12 (N.D. Ill. Mar. 26, 2010) ("The City's interest in ensuring that these active CR files be protected from disclosure … can be accommodated by an 'Attorneys' Eyes Only' protective order under which only counsel of record in this case may review the open CR files and use them only for purposes of this litigation. … An attorney's eyes only protective order will allow Santiago's counsel to discover potentially relevant information and at the same time, shield witness statements from disclosure to the accused officers and other witnesses who have not yet been interviewed as well as protect the privacy interests of individuals involved in the investigation and the confidentiality of sources and witnesses.").

Here, Plaintiffs have already informed counsel for the OIG that they will agree to entry of a protective order to appropriately govern the use and disclosure of the subpoenaed records. *See* Ex. 2 at 2. Such an order would appropriately balance

15

Plaintiffs' interest in obtaining discovery with the OIG's interests in the confidentiality of its investigations.

## CONCLUSION

For the reasons set forth above, Plaintiffs' respectfully request that this Court deny Respondent Office of the Inspector General's motion to quash.

Respectfully submitted,

/s/ Adele D. Nicholas
/s/ Mark G. Weinberg
*Counsel for Plaintiffs*

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869
adele@civilrightschicago.com

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913
mweinberg@sbcglobal.net