**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PETE CZOSNYKA, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 21-CV-3240 |
| v. ) | |
| ) | |
| ) | Hon. Sharon Johnson Coleman |
| JAMES GARDINER, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**REPLY IN SUPPORT OF THE CITY OF CHICAGO
OFFICE OF THE INSPECTOR GENERAL'S MOTION TO
QUASH SUBPOENA OF NON-PARTY RECORDS**

Now comes non-party, the City of Chicago Office of Inspector General ("OIG"), by and through its undersigned attorneys, and for its reply in support of The City of Chicago Office of the Inspector General's Motion to Quash Subpoena of Non-Party Records ("Motion to Quash") (Dkt. 54), states as follows:

**Introduction**

First, Plaintiffs' Response to the City of Chicago Office of Inspector General's Motion to Quash ("Plaintiffs' Response") (Dkt. 55) claims that the OIG's motion is untimely. It is not. As set forth more fully below, Plaintiffs' argument pays little heed to the Court's discretion to determine whether a motion to quash is untimely and Plaintiffs ignore that the course of conduct between Plaintiffs and counsel for the OIG demonstrates that the time for the OIG to comply with Plaintiffs' subpoena had not lapsed at the time the OIG filed its Motion to Quash. Regardless, Plaintiffs' Response offers no compelling argument that materials in the OIG's possession or control that pertain to Plaintiffs' non-Facebook related complaints about Alderman Gardiner and

1

complaints by non-parties regarding the Alderman's Facebook page are relevant or discoverable.[1] Plaintiffs offer no citation to authority or record evidence, beyond vague and conclusory assertions, that these materials are discoverable or relevant to their single claim that Alderman Gardiner unconstitutionally barred *Plaintiffs* from his Facebook page. Moreover, Plaintiffs' non-Facebook related complaints about Alderman Gardiner do not qualify as Rule 404(b) evidence because they cannot relate to Plaintiffs' theory that they were unconstitutionally barred from speaking on the Alderman's Facebook page. And, Plaintiffs do not explain why non-party complaints about Alderman Gardnier's Facebook page are necessary to prove motive, knowledge, intent, plan, or *modus operandi* despite the OIG's production of 571 pages of materials related to 21 separate complaints by Plaintiffs about the Alderman's use and regulation of the Facebook page. The OIG, a non-party respondent, is not required to produce (and possibly testify) about irrelevant information. And, even if these materials have some minimal relevance to Plaintiffs' claim, the burden on the OIG to produce these materials outweighs their probative value. As such, Plaintiffs' subpoena as it pertains to Plaintiffs' non-Facebook related complaints about Alderman Gardiner and complaints by non-parties regarding the Alderman's Facebook page should be quashed.

I. **The OIG's Motion to Quash is Timely**

Rule 45 does not impose a specific time limit on filing motions to modify or quash subpoenas. *NRDC, Inc. v. Ill. Power Res., LLC*, No. 13-cv-1181, 2015 U.S. Dist. LEXIS 201334, at *9 (C.D. Ill. May 12, 2015) (fourteen-day limit for serving written objections to subpoenas should not automatically apply to motions to modify or quash subpoenas because the authors of Rule 45 chose not to impose such a specific time limit on filing such motions.) Rather, the Rule gives this Court discretion to determine whether the OIG's motion is timely under the

---

[1] The OIG has produced the requested closed files that pertain to Plaintiffs' complaints regarding Alderman Gardiner's Facebook page.

circumstances of this case. *See NRDC, Inc.*, U.S. Dist. LEXIS 201334, at *9 ("…the omission of a specific time limit on filing such motions indicates that the Rule gives the Court discretion to determine whether the motion [to quash] is timely under the circumstances of the case."); *Woodard v. Victory Records, Inc.*, 2014 U.S. Dist. LEXIS 69512, 2014 WL 2118799, at *4 (N.D. Ill. May 21, 2014) (challenge to subpoena was not untimely even though defendants never extended respondent's time to file a motion to quash because conduct between the parties indicated that the time for compliance had not yet lapsed.); *see also Ace Hardware Corp. v. Celebration Ace Hardware, LLC*, 2009 U.S. Dist. LEXIS 94721, 2009 WL 3242561, at *2 (D. Del. Oct. 8, 2009) (exercising discretion to consider the merits of a motion to quash even though it was not filed until over a month after compliance was due.) Rule 37 requires parties to meet and confer to attempt to resolve discovery disputes without court action. (*See* Fed. R. Civ. P. 37(a)(1)). And, if Rule 37 negotiations are ongoing at the time respondent's compliance with a subpoena is due, a subsequently filed motion to quash is not untimely. *See NRDC, Inc.*, U.S. Dist. LEXIS 201334, at *9 (finding motion to quash timely when Rule 37 negotiations regarding subpoena were ongoing at time of compliance); *Woodard,* 2014 U.S. Dist. LEXIS 69512 at *13-14 (motion to quash filed after date for compliance timely in light of ongoing negotiations over subpoena compliance.)

      Plaintiffs' Response ignores that the Rule 37 negotiations between Plaintiffs' counsel and former counsel[2] for the OIG demonstrate that the time for the OIG's compliance with Plaintiffs' subpoena had not yet lapsed when the OIG filed its Motion to Quash. Specifically, Plaintiffs' counsel and former counsel for the OIG were negotiating the scope of Plaintiffs' subpoena through July 15, 2022, when the OIG filed its Motion to Quash. For example, on July 14, 2022 – the date Plaintiffs' claim in their Response the OIG was to comply with Plaintiff's subpoena – former

---

[2] Undersigned counsel were retained after Plaintiffs' filed their Response to the OIG's motion to quash.

3

counsel for the OIG emailed Plaintiffs and informed them that it is objecting to the scope of Plaintiffs' subpoena and asked if Plaintiffs will narrow the scope of their subpoena. (*See* Pls' Exhibit 1, July 14, 2022, 1:24 p.m. email from Rey Phillips-Santos to Adele Nicholas, re attached as Exhibit A). Plaintiffs, in response, did not reject the OIG's request to narrow the scope of the subpoena, they did not assert that responsive documents were due that day, they did not assert that the time for compliance had passed or was expiring that day, and they did not suggest that the OIG had waived any objection to their subpoena's scope. Instead, Plaintiffs' response was, "…we anticipated your response today. We will discuss this internally and respond as soon as possible." (*See* Exhibit A, July 14, 2022, 2:12 p.m. email from A. Nicholas to R. Philips-Santos, ).[3] On July 15, 2022, Plaintiffs emailed former counsel for the OIG to clarify the scope of their subpoena and asked for "further discussions regarding OIG's compliance with the subpoena." (*See* Pl's Exhibit 2, July 15, 2022, 11:28 a.m. email from A. Nicholas to R. Phillips-Santos, reattached as Exhibit B). This correspondence constitutes Plaintiffs' concession that the time to comply with Plaintiffs' subpoena had not lapsed by July 15, 2022. *Woodard v. Victory Records, Inc.*, No. 14 CV 1887, 2014 U.S. Dist. LEXIS 69512 (N.D. Ill. May 21, 2014) is instructive on this point.

In *Woodard*, defendants contended that the respondent's decision to wait until January 21, 2014, to challenge the subpoena was untimely because defendants never extended respondent's time to file a motion to quash. *Woodard,* 2014 U.S. Dist. LEXIS 69512, at *13-14. However, the court noted that the respondent continued to communicate with defendant about the subpoena response, despite failing to respond to the subpoena by the response date. *Id.* And, defendants did not move to compel the documents, insist that the documents had to be produced at an earlier time,

---

[3] Notably, Plaintiffs seem to admit in their Response brief that the "agree-upon deadline" for the OIG to respond to Plaintiffs' subpoena was July 15, 2022, the date that the OIG filed its motion to quash. *See* Pls' Resp. Br., p. 5, ("In this email, counsel for OIG indicated that the narrowed scope was agreeable, and that OIG would comply by the agreed-upon deadline of July 15, 2022.")

4

or otherwise take the position that the subpoena's date of compliance had passed. *Id.* Respondent also emailed defendants shortly after the date of compliance had passed to ask whether it was agreeable to produce responsive materials at a later date. *Id.* As such, the court held that rather than asserting that the documents were due, defendants' communications indicate that negotiations regarding the date of compliance were ongoing and held that the respondent's motion to quash was timely. *Id.* In light of the above, the conduct and correspondence between Plaintiffs and OIG's former counsel constitutes Plaintiffs' concession that the time to comply with Plaintiffs' subpoena had not lapsed by July 15, 2022. Indeed, correspondence regarding the OIG's response to Plaintiffs' subpoena continued through July 15, 2022, and Plaintiffs asked that the parties have "further discussions regarding OIG's compliance with the subpoena" after the ostensible date for compliance had passed. (*See* Plaintiff's Exhibit 2, July 15, 2022, 11:28 a.m. email from A. Nicholas to R. Phillips- Santos, reattached as Exhibit B). As such, the OIG's Motion to Quash is timely.

## II. The Scope of Plaintiffs' Subpoena Has Been Narrowed.

As an initial matter, the OIG retained the undersigned counsel after Plaintiffs filed their Response brief. Following the entry of the undersigned counsel, the OIG subsequently produced 571 pages related to 21 separate complaints to the OIG made by Plaintiffs between May 7, 2019 to the present related to Alderman Gardiner's use and regulation of his Facebook page. This production represents the closed investigative files related to these 21 separate complaints.[4] Plaintiffs also concede that they are no longer seeking files from the OIG pertaining to non-party complaints related to Alderman Gardiner's social media use, generally. (*See* Pls' Resp. Br., p. 11 (limiting scope of subpoena to "files pertaining to (1) the Facebook page that is the subject of this

---

[4] There is one additional investigative file related to a still pending complaint that the OIG has not yet produced because the investigation is ongoing.

lawsuit; and (2) complaints involving Defendant Ald. Gardiner and the named Plaintiffs.")) As such, this Court need only consider whether it will quash Plaintiffs' subpoena to the extent it seeks files that pertain to Plaintiffs' non-Facebook related complaints about Alderman Gardiner as well as complaints by non-parties regarding the Alderman's Facebook page (collectively, the "Complaint Materials"). Plaintiffs' Response offers no compelling reason or argument that the Complaint Materials are relevant or discoverable and the remainder of Plaintiffs' subpoena should be quashed.

### III. Plaintiffs' Assertion that the Complaint Materials are Relevant and Discoverable is Vague and Conclusory and Offers No Basis to Deny the OIG's Motion.

Plaintiffs offer no citation to authority or record evidence, beyond vague and conclusory assertions, that the Complaint Materials are discoverable and relevant to their single claim that Alderman Gardiner unconstitutionally barred *Plaintiffs* from his Facebook page. Plaintiffs' Response asserts that they "explained in the background [section]" how complaints by non-parties about the Facebook page or Plaintiffs' non-Facebook related complaints about Alderman Gardiner are "highly relevant." *See* Pls' Resp. Br., p. 9. Not so. The "Relevant Background" section of Plaintiffs' Response is narrowly concerned with complaints and correspondence *with the named Plaintiffs*, not non-parties or other types of complaints by Plaintiffs about Alderman Gardiner. Indeed, Plaintiffs background section states:

> The documents produced by BOE [Board Of Ethics] confirm Plaintiffs' belief that OIG in particular is very likely in possession of relevant and discoverable documents. **Namely, in correspondence with the named Plaintiffs regarding their complaints about Ald. Gardiner's use and regulation of the Facebook Page**, the Board of Ethics stated that OIG has responsibility for conducting "factual investigations" into alleged ethics violations…In another email, the BOE confirmed that the OIG would be tasked with investigating "why someone has been blocked" from a government official's Facebook Page and whether there were "valid reasons" for blocking someone.

6

Pl's Resp. Br., pp. 3-4 (emphasis added). Worse, Plaintiffs' sixteen-page response does not attach, describe, or quote from any BOE documents that might explain or tend to show *why* Facebook complaints by non-parties or Plaintiff's other complaints about Alderman Gardiner might be relevant and discoverable. Instead, Plaintiffs resort to unsupported, vague, and speculative assertions that the BOE documents "confirm Plaintiffs' belief that the OIG" has relevant and discoverable Complaint Materials and that "The documents produced by the BOE strongly suggest that Plaintiffs have a well-founded reason to believe that OIG may have obtained statements from Defendant Ald. Gardiner and members of his staff regarding the Facebook page; their regulation of content on the Page; their reasoning and rationales for deletion of content on the Page and/or blocking particular users; and their policies regarding what content is permitted on the Page." *See* Pl's Resp. Br., pp. 9-10. In other words, despite being in possession of documents that Plaintiffs claim "strongly suggest" that the OIG possesses Complaint Materials that are relevant and discoverable, Plaintiffs fail to explain which documents provide a "well-founded reason" that "strongly suggest[s]" the OIG "might have obtained" relevant and discoverable Complaint Materials or even what those documents say. These sorts of unsupported and conclusory assertions are insufficient to rebut the OIG's objections. *See Loughanane v. Zukowski* 2019 U.S. Dist. LEXIS 239863, at *28-29 (conclusory assertions do not establish the relevance of a subpoenaed document); *United States v. Boender*, No. 09-cr-186-1, 2010 U.S. Dist. LEXIS 46395, at *12 (N.D. Ill. May 12, 2010) citing *United States v. Abdush-Shakur,* 465 F.3d 458, 468 (10th Cir. 2006) ("Conclusory statements do not establish relevance.") Moreover, Plaintiffs' speculation is incorrect. Alderman Gardiner has never been interviewed by the OIG in connection with its investigations into any complaint about the Alderman. In sum, Plaintiffs' response offers no basis,

other than speculation, to rebut the OIG's assertion that the Complaint Material are irrelevant and not discoverable.

Additionally, the parties are still engaged in Rule 37 discussions regarding the OIG's response to the remaining disputed portions of Plaintiffs' subpoena, in the spirit of this Court's August 26, 2022 Order (*See* Dkt. 64). On September 9, 2022 the parties met and conferred by telephone conference at which time Plaintiffs' counsel further clarified the purpose of Plaintiffs' request for OIG files regarding Plaintiffs' complaints about Gardiner that do not specifically focus on his Facebook page. In sum, Plaintiffs' counsel is seeking a file related to an OIG interview of Plaintiff, Pete Czonsnyka, about non-Facebook related complaints he had made about the Alderman, however, Plaintiffs believe that Alderman Gardiner's Facebook page might have come up during that interview. (*See* September 9, 2022, 11:51 a.m. email from A. Nicholas to A. Grill, attached as Exhibit C). The undersigned counsel, having just learned about this interview from Plaintiffs' counsel today, is investigating whether such a file exists and will consider whether it is responsive to Plaintiffs' subpoena.

Plaintiffs' counsel also explained that they are seeking files related to non-party complaints about Alderman Gardiner's Facebook page to rebut his claim that that he has a policy of treating all posts (and the people who post) on his Facebook page equally. However, Plaintiffs' policy and practice claim was dismissed (*see* Dkts. 33, 37), there is no "similarly situated" component to Plaintiffs' First Amendment claim, and whether a policy was followed or broken is not evidence of a constitutional violation. *See Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (A violation of policy by itself is insufficient to establish a constitutional violation. "Section 1983 protects against 'constitutional violations, not violations of . . . departmental regulation and . . . practices');

8

*Thompson v. City of Chicago*, 472 F.3d 444, 454-55 (7th Cir. 2006) (Violations of internal rules are not evidence of a constitutional violation). As such, Plaintiffs' stated reasons for requesting files related to non-party complaints about Alderman Gardiners' Facebook page proves Plaintiffs are seeking irrelevant materials from the OIG and Plaintiffs' subpoena should be quashed.

### IV. The Complaint Materials Are Not Discoverable Under Rule 404(b)

Contrary to Plaintiffs' claim, it is also doubtful that the Complaint Materials qualify as 404(b) evidence. Under Rule 404(b),

> evidence detailing other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith, but such evidence is admissible for other purposes. When determining whether evidence is admissible for another purpose, we ask whether (1) the evidence was offered for some purpose other than to show the defendant's criminal propensities; (2) the other act is similar enough and close enough in time to the charged crime to be relevant to that stated purpose; (3) the evidence presented was sufficient to support a finding that the defendant committed the prior act; and (4) the probative value of the proffered evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Foster*, 652 F.3d 776, 784-85 (7th Cir. 2011). Plaintiffs' non-Facebook related complaints about Alderman Gardiner cannot relate to Plaintiffs' theory that they were unconstitutionally barred from speaking on the Alderman's Facebook page. *United States v. Vargas*, 552 F.3d 550, 555 (7th Cir. 2008) (explaining that "we analyze whether the prior conduct is similar enough on a case-by-case basis, a determination that 'depend[s] on the theory that makes the evidence admissible'"), quoting *United States v. Wheeler*, 540 F.3d 683, 692 (7th Cir. 2008). Moreover, Plaintiffs' Response does not explain why the Complaint Materials are likely to contain relevant information that is not already in the 571 pages of materials already produced by the OIG regarding Plaintiffs' 21 complaints about the Alderman. Documents included in the OIG's production include Plaintiffs' complaints, their correspondence with the OIG about their complaints, and screen shots (given to the OIG by Plaintiffs) of the offending Facebook posts that

9

allegedly caused a Plaintiff to be blocked, and screen shots of the posts before they were allegedly deleted. In other words, the documents produced by the OIG are a clear record for a trier of fact to consider when judging the merits of Plaintiffs' First Amendment claim. As such, the Complaint Materials are not likely to shed new light on the Alderman's motives, intent, knowledge, or modus operandi to discriminate against Plaintiffs on his Facebook page. As such, the three years of Complaint Materials that Plaintiffs seek smacks of inadmissible propensity evidence. *See United States v. Foster*, 652 F.3d 776, 784-85 (7th Cir. 2011) (Under Rule 404(b), evidence detailing other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.)

### V. It is Overly Burdensome to Produce Irrelevant and Duplicative Materials that Are More Easily Obtainable from Another Source

In light of the above, Plaintiffs' speculative and conclusory Response does not rebut the OIG's assertion that the Complaint Materials are irrelevant. The OIG, a non-party respondent, is not required to produce (and possibly testify) about documents related to irrelevant information. This is neither a controversial position, nor one that Plaintiffs dispute. *See Vike v. Coopman*, No. 08-cv-486-bbc, 2009 U.S. Dist. LEXIS 95650, at *3 (W.D. Wis. Oct. 14, 2009) citing *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004) (quashing subpoena because it is an undue burden to require a respondent to testify about and produce documents related to irrelevant information); *Cadillac Ins. Co. v. American Nat'l Bank,* 1992 U.S. Dist. LEXIS 2815 (N.D.Ill.1992) (conclusory allegation insufficient to persuade the court to broaden the scope of discovery by requiring production of otherwise irrelevant documentation); *Taylor v. Kilmer*, No. 18 CV 7403, 2020 U.S. Dist. LEXIS 21159, at *6-7 (N.D. Ill. Feb. 7, 2020) (irrelevant information need not be produced). And, even if the Complaint Materials have some minimal relevance to Plaintiffs' single claim, asking the OIG to produce three years of Complaint

Materials is an overly burdensome way to discovery the Alderman's motive, opportunity, plan or intent to discriminate against Plaintiffs' access to his Facebook page, given that hundreds of pages of materials have been produced by the OIG that preserve Plaintiffs' complaints and the offending Facebook posts. In light of this, the burden of producing the Complaint Materials outweighs their probative value. *See Cohn v. Taco Bell Corp.*, No. 92 C 5852, 1993 U.S. Dist. LEXIS 15346, at *12 (N.D. Ill. Oct. 28, 1993) (quashing subpoena when burden of production on non-party is "quite large, in relation to the small value [the subpoenaed documents] have in this litigation."); *Harris Davis Rebar, LLC v. Structural Iron Workers Local Union No. 1, Pension Tr. Fund, No. 17* C 6473, 2019 U.S. Dist. LEXIS 17794, at *8 (N.D. Ill. Feb. 5, 2019) (quashing subpoena to non-party because the burden to obtain and produce substantially outweighed usefulness of subpoenaed materials). Plaintiffs will also explore these topics during Alderman Gardiner's deposition and Plaintiffs' Response offers no argument that they cannot. *See* Fed. R. Civ. P. 26(b)(2)(C) (A court may limit the scope of discovery if the discovery sought is unreasonably cumulative or is obtainable from some other source that is more convenient, less burdensome, or less expensive); *Morrow v. Air Ride Technologies*, Inc., No. IP-05-133-Misc., 2006 U.S. Dist. LEXIS 96651, 2006 WL 559288 at *1 (S.D. Ind. March 6, 2006). (Non-party status is a significant factor to be considered when determining whether the burden imposed by a subpoena is undue.) For all of these reasons, Plaintiffs' subpoena as it pertains to the Complaint Materials should be quashed.

WHEREFORE, the Office of Inspector General respectfully requests this Court quash Plaintiffs' subpoena to the extent it seeks documents related to any "audits, reviews, investigations, interviews, correspondence, reports, and findings" that pertain to Plaintiffs' non-Facebook related complaints about Alderman Gardiner as well as complaints by non-parties regarding the Alderman's Facebook page, and for any other relief this Court deems just and reasonable.

                                                          Respectfully submitted,

Dated: September 9, 2022                By: /s/ *Eileen E. Rosen*
                                                          Special Assistant Corporation Counsel
                                                          *One of the Attorneys for the City of Chicago*
                                                          *Office of the Inspector General*
                                                          Eileen E. Rosen
                                                          Andrew Grill
                                                          Jessica L. Zehner
                                                          Rock Fusco & Connelly, LLC
                                                          333 W. Wacker Drive, Floor 19
                                                          Chicago, Illinois 60606
                                                          (312) 474-1000
                                                          erosen@rfclaw.com
                                                          agrill@rfclaw.com
                                                          jzehner@rfclaw.com