IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Pete Czosnyka, Peter Barash, Adam Vavrick, Dominick Maino, Steve Held and James Suh, individually and on behalf of all others similarly situated,** )<br>)<br>)<br>)<br>)<br>**Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**James Gardiner and the City of Chicago,** )<br>)<br>**Defendants.** ) | Case No. 21-cv-03240<br><br>Hon. Judge Johnson Coleman |

**DEFENDANT JAMES GARDINER'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF QUALIFIED IMMUNITY**

Defendant James Gardiner, Alderman of the 45th Ward of the City of Chicago ("Gardiner" or "Defendant"), by and through his attorney, Thomas D. Carroll of Thomas R. Raines Attorney at Law, LLC, moves for Summary Judgment in his favor as to the damages allegations of Count I of the Plaintiffs' Czosnyka, Barash, Vavrick, Maino, Held, Suh, and any similarly situated plaintiffs (the "Plaintiffs") Complaint (the "Complaint" or "Cmplt." (Dkt. 1)), pursuant to Federal Rule of Civil Procedure 56. In support of the motion, Defendant states as follows:

**INTRODUCTION**

As the Alderman of Chicago's 45th Ward, Defendant James Gardiner is entitled to qualified immunity from the necessity of trial and liability for damages in the instant lawsuit because, to the extent he may have violated Plaintiffs' First Amendment right to access and comment on his official Facebook page (the "Facebook Page") by blocking them from accessing

the page or deleting/hiding comments on the page, such a right was not "clearly established" in this jurisdiction or under federal law at the time this suit was filed.

## LEGAL STANDARDS

### Summary Judgment under Fed. R. Civ. P. 56

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### Qualified Immunity

"Qualified immunity "shields government officials against suits arising out of their exercise of discretionary functions 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Jones v. Wilhelm,* 425 F.3d 455, 460 (7th Cir. 2005) (quoting *Anderson v. Creighton,* 483 U.S. 635, 638 (1987)). The doctrine of qualified immunity is broad, protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). The doctrine leaves ample room for mistaken judgments by those to whom it applies. *Payne v. Pauley,* 337 F.3d 767, 776 (7th Cir. 2003).

Whether a government official is entitled to qualified immunity is a question of law for resolution by the court. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). Determinations of qualified immunity should be made well before trial because it entitles those covered to immunity from suit rather than a mere defense to liability. *Id.* at 227 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Qualified immunity claims are subjected to a two-part analysis: (1) whether an official's conduct violated a plaintiff's constitutional right(s), and (2) whether the right was "clearly established" at the time of the alleged violations. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Courts may address each prong of the two-part inquiry in whatever order seems most expeditious given the circumstances of the case at hand. *Id*.

A public official is not answerable in damages for a violation of the Constitution unless, at the time he acted, the law was clear that what he was doing really did violate the Constitution. *Harlow v. Fitzgerald,* 457 U.S. 800, 818-19 (1982). "If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id*. at 818. The unlawfulness must be apparent in light of preexisting law. *Green v. Carlson,* 826 F.2d 647, 649 (7th Cir. 1987) "In other words, [an official] is not chargeable with predicting expansions in constitutional liability." *Nelson v. Streeter*, 16 F.3d 145, 148 (7th Cir. 1994).

Plaintiffs bear the burden of establishing that the constitutional right at issue was clearly established at the time of the alleged violation. *Koger v. Bryan,* 523 F.3d 789, 802 (7th Cir.2008) A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would [have understood] that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

Courts do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question *beyond debate*. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) [*emphasis added*]. In order to defeat a claim of qualified immunity for lack of clearly

established law, a plaintiff has the burden of showing that, at the very least, there is "a robust 'consensus of cases of persuasive authority.'" *Id.* at 741-42 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999). Courts should not define clearly established law with a high level of generality. *Ashcroft*, 563 U.S. at 741. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Id.* "[T]he test for immunity should be whether the law was clear in relation to the specific facts confronting the public official when he acted." *Colaizzi v. Walker*, 812 F.2d 304, 308 (7th Cir. 1987).

## ARGUMENT

As reflected in Defendant's statement of uncontested facts, for purposes of deciding this Motion, Defendant concedes that he has, in the past, blocked certain of the Plaintiffs and/or deleted certain critical comments made by the Plaintiffs on his official Facebook Page. However, he did so in the absence of any clear, binding legal precedents from this jurisdiction or the Supreme Court, or a "robust consensus of persuasive authority" signifying that doing so would amount to a violation of the Plaintiffs' constitutional rights.

As far as Defendant is aware, this Court is the first within the Seventh Circuit's jurisdictional territory to pass on the issue and hold, at the pleading stages, that a party may state a cause of action for violations of the First Amendment because a public official is alleged to have blocked their access or deleted their comments on a public-facing, interactive social media page. See Dkt. 39, p. 3 (stating that the Seventh Circuit has yet to address the issue).

As of the date suit was filed, Defendant is aware of only three cases from other circuits suggesting that a public official who blocks commenters or deletes posts on an official or quasi-official social media page might be subjected to liability under Section 1983 and the First Amendment.

One is *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019). *Davison* involved a Loudon County, Virginia, Board of Supervisors Chair who was sued in her official and personal capacities for banning the plaintiff from commenting on the "Chair Phyllis Randall" Facebook page, after he implied in a post that the Board was engaged in acts of corruption. The *Davison* Court acknowledged that no other circuit nor the Supreme Court had addressed whether a government social media page may be deemed a public forum but concluded that Randall had "intentionally opened the public comment section of the Chair's Facebook page for public discourse" by "inviting 'ANY Loudon citizen' to make posts… on ANY issues, request, criticism, complement [sic] or just your thoughts." *Id*.

Another circuit-level case addressing this issue directly is *Knight First Amendment Institute v. Trump*, 928 F.3d 226 (2nd Cir. 2019). The *Knight* Court concluded that President Trump's practice of blocking Twitter followers from commenting on his official thread violated the First Amendment. However, *Knight* was vacated and remanded to the circuit court with instructions to declare the case moot by the Supreme Court in 2021. See *Biden v. Knight First Amendment Institute*, 121 S.Ct 1220 (2021). When a judgment is vacated, it is "eras[ed], ... so that its legal effect is as if it had never been written." *Medici v. City of Chicago*, 856 F.3d 530, 533 (7th Cir. 2017). Thus, *Knight* cannot be counted as persuasive authority from a different circuit indicating that public officials who establish interactive social media pages may be held liable for blocking users or deleting posts under the First Amendment.

Finally, there is *Robinson v. Hunt Co., TX*, 921 F.3d 440 (5th Cir. 2019). In *Robinson*, the circuit court reversed and remanded the district court's 12(b)(6) dismissal of the plaintiffs' claim that their First Amendment rights had been infringed when they were blocked from interacting with the Hunt County Sheriff's Office Facebook page. See *Id*. at 444-45. However, the district

5

court dismissal was reversed only as it pertained to the County itself, for having an official policy which contemplated viewpoint discrimination. See *Id*. Tellingly, the lower court had already dismissed individual claims for damages against members of the sheriff's department based on qualified immunity, and the circuit court ruling left that dismissal undisturbed. See *Id*. at 446.

As the *Davison* Court acknowledged in a footnote, there is also contrary district-level authority holding that a public official was within his rights to block social media users and delete posts under very similar circumstances to those in this case. See *Morgan v. Bevin*, 298 F.Supp 3d 1003 (E.D. Ky. 2018). The *Morgan* Court held that Governor Bevin's Facebook and Twitter pages were not public fora even though users could and did interact and comment on the pages in response to his posting and the governor fully-acknowledged blocking users for critical but otherwise inoffensive comments. See *Id*. Considering this Court's denial of Defendant's Motion to Dismiss, it seems obvious that the Court disagrees with *Morgan*. But the very existence of such disagreements among district courts interpreting the law in good faith demonstrates that the law is far from clear on this issue, and that the Defendant was hardly violating "clearly established law" as that term has been used in federal qualified immunity analysis. See *Ashcroft*, 563 U.S. at 741.

Finally, it is worth noting that courts apply a "layman's standard" when determining whether a public official may have qualified immunity from liability for an alleged constitutional violation. See *Bland v. Roberts*, 730 F.3d 368, 393-94 (4th Cir. 2013)("We do not expect sheriffs to be judges and have the training to sort through every intricacy of caselaw that is hardly a model of clarity… Rather in considering whether constitutional rights were clearly established for qualified-immunity purposes, we view the issue from the layman's perspective.")(citing

6

*Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1108 (8th Cir. 2004); *Ross v. Reed*, 719 F.2d 689, 696 n. 8 (4th Cir. 1983)). Trained attorneys and judges may be hard at work determining the contours of First Amendment public forum law on government or official social media pages, but an alderman with no legal training can hardly be expected to have followed the developing caselaw from outside the jurisdiction in which he lives and works such that he could be said to know whether the laws in this area are clearly established under the First Amendment.

"The forces and directions of the Internet are so new, so protean, and so far reaching that courts must be conscious that what they say today might be obsolete tomorrow." *Packingham v. North Carolina*, 137 S.Ct. 1730, 1736 (2017). This Court has held that Alderman Gardiner's creation and maintenance of the Facebook Page plausibly created a public forum subject to the First Amendment such that the Plaintiffs could sustain a cause of action when their posts were deleted and their access to the forum blocked. Defendant understands and respects the Court's holding in that regard. But it is another matter entirely to hold that Defendant should be liable for damages to the Plaintiffs for having limited their access to the purported forum when the law on this subject is so unsettled, and the Defendant is a public official engaged in discretionary acts subject to qualified immunity.

There is no Supreme Court authority on the questions raised in this lawsuit, there is no Seventh Circuit authority on the questions raised in this lawsuit, and the outside persuasive authority is mixed in tenor, scope and outcome. There is certainly no "robust consensus" of persuasive authority, the contours of which are so clear that any reasonable official in Alderman Gardiner's position would have known that what he is doing violates the right. See *Wilson*, 526 U.S. at 617; *Anderson*, 483 U.S. at 640. The Defendant is entitled to qualified immunity from

suit and damage liability on Count I of Plaintiffs' Complaint and summary judgment should enter in his favor on that ground.

WHEREFORE, the Defendant, James Gardiner, moves this honorable Court to grant his Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56, and for any additional relief that the Court deems just.

        Respectfully Submitted,
        THOMAS R. RAINES ATTORNEY AT LAW, LLC

        /s/ Thomas D. Carroll
        Thomas D. Carroll
        Thomas R. Raines Attorney at Law, LLC
        20 N. Wacker Dr., Suite 556
        Chicago, IL 60606
        T: (312) 750-1166
        F: (312) 750-1164
        tcarroll@traalaw.com

Dated: January 6, 2023

## CERTIFICATE OF SERVICE

The undersigned, an attorney of record for the Defendant, hereby certifies that on January 6, 2023, he served a copy of the Defendant James Gardiner's Memorandum in Support of His Motion for Summary Judgment on all counsel of record by electronic means via the Northern District of Illinois's Electronic Case Filing (ECF) system, which notifies all counsels and parties of record.

/s/ Thomas D. Carroll
Thomas D. Carroll