**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**

***ELECTRONICALLY FILED***

| | |
|---|---|
| DREW MORGAN and MARY HARGIS, *Plaintiffs*, v. MATT G. BEVIN, in his official capacity as Governor of Kentucky, *Defendant*. | No. 3:17-cv-00060-GFVT-EBA |

## UNOPPOSED MOTION TO VACATE PRELIMINARY INJUNCTION RULING IN LIGHT OF NEW SOCIAL MEDIA POLICY

This case concerns important questions about the way that citizens may interact with their leaders in the rapidly evolving landscape of social media, which the Supreme Court has labeled the "modern public square." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735, 1737 (2017). As the Court is well-aware, this case began under the administration of former Kentucky Governor Matt Bevin, who contended that all portions of his official social media feeds—including user-generated comments in response to his posts—were "government speech" that was not protected by the First Amendment. In March 2018, this Court denied Plaintiffs' request for a preliminary injunction against the former Governor's social media policy, noting at the time that "[o]nly a single case on this issue has been decided." *Morgan v. Bevin*, 298 F. Supp. 3d 1003, 1009 (E.D. Ky. 2018).

After the parties fully briefed cross-motions for summary judgment, Governor Bevin lost his re-election effort to now-Governor Andy Beshear. After taking office, Governor Beshear voluntarily changed positions and the parties have agreed to a new social media policy for the Governor's Office that is attached to this motion as **Exhibit 1**.

1

In light of this change in position, Plaintiffs respectfully ask this Court to vacate its prior preliminary injunction ruling. That ruling—like all preliminary injunction decisions—was inherently non-final and subject to being revisited by this Court at any time prior to final judgment. *See* Fed. R. Civ. P. 54(b); *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991). This Court indisputably has the power to "modify, or even rescind, such interlocutory orders." *Mallory*, 922 F.2d at 1282. Indeed, even if this Court's ruling had been appealed to the Sixth Circuit and had it affirmed, that interlocutory conclusion would not have been "binding on the panel that reviews the ultimate final injunction decision." *McQueary v. Conway*, 614 F.3d 591, 599 (6th Cir. 2010).

In circumstances like this, "courts often vacate their earlier rulings on the theory that a ruling should not stand when the party opposing it is deprived of a chance to obtain a final ruling on the issue or to seek appellate review of it—due to events outside of the party's control, such as the defendant's voluntary cessation of conduct." *McQueary*, 614 F.3d at 600 (citing, *inter alia*, *Alvarez v. Smith*, 558 U.S. 87 (2009); *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950)). Indeed, this kind of voluntary cessation "mootness generally *requires* a court to vacate its earlier rulings, including any preliminary injunction granted in the case." *McQueary*, 614 F.3d at 600 (emphasis added). The same rule should apply to equally interlocutory orders denying preliminary injunctions, where the defendant's change in position prevents the Court from issuing a final judgment on the merits.

There is an additional reason for this Court to vacate its preliminary injunction ruling: the legal landscape has shifted significantly in the two years since this Court's preliminary ruling. Numerous courts have been called upon to decide similar questions, and they overwhelmingly have ruled that the interactive spaces of a public official's social media account—where citizens can interact with their elected leaders—are "fora" for First Amendment purposes and give rise to constitutional protections against content and/or viewpoint discrimination. *See, e.g.*, *Knight First Amendment Inst. at Columbia Univ.*

2

*v. Trump*, 928 F.3d 226, 237 (2d Cir. 2019); *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019), as amended (Jan. 9, 2019); *Faison v. Jones*, 2020 WL 869122, at *8 (E.D. Cal. Feb. 21, 2020); *Garnier v. Poway Unified Sch. Dist.*, 2019 WL 4736208, at *9 (S.D. Cal. Sept. 26, 2019); *Campbell v. Reisch*, 2019 WL 3856591, at *6 (W.D. Mo. Aug. 16, 2019); *One Wisconsin Now v. Kremer*, 354 F. Supp. 3d 940 (W.D. Wis. 2019); *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541 (S.D.N.Y. 2018); *Price v. City of New York*, 2018 WL 3117507 (S.D.N.Y. June 25, 2018); *Leuthy v. LePage*, 2018 WL 4134628 (D. Me. Aug. 29, 2018), *motion to certify appeal denied*, 2018 WL 4955194 (D. Me. Oct. 12, 2018); *see also Robinson v. Hunt Cty., Texas*, 921 F.3d 440, 448 (5th Cir. 2019), *reh'g denied* (May 16, 2019) (applying forum analysis in absence of argument from government that it did not apply). In light of this emerging consensus, courts have generally opted to follow the majority rule instead of the Court's prior preliminary injunction ruling.[1]

Given the procedural history of the case and the evolving legal landscape in which it was decided, Plaintiffs respectfully request that this Court exercise its inherent discretion to vacate the preliminary injunction ruling issued on March 30, 2018.

---

[1] *See, e.g.*, *Clark v. Kolkhorst*, 2020 WL 572727, at *4 (W.D. Tex. Feb. 5, 2020) (same); *Faison*, 2020 WL 869122, at *9 (declining to follow *Morgan*); *Campbell*, 2019 WL 3856591, at *5 (same); *Leuthy*, 2018 WL 4134628, at *16 (D. Me. Aug. 29, 2018) (same); *Price v. City of New York*, 2018 WL 3117507, at *14 n.14 (S.D.N.Y. June 25, 2018) (same). Other courts have cited it, in qualified immunity cases, as evidence that the law was in flux at the time of allegedly unconstitutional actions. *See, e.g.*, *Novak v. City of Parma*, 932 F.3d 421, 434 (6th Cir. 2019); *Hyman v. Kirksey*, 2019 WL 2323864, at *2 (E.D. Ark. May 30, 2019); *McKercher v. Morrison*, 2019 WL 1098935, at *4 (S.D. Cal. Mar. 8, 2019).

Respectfully Submitted,

*s/ Michael P. Abate*

Corey M. Shapiro
Heather L. Gatnarek
ACLU OF KENTUCKY FOUNDATION, INC.
325 W. Main Street, Suite 2210
Louisville, Kentucky 40202
(502) 581-9746
corey@aclu-ky.org
heather@aclu-ky.org

Michael P. Abate
Casey L. Hinkle
Andrea Aikin
KAPLAN JOHNSON ABATE & BIRD LLP
710 West Main Street, 4th Floor
Louisville, Kentucky 40202
(502) 416-1630
mabate@kaplanjohnsonlaw.com
chinkle@kaplanjohnsonlaw.com
aaikin@kaplanjohnsonlaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on July 3, 2020, I filed this Joint Motion with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel.

s/ Michael P. Abate
*Counsel for Plaintiffs*

4

# Exhibit 1

## New Social Media Policy

## Office of Governor Social Media Policy

**Social Media Platforms.** This document constitutes the Office of the Governor's Social Media Policy (the "Policy"). As described below, this Policy applies to the following social media platforms:

- Facebook: [insert Facebook page]
- Twitter: @GovAndyBeshear;
- Snapchat: [insert]
- Instagram [insert];
- YouTube: [insert]; and
- Other social media platforms that the Office of the Governor elects to use.

**Purposes.** The social media platforms promote and disseminate information about Gov. Andy Beshear's initiatives, events, and personnel announcements. These platforms exist for discussion with and among social media users about any topic related to governmental concerns. The Office of the Governor reserves the right to review, hide, and/or delete comments on all of the Governor's official social media platforms, consistent with this Policy.

The Office of the Governor at all times strives to uphold users' right to Freedom of Speech. It is the Office of the Governor's policy to allow vigorous and robust public discourse on its social media platforms.

**Comments**.

"Comments" mean all public discourse, interaction and communication on social media platforms including but not limited to likes, comments, shares, messages, tags, replies and retweets.

The Office of the Governor is interested to hear the Comments of users on each of those social media platforms the Office elects to use. This policy is intended to maintain Comments on the Governor's social media platforms in a manner that is viewpoint neutral.

However, the Office of the Governor may report the user and/or temporarily restrict access to the Office of the Governor's social media platforms for violating the Rules set forth in this Policy below, and may report the user or the user's comments to a social media platform for comments if the Governor's Office believes in good faith the comments may violate the social media platform's terms of service or rules, and may hide or otherwise block the reported comments from the Office of the Governor's social media platforms during the time of such a report. Further, social media platforms may have automated mechanisms that hide or otherwise block comments which are beyond the control of the Office of the Governor.

In addition to restricting further user access in accord with this Policy, the Office of the Governor may hide or delete Comments, as applicable to the respective platform, if they contain, constitute, or link to any of the following, which collectively shall be "Prohibited Content":

- o Malicious or harmful software;
- o Advertisements, promotions, or solicitations of a commercial product or service;
- o Confidential, personally identifying, or private information;

- o Material that, taken as a whole: appeals to the prurient interest in sex; describes or portrays sexual conduct in a patently offensive way; or contains explicit sexual content that does not have serious literary, artistic, political, or scientific value;
- o Threatening statements within the meaning of KRS 508.075 to 508.080[1] or harassment within the meaning of KRS 525.070(1)(a), (b), (d), (e), or (f); or
- o SPAM, consisting of disruptive and repetitive unsolicited messages sent indiscriminately on the Internet to a large number of recipients or posted in a large number of places.

**Rules.** The following rules apply to the social media platforms:
- Any content removed pursuant to this Policy will be retained by the Office of the Governor for one year.
- Upon the Office of the Governor discovering that users may have made Comments containing Prohibited Content, such users may be immediately blocked, and remain blocked for a time period of up to 48 hours, in order for the Office of the Governor to make a determination as to whether the users have made Comments containing Prohibited Content.
- Users may be temporarily restricted, for a period not longer than six months, from the social media platforms if they make Comments containing Prohibited Content, subject to the following: 1) a user's access shall only be restricted from the social media platform on which the user made the Comment containing Prohibited Content; and 2) the user has repeatedly and consistently violated this Policy or the Office of the Governor reasonably believes the user will repeatedly and consistently violate this Policy.
- If the Office of the Governor restricts any person's access to social media platforms under either of the two preceding paragraphs, it must provide written notice to the restricted individual (provided the user's contact information is available on the social media platform) that informs such individual of the restriction and the procedure by which a blocked user may be unblocked from the Office of the Governor's social media accounts. The Office of the Governor shall retain a record of the reason for restricting that person's access for one year.
- To appeal the restriction of access to a social media platform, the user must submit to the _____ at _____@ky.gov a written statement providing grounds for reinstatement. Requests shall be responded to on a reasonably timely basis, and access shall be restored if it is determined that the grounds for reinstatement are sufficient. A statement that the user will abide by this Policy in the future shall be sufficient, except when a user has continued to violate the Policy after having made such a statement. In the latter case, the user must submit a written statement providing grounds for reinstatement, and access shall be restored if it is determined the grounds for reinstatement are sufficient.
- Any denial of restatement by the Office of the Governor shall also be done in writing and specifically describe the grounds for denial.
- Any user denied reinstatement is entitled to seek reinstatement after three months.
- The Office of the Governor shall notify the public of any changes to this Policy and identify the changes.

---

[1] Users that make express or implied threats of violence or to public safety may be reported to the Kentucky State Police for investigation.

2

**Public Records and Retention.** Any content removed or hidden pursuant to this Policy will be retained for one year. The Office of the Governor's social media platforms are subject to applicable public records and records management laws. Any record maintained on or regarding the Office of the Governor's social media platforms, including Comments and restriction appeals, will be maintained consistent with the Kentucky Open Records Act.

**User-generated content.** The Office of the Governor reserves the right to monitor the social-media platforms, but is not responsible for content generated by users on these platforms nor is user-generated content government speech. A Comment is the opinion of the commentator only. Publication of a Comment does not imply endorsement of, or agreement by, the State of Kentucky or Governor Beshear. Comments and content should be understood to be entirely public, and users should not write Comments with any information that they consider, or would like to keep, confidential. The Office of the Governor is not responsible for content removed or hidden by any social media platform.