**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

PETE CZOSNYKA, *et al.*,

    Plaintiffs,

        v.

JAMES GARDINER,

    Defendant.

21-cv-3240

Hon. Sharon Johnson Coleman

**PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS IN
RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, through counsel, pursuant to L.R. 56.1(b)(3), submit the following statement of additional material facts, in addition to those previously set forth in Plaintiffs' statement of material facts in support of their motion for summary judgment (ECF 85), that require denial of Defendant Gardiner's motion for summary judgment.

1.      On January 25, 2023, the *Chicago Tribune* ran a story with the headline "Embattled Ald. Jim Gardiner's fitness is key issue in race for 45th Ward" (https://www.chicagotribune.com/politics/elections/ct-45th-ward-alderman-20230125-rmlfvbza75eevn7hrj5d7q2z4u-story.html). The same day, the local news website *Block Club Chicago* ran a story with the headline "Ald. Jim Gardiner Should Be Investigated For Harassing Challenger's Volunteers, Ethics Board Tells City Watchdog" (https://blockclubchicago.org/2023/01/25/ald-jim-gardiner-should-be-investigated-for-harassing-challengers-volunteers-ethics-board-tells-city-watchdog/). Both articles made reference to an incident wherein Defendant Gardiner was

captured on video confronting a volunteer who was collecting signatures for an opposing candidate for 45th Ward Alderperson.

2.      In apparent response to the negative press, Defendant Alderman Gardiner posted on his Facebook Page (facebook.com/AldermanGardiner) on January 26, 2023, writing as follows: "When you #SpeakTruthToPower you become a target... #chicago #standforsomethingorfallforanything #theprideof45. The post is visible at the following URL:

https://www.facebook.com/AldermanGardiner/posts/pfbid05K5Bbia7CH3sc1i71oyoC FvQivPedsAmVNwUfTXcWyWjSJyf7myNXr7kuHT1sn8il. Various members of the community posted more than 100 comments on the post to share their viewpoints about the Alderman's performance of his job, his claim that he is being "targeted," and the recent press about his conduct while in office. Ex. 1, Supp. Decl. of Vavrick, ¶2–3.

3.      Plaintiff Adam Vavrick commented on the post, writing as follows:

This is actually one of the more truthful things Alderman Jim Gardiner has ever posted.

-   He made a target of his ex girlfriend when she left him for greener pastures, so much so that she requested and received an emergency order of protection to get him to stop stalking her.
-   He made a target out of the former Alderman, anyone he just blithely assumes supported the former Alderman, and any project or development the former Alderman touched, and any business who he sees as "friendly" to the former Alderman as a way of showing his dominance, all [at] the expense of the constituents he pretends to serve.
-   He made a target of Pete Czosnyka for speaking truths about his lack of planning and competence.
-   He made a target of James Suh when James organized against his mishandling of The Point at six corners.

2

- He made a target of Block Club and other media outlets that would dare to publish anything remotely negative (and demonstrably true!) about him, refusing to engage with the media at all.
- He made a target of myself and several others for sharing publicly available municipal funding information on this page that proved that Jim lies about basic city services and ward fund allocations
- He made a target of women who didn't toe the line for him or were not afraid of him, Joanna Klonsky for example.

I could go on, and on, and on, but let's not forget the person who Jim has placed the largest target on: Himself.

Ex. 1, Supplemental Decl. of Vavrick, at ¶4.

4.      The comment was hidden from Alderman Gardiner's Page. As a result,

Plaintiff Vavrick and anyone who is connected to him as a friend can see the

comment, but the comment was rendered invisible to other members of the

community who view the thread. Ex. 1 at ¶¶5–6.

5.      On January 27, 2023, Plaintiff Dominick Maino posted a link to the above-

mentioned *Block Club Chicago* article in the comments section of the Page with the

following comment:

Alderman Jim Gardiner, it seems as if your stalking behavior now extends to constituents who want to support a candidate for the 45th Ward that is NOT YOU. As a noted stalker, you should not harass those who live in the 45th Ward no matter who they support.

Ex. 2, Supp. Decl. of Maino, at ¶2.

6.      Defendant Gardiner hid the comment from the Page, making it invisible

to members of the community who view the Page unless they are connected to

Plaintiff Maino as a friend on Facebook. *Id.* at ¶¶2–3.

7.      On January 27, 2023, Alderman Gardiner posted a notice of an upcoming

Chicago Police Department entrance exam, writing as follows: "The #45thward

wants to inform residents of a great opportunity for those brave enough to

#bethechange they want."

(https://www.facebook.com/AldermanGardiner/posts/pfbid08bDB7D3SN5tnVqsEorT

T4Xsi1dWE6q2KdhM4Vapm2AbHWcpBfCXQHqDa6Em6gdekl). Visitors to the

Page posted more than 150 comments on the post, discussing their varying views on

the Chicago Police Department, the Fraternal Order of Police, and publicized

incidents of police misconduct. Ex. 3, Supp. Decl. of Czosnyka, at ¶2.

8.      In one exchange, Plaintiff Pete Czosnyka posted an article that discussed

a pattern of unlawful traffic stops by Chicago police officers on the West Side of

Chicago. *Id.* at ¶3. A user named Kevin Wilson responded to Czosnyka writing "they

should be glad they got off with a warning." Czosnyka replied, "racial profiling is

endemic in the CPD to the detriment of us all. You write like a cop using a

pseudonymous account. Do better." Wilson replied, "I don't represent CPD but I

certainly support them." Czosnyka replied, "You're not supporting them very well.

You're more the bootlicker-back-the-blue-mindlessly type." *Id.*

9.      Defendant Gardiner hid Czosnyka's final comment, making it invisible to

members of the community who view the Page unless they are connected to Plaintiff

Czosnyka as a friend on Facebook. *Id.* at ¶4.

10.     In his deposition, Alderman Gardiner testified that in the past he used

Facebook's "keyword filtering" feature to automatically hide any comment that used

the word "stalker." ECF 86-1, Dep. of Gardiner, at 64:14-17. He testified that he did

this because the word was being used in a "derogatory manner" towards him. *Id.* at

64:18–65:3. He could not recall the word "stalker" having been used about anyone other than himself. *Id*. at 65:9–13. He further testified that he used keyword filtering to hide comments containing other words that he deemed to be "derogatory in nature." *Id*. at 65:4–8.

11.     Alderman Gardiner further testified that he no longer used keyword filtering on the Page. ECF 86-1, Dep. of Gardiner, at 63:18–64:2.

12.     Plaintiffs Czosnyka, Maino and Vavrick all noticed that their comments disappeared from the Page within a few minutes after they were posted. Based on this, they believe that Alderman Gardiner is continuing to use keyword filtering to automatically "hide" any comment that uses the word "stalk" or variations of that word, and the word "bootlicker." Ex. 1 at ¶6; Ex. 2 at ¶4; Ex. 3 at ¶5.

13.     Defendant Gardiner testified that after the lawsuit was filed, he "no longer block[s] anybody." ECF 86-1, Dep. of Gardiner, at 68:12-25. He further testifies that he currently "[doesn't] censor anything" posted to the Page, including racial slurs, profanity, and threats of violence. *Id*. at 66:22–67:12.

14.     When asked about his future plans for moderating his Facebook Page, Defendant Gardiner testified as follows:

> Q. Are there circumstances under which you would block someone from the Facebook page in the future?
> A. I don't know.
> Q. Is it your understanding that you have the discretion to make a judgment call about whether to block someone from the page?
> A. Can I judge whether or not to block somebody? Yes, I have the decision to block or unblock somebody.
> Q. And I understand your testimony is at the present time no one is blocked. Do you know what might lead to your blocking someone in the future?

[Objection omitted]

A. Yeah. No. I can't speculate just on what the future would hold.
Q. Okay. So circumstances might come up in the future and there would still be the potential that you would block someone but don't have any present plans to do so; is that fair?
A. I don't have any present plans to block somebody.
Q. But you're not ruling it out as a possibility?
A. I can't speak of the future.
Q. The same with regard to comments. I understand that you've now adopted a hands-off moderation policy. Might that change at any point in the future?
A. I cannot speak about what would happen in the future.
Q. So it's not your official policy that you will never moderate content on the Facebook page in the future; is that fair?
A. I don't know what the future holds.
Q. Okay. So it's possible that at some point in the future you may start moderating content on the Facebook page even though right now you're not?
A. It's possible.

ECF 86-1, Dep. of Gardiner, at 144:16–146:10.

15. When asked why he was currently not moderating content on the

Facebook Page, Alderman Gardiner testified as follows:

Q. Why don't you currently moderate any of the content on your Facebook page?

A. I don't have the time with the responsibilities that I have as an alderman.")

Id. at 164:22-165:2.

16. Since this lawsuit was filed, Defendant Gardiner has not adopted a

"written policy" about what can be posted on his Page. He testified that he has not

adopted any formal "policy with clear guidelines about what contents can and can't

be posted on the page"; he has not adopted "any criteria" for deciding what content

is permissible; and he still considers it to be within his "discretion" to decide whether a particular comment on the Page is allowed. ECF 86-1, Dep. of Gardiner, at 44:16–46:7 ("Q. At any time after this lawsuit was filed, did it occur to you that it would help to provide a written policy with clear guidelines about what contents can and can't be posted to the page? A. No. Q. What criteria do you currently use to decide whether a particular comment can be posted ·4· to the page? A. I don't -- I don't have a criteria… Q. Is that something that you considered to be within your discretion to decide? A. No. It's -- if something is brought to my attention, you know, I will inquire. Q. I don't think I understood that answer. Other than your own personal discretion are there any standards that you use to decide whether a particular content can be posted to the page? A.  No. It's -- anything that is threatening to individuals, you know, I'd like to inquire about that or threatening in some way or harassing in some way. Q. Who decides whether a particular comment is threatening? A. I would be -- I would be one if somebody had contacted me or my office and said hey, I really feel uncomfortable with an individual's comment and I can look at that comment. Q. How about with regard to whether a comment is harassing, who is deciding whether a comment is harassing? A. I could look at that. Q. Anyone else? A. As of now, nobody is supposed to.")

Respectfully submitted,

/s/Adele D. Nicholas
/s/ Mark G. Weinberg
*Counsel for Plaintiffs*

Law Office of Adele D. Nicholas
5707 W. Goodman Street

Chicago, Illinois 60630
(847) 361-3869

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913