UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PETE CZOSNYKA, *et al.*,

   Plaintiffs,

       v.

JAMES GARDINER,

   Defendant.

21-cv-3240

Hon. Sharon Johnson Coleman

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT**

    Plaintiffs Pete Czosnyka, Adam Vavrick, Dominick Maino, Peter Barash, James Suh and Steve Held, through counsel, respectfully submit the following reply in further support of their motion for summary judgment:

**INTRODUCTION**

    Defendant Alderman Jim Gardiner admits that he violated the Plaintiffs' First Amendment rights by interfering with their participation in a public forum—namely, the Facebook Page he uses to communicate with constituents about a variety of government functions. Defendant Alderman Gardiner deleted comments critical of him or his policies; blocked people he perceived as political opponents; and hid comments that he did not like. *See* ECF 85, Plf. SOF.[1] He did this despite there

---

[1] Defendant Alderman Gardiner does not contest any of the facts upon which Plaintiffs base their motion for summary judgment. In fact, he did not respond to Plaintiffs' L.R. 56.1 Statement; nor did he submit a statement of additional material facts that would require the denial of summary judgment. *See Lipinski v. Castaneda,* 830 F. App'x 770 (7th Cir. 2020) (it is proper to deem facts set forth in a statement submitted pursuant to L.R. 56.1 admitted when the party opposing summary judgment does not respond to the 56.1 statement).

being a strong nationwide consensus among the federal courts that such conduct violates the First Amendment and having received explicit instructions from the City of Chicago that comments on public officials' social media accounts were protected by the First Amendment. *See* ECF 92, Plf. Resp. to Def. Mot., at 12–23 (discussing relevant law); *id*. at 26–27 (discussing notice provided to Gardiner).

Gardiner seeks to evade all responsibility for his decision to engage in unconstitutional conduct by invoking the doctrine of qualified immunity, a rule that shields public officials from liability for constitutional violations where the law is unsettled and they are forced to "make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *see* ECF 83-2 (Defendant Gardiner cross-motion for summary judgment)

As explained in Plaintiffs' response to Defendant Gardiner's motion for summary judgment, Defendant Gardiner is not entitled to qualified immunity for three reasons: (1) Plaintiffs have an ongoing claim for injunctive relief which is not barred by qualified immunity; (2) the pertinent legal principles were clearly established such that it is fair to hold Defendant Gardiner liable for damages; and (3) qualified immunity isn't available where, as here, an official has fair warning that his conduct was unconstitutional and time to deliberate. ECF 92. In his response to Plaintiffs' motion for summary judgment, Alderman Gardiner did not advance any new arguments and relied entirely on the qualified immunity arguments he set forth in his cross-motion for summary judgment. ECF 91.

Accordingly, Plaintiffs do not reiterate the arguments asserted in their response to Defendant's motion for summary judgment. In the argument below, Plaintiffs simply seek to underscore three reasons why Defendant's qualified immunity argument should be rejected.

## ARGUMENT

### I. Plaintiffs' Entitlement to Injunctive Relief Is Clear

As explained in Plaintiffs' response to Defendant Gardiner's motion for summary judgment, "the defense of qualified immunity does not protect defendants from an action for injunctive relief." *Hannemann v. S. Door Cty. Sch. Dist.*, 673 F.3d 746, 758 (7th Cir. 2012) (citations omitted). Here, Plaintiffs seek injunctive relief to halt ongoing violations of their First Amendment rights and prevent future violations. *See* ECF 92, Plf. Resp. to Def. Mot., at 7–12.

Plaintiffs anticipate that Defendant Gardiner will argue that injunctive relief is not warranted because he has unblocked the Plaintiffs and stopped censoring comments on the Page. But a party's "voluntary cessation" of unconstitutional conduct does not moot a claim for injunctive relief unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). As set forth in Plaintiffs' response brief, injunctive relief is necessary because Defendant Alderman Gardiner has not committed to refraining from content-based regulation of the Facebook Page in the future. This is shown in two distinct ways. First, in his deposition, Defendant Gardiner expressly disavowed having made a

3

permanent policy change with regard to how he regulates the Page and stated that he may block people or delete comments in the future. *See* ECF 94, Plf. Stat. of Add'l Facts, at ¶¶ 14–16; ECF 92, Plf. Resp. to Def. Mot., at 10–12. Second, Defendant Gardiner has within the past month continued to engage in content-based regulation of comments on the Page by hiding comments posted by Plaintiffs Czonyka, Maino and Vavrick. ECF 94 at ¶¶1–9 (describing comments hidden by Defendant Gardiner in January 2023); ECF 92 at 8–10.

Thus, Plaintiffs are entitled to injunctive relief prohibiting Defendant Gardiner from engaging in content-based regulation of speech on his Facebook Page and from interfering with the speech of those who seek to petition him through the Page.

## II. Qualified Immunity Does Not Bar Plaintiffs' Claim for Damages

With regard to Defendant's arguments for immunity from Plaintiffs' claims for nominal and compensatory damages, Plaintiffs do not rehash the arguments set forth in their response to Defendant's motion for summary judgment. *See* ECF 92 at 17–22 (discussing cases in which courts have found that public officials violated the First Amendment by blocking constituents on social media and/or deleting critical comments).[2] Plaintiffs simply reaffirm that there is substantial uniformity among

---

[2] This case law is in accord with a series of decisions reaching the same conclusion. *See Faison v. Jones*, 440 F. Supp. 3d 1123 (E.D. Cal. 2020) (granting a preliminary injunction to plaintiffs who had been blocked from a sheriff's Facebook page); *Scarborough v. Frederick Cty. Sch. Bd.*, 517 F. Supp. 3d 569 (W.D. Va. 2021) (plaintiff stated a First Amendment claim for injunctive relief and damages regarding being blocked from a school board Facebook Page); *Anderson v. Hansen*, 519 F. Supp. 3d 457, 468 (E.D. Wis. 2021) (plaintiff could seek damages for a school district's decision to delete a parent's comments on a Facebook post); *Goodman v. Harness,* No. 3:22-CV-3017, 2022 U.S. Dist. LEXIS 107903, at *20 (W.D. Ark. June 16, 2022) ("as to the question of whether [defendant] is entitled to qualified immunity for his decision to block [plaintiff] from this County Facebook page, the

the Courts that the First Amendment applies to government officials' regulation of comments on their social media pages. Defendant Gardiner contends that this case involves a "novel, emerging area" area of law, but he hasn't pointed to any meaningful contrary authority that casts doubt on whether his conduct was unconstitutional. *See* ECF 91 at 2. Moreover, even if Gardiner could establish some legitimate reason for doubt at the outset of the case, any such doubt was surely gone by the time he hid Plaintiffs' comments in January 2023. *See* Plf. Stat. of Add'l Facts, ECF 94 at ¶¶1–9. Thus, for the reasons set forth in Plaintiffs' response to Defendant's motion for summary judgment, qualified immunity does not shield Defendant Gardiner from Plaintiffs' claims for nominal and compensatory damages.

## III. Prompt Resolution of the Parties' Cross Motions Is in The Public Interest

Plaintiffs are cognizant of the Court's many obligations and heavy docket, but to the extent possible, Plaintiffs respectfully request that this Court rule on the cross motions for summary judgment prior to May 15, 2023. Plaintiffs make this request because their claims for injunctive relief will become moot on that date if Alderman Gardiner loses his reelection bid. The City of Chicago holds its general municipal election on February 28, 2023; any runoff elections will be held on April 4, 2023; and

---

Court finds that [plaintiff] has sufficiently stated a violation of his First Amendment rights and that those rights were clearly established at the time"); *Tanner v. Ziegenhorn*, No. 4:17-cv-780-DPM, 2021 U.S. Dist. LEXIS 187782, at *15 (E.D. Ark. Sep. 30, 2021) (state police "violated the First Amendment … in blocking [plaintiff] from the State Police's Facebook page").

a new City Council will be sworn in on May 15, 2023.[3]

Judicial economy, the public interest and practical considerations merit prompt resolution of this matter while Plaintiffs still have a live claim for injunctive relief. First, this case raises important and recurring legal question because many public officials maintain social media accounts to communicate with the public. *See Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017) (noting that "[g]overnors in all 50 States and almost every Member of Congress have set up [social media] accounts" to communicate about government business and engage directly with members of the public). At least one other case in this jurisdiction raises similar issues about the First Amendment implications of public officials' blocking citizens on social media. *See Chavez et al., v. Lennon*, 22-cv-5924 (pending before Judge Alonso). Thus, public officials within the Northern District of Illinois and the public at large would benefit from a summary judgment decision that conclusively resolves this issue with the benefit of a well-developed record.[4]

Second, this Court and the parties have invested substantial time and resources on this case, including motions to dismiss, discovery, and summary judgment briefing. Plaintiffs brought this case to hold Alderman Gardiner accountable and to vindicate their constitutional rights. Having invested the time and resources into

---

[3] *See* City of Chicago, *City Council, Your Ward & Alderman*, https://www.chicago.gov/city/en/about/council.html (new city council goes into effect on May 15, 2023).

[4] *See Bell v. Battaglia*, 332 So. 3d 1094, 1107 (Fla. Dist. Ct. App. 2022) ("When, as in the case at bar, mootness … would deprive a litigant who has properly invoked our jurisdiction of relief to which that litigant is entitled, … we would do a disservice to the litigants and the public by declining to do our job.")

litigating this case, Plaintiffs should not be denied a remedy based on Alderman Gardiner's successfully running out the clock.

## CONCLUSION

For the above reasons, as well as the reasons set forth in Plaintiffs' motion for summary judgment and response to Defendant's cross motion, Plaintiffs respectfully request that this Honorable Court grant Plaintiffs' motion for summary judgment on their First Amendment claim and set the case for trial on damages.

    Respectfully submitted,

    /s/Adele D. Nicholas
    /s/ Mark G. Weinberg
    *Counsel for Plaintiffs*

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913