IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Pete Czosnyka, Peter Barash, Adam Vavrick, Dominick Maino, Steve Held and James Suh, individually and on behalf of all others similarly situated, | ) ) ) ) ) | Case No.    21-cv-03240 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Hon. Judge Johnson Coleman |
| James Gardiner and the City of Chicago, | ) ) ) | |
| Defendants. | ) | |

**DEFENDANT JAMES GARDINER'S REPLY
IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Defendant James Gardiner, Alderman of the 45th Ward of the City of Chicago ("Gardiner" or "Defendant"), by and through his attorney, Thomas D. Carroll of Thomas R. Raines Attorney at Law, LLC, Replies in Support of His Motion for Summary Judgment and states as follows:

PREFATORY STATEMENT

As a preliminary matter, it appears that when the Defendant unblocked all Facebook users from accessing his Facebook page (the "Page") and ceased the practice of personally moderating comments posted on his Page in any way, he neglected to remove filters on his Page related to or derived from the word "stalk." This explains why two of the comments cited in Plaintiffs' Response to Defendant's Motion for Summary Judgment were apparently blocked from view. Defendant has no idea of why the third comment referenced, written by Pete Czosnyka, which refers to a fellow commenter as a "bootlicker" was blocked, though he would note that Facebook has its own moderators and own content guidelines, and the comment may

very well run afoul of their policies on abusive or harassing comments. Although referring to someone as a "stalker" might well be a defamatory statement, as well as one which violates Facebook's user guidelines, Defendant admits that two comments were removed on that basis.

More broadly, Defendant recognizes that qualified immunity is not a basis to deny an injunction, and, given that he has voluntarily adopted a hands-off approach to the comment section of his Facebook Page since the initiation of this lawsuit, he does not object to the entry of an injunction requiring him to maintain that approach, should the Court determine that moderation of content by a public official on a public-facing, interactive social media page may constitute a violation of the First Amendment.

## ARGUMENT

Defendant's entire defense boils down to qualified immunity, and qualified immunity protects him from a damages liability finding in this case, regardless of Plaintiffs' misgivings about the application of qualified immunity to public officials other than police officers acting in the line of duty. Whether the court sees a trend among the circuits in deciding such cases, the caselaw is hardly settled, different circuits have adopted different analytical approaches reaching different results, and the trend was not clearly established at the time of the violations alleged in the Complaint, and only the violation of a clearly-established right under the law will negate a public official's qualified immunity defense. See *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)

 I. The rights at issue in this suit were not clearly established in 2019-2021 such that Defendant may be held liable for damages, nor are they settled today.

Plaintiffs acknowledge that neither our home circuit nor the Supreme Court have addressed the question of whether the blocking of users or deletion of posts on a public official's social media page may violate the First Amendment's prohibition on content-based speech restrictions. Plaintiffs' Response ("Pl. Resp."), p. 13. That fact is significant, and the jumping-off

point for analysis. Neither the highest court in the land nor the highest court in this federal jurisdiction has established their views on the relevant questions of law. Plaintiffs expect the Defendant to have been aware of the entire emerging body of federal district court case law on the subject, but the fact is that there were only three circuit-level cases which had addressed the issue at the time the Complaint was filed, and the Defendant is a layman, not a lawyer. See *Bland v. Roberts*, 730 F.3d 368, 393-94 (4th Cir. 2013)("We do not expect sheriffs to be judges and have the training to sort through every intricacy of caselaw that is hardly a model of clarity… Rather in considering whether constitutional rights were clearly established for qualified-immunity purposes, we view the issue from the layman's perspective.")(citing *Lawyer v. City of Council Bluffs*, 361 F.3d 1099, 1108 (8th Cir. 2004); *Ross v. Reed*, 719 F.2d 689, 696 n. 8 (4th Cir. 1983)). In conducting the analysis in this case, the Court should stive to determine whether an average person would know whether it is constitutional for a public official to block users or delete comments on a social media page. One can envision a wide array of responses on the subject.

In a recent, analogous case, *Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158 (9th Cir. 2022), the Ninth Circuit held that while the defendant school board members' blocking certain users and posts amounted to impermissible viewpoint discrimination, the officials themselves were entitled to qualified immunity for their actions. Tellingly, the *Garnier* Court did not even bother discussing district-level authority when analyzing the defendant school board members' claims of qualified immunity, or whether a robust body of law had been developed on the subject. See *Id.* at 1183-84. The Court pointed out that even when its own decision came down in the summer of 2022, it was an open question whether a "clear right" had been established under such circumstances, noting that even now, circuits are split regarding both whether a violation occurs

3

in the first place and what analytical framework ought to be employed in discerning the existence of state action under Section 1983. *Id*. at 1184. ("As discussed, applying similar modes of analysis, two of those circuits found First Amendment violations and one did not, while one circuit applied a different mode of analysis and found no violation." (citing *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019); *Knight First Amendment Institute v. Trump*, 928 F.3d 226 (2nd Cir. 2019); *Campbell v. Reisch*, 986 F.3d 822 (8th Cir. 2021); *Lindke v. Freed*, 37 F.4th 1199 (6th Cir. 2021).

Federal circuit courts cannot make up their minds about how to handle these cases and the Seventh Circuit and Supreme Court have yet to pass on the issues. However, "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be 'settled law…'" *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018) (quoting *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)). The law on this subject may be trending in a given direction, but it can hardly be considered "settled law" when even the circuits cannot agree on what standards to apply and how cases should be decided. It is also worth noting that the only Supreme Court justice to opine on the question expressed serious misgivings about the framework set forth in *Knight*, further clouding the picture. See *Biden v. Knight First Amendment Institute*, 141 S. Ct. 1220 (2021), Thomas, J. concurring ("because unbridled control of [Trump's Twitter] account resided in the hands of a private party [Twitter], First Amendment doctrine may not have applied to respondents' complaint of stifled speech."). Plaintiffs' suggestion that James Gardiner should have been monitoring out-of-state district court cases – at least one of which would have supported his actions (see *Morgan v. Bevin*, 298 F.Supp. 3d 1003 (E.D. Ky. 2018)) – and deciding what the law is in order to conform his conduct accordingly takes no heed of the standards for defining

"clearly-established" law. The body of caselaw on this subject is frequently at odds, and hardly "robust."

Plaintiffs go as far as suggesting that the Defendant should have been able to draw legal conclusions about how his conduct would be treated from years of indirect precedents pertaining more generally to the First Amendment. See Pl. Resp. pp. 13-16. Such a requirement would render the "clearly-established" standard pointless, since public officials would be required to guess how courts might treat their conduct even in the absence of clear precedents. Perhaps a trained attorney who is familiar with First Amendment caselaw would be equipped to engage in such legal prognostication. A layman with no legal training of any kind is not, and should not be held to such a standard. "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Wesby*, 138 S.Ct. at 590.

The *Garnier* Court rejected a similarly broad argument against a finding of qualified immunity for the school board official-defendants. See *Garnier*, 41 F.4th at 1184 ("The Garniers attempt to avoid this conclusion by describing the right at issue in this case extremely generally, as the "right to criticize public officials" free from retaliation. But the Supreme Court has exhorted us "not to define clearly established law at a high level of generality." (quoting *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015)). Precedents which pre-date the internet's existence or which talk about the nexus between the internet and the First Amendment outside the context of public officials' social media usage may be excellent fodder for law school discussions and law review articles concerning the issues at play in this case, but they hardly establish a binding precedent regarding this case or the Defendant's conduct such that they "settled" the questions addressed in this case. See *Police Dept. of City of Chicago v. Mosley*, 408

U.S. 92 (1972); *Packingham v. North Carolina*, 137 S.Ct. 1730 (2017). And even the *Packingham* Court acknowledged that "the forces and directions of the Internet are so new, so protean, and so far reaching that courts must be conscious that what they say today might be obsolete tomorrow." *Id.* at 1736.

The law pertaining to this case was not clearly established in 2021, when this case was filed, and it is not clearly established today. The Seventh Circuit has been silent thus far, and the few circuits which have established precedents have some significant disagreements such that a Supreme Court ruling is likely to be forthcoming. It appears that one of the *Garnier* parties has filed a writ of certiorari that is currently under consideration. Given the indecision and open questions regarding this issue at the circuit court level, the Defendant could not possibly have been on notice that his conduct was unconstitutional based on clearly established law, and he is entitled to qualified immunity for his actions.

II. Qualified immunity extends to public officials like the Defendant, and not just police officers acting in the line of duty.

The Defendant is entitled to qualified immunity as a public official acting in an official capacity regardless of whether Plaintiffs think the rule should only apply to police officers making split decisions in the line of duty. "Qualified immunity "shields government officials against suits arising out of their exercise of discretionary functions 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Jones v. Wilhelm,* 425 F.3d 455, 460 (7th Cir. 2005) (quoting *Anderson v. Creighton,* 483 U.S. 635, 638 (1987)). The doctrine pertains to public officials other than police officers and applies in contexts where the public official is not required to make a snap decision. For example, in *Wernsing v. Thompson*, 423 F.3d 732 (7th Cir. 2005), the circuit court held that a state inspector general was entitled to summary judgment on the basis of qualified immunity for having

6

instituted a policy which was alleged to have acted as a prior restraint on the speech of the plaintiffs whom he supervised. Though the First Amendment analysis was markedly different than in this case, there was no suggestion that a non-police officer working a desk job and implementing a policy which might violate the First Amendment was held to any different standard under qualified immunity analysis than a police officer acting in the line of duty. See *Id*.

More recently and in an analogous case, the *Garnier* Court held that local school board officials who had blocked social media users and their posts on an official social media page were entitled to qualified immunity as a matter of law. See *Garnier*, 41 F.4th at 1184. There is no insinuation in the opinion that they were held to different standards than any other sorts of public officials because they were not required to make snap decisions under duress. The same was true of the sheriffs who managed their county social media page in *Robinson v. Hunt Cty.*, 921 F.3d 440 (5th Cir. 2019), referenced in Plaintiffs' Response. Though they were not acting under duress or making snap decisions, they were afforded qualified immunity for their actions.

It is clear that the Defendant may avail himself of a qualified immunity defense regardless of whether he made decisions under duress or within a short time frame. The doctrine has been applied in countless instances where an official other than a police officer had time to deliberate, including where the fashioning of policies or certain conduct implicates free speech. If Alderman Gardiner had sought legal counsel in 2019 regarding social media usage and his ability to block users, he might have received a variety of advice depending on whom he consulted, because the law in that area was and remains unsettled. For example, the ethics guidance offered by the City of Chicago and relied-upon in Plaintiffs' Response brief suggests that social media comments may be blocked if they feature content which is protected by the First Amendment, even when used in a government forum, such as "profanity." See *Cohen v.*

*California*, 91 S.Ct. 1780 (1971); see also Pl. Resp, p. 26. If the Court elects to enjoin the Defendant from blocking users or deleting posts on social media in the future, it will have to decide the contours of just how much speech is allowed on government officials' social media pages, including whether some content that is protected by the First Amendment such as profanity or the famously hard-to-define obscenity, must be allowed.

The suggestion that the Defendant's ability to deliberate over whether and what to block on social media somehow deprives him of a qualified immunity defense ignores the law on that subject, replacing it with what appear to be the Plaintiffs' regrets about the way qualified immunity law has evolved over the years. The Defendant is entitled to qualified immunity as a public official, provided that the law he is alleged to have violated was not clearly established at the time of the alleged offenses. That law was not established, has yet to be established, and he is therefore entitled to summary judgment as to the question of liability for damages.

WHEREFORE, the Defendant, James Gardiner, asks that this honorable Court grant his Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56, and for any additional relief that the Court deems just.

Respectfully Submitted,
THOMAS R. RAINES ATTORNEY AT LAW, LLC

/s/ Thomas D. Carroll
Thomas D. Carroll
Thomas R. Raines Attorney at Law, LLC
20 N. Wacker Dr., Suite 556
Chicago, IL 60606
T: (312) 750-1166
F: (312) 750-1164
tcarroll@traalaw.com

Dated: February 24, 2023

**CERTIFICATE OF SERVICE**

The undersigned, an attorney of record for the Defendant, hereby certifies that on February 24, 2023, he served a copy of the Defendant James Gardiner's Reply in Support of his Motion for Summary Judgment on all counsel of record by electronic means via the Northern District of Illinois's Electronic Case Filing (ECF) system, which notifies all counsels and parties of record.

/s/ Thomas D. Carroll
Thomas D. Carroll